# EXHIBIT A

## Proposed Interim Order

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| LOCAL INSIGHT MEDIA HOLDINGS, INC., et al.,[1] | ) Case No. 10-13677 ( ) |
| | ) |
| Debtors. | ) Joint Administration Requested |
| | ) |

## INTERIM ORDER PURSUANT TO SECTIONS 105, 361, 362, 363 AND 364 OF THE BANKRUPTCY CODE AND RULES 2002, 4001 AND 9014 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE (A) AUTHORIZING CERTAIN OF THE DEBTORS TO OBTAIN SECURED POSTPETITION FINANCING ON SUPER-PRIORITY PRIMING LIEN BASIS, GRANTING ADEQUATE PROTECTION FOR PRIMING AND MODIFYING THE AUTOMATIC STAY, (B) AUTHORIZING CERTAIN OF THE DEBTORS TO USE CASH COLLATERAL OF PREPETITION SECURED LENDERS AND GRANTING ADEQUATE PROTECTION FOR THE USE THEREOF, AND (C) PRESCRIBING THE FORM AND MANNER OF NOTICE AND SETTING TIME FOR THE FINAL HEARING

Upon the motion, dated November ___, 2010 (the "Motion"),[2] of Local Insight Media Holdings, Inc. and certain of its subsidiaries, as debtors and debtors in possession (collectively, the "Debtors") in the above-captioned chapter 11 cases (the "Cases"), for the entry of interim and final orders pursuant to sections 105, 361, 362, 363(c), 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1) and 364(e) of the Bankruptcy Code, Bankruptcy Rules 2002, 4001 and 9014, and the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules") seeking:

---

[1] The Debtors, together with the last four digits of each of the Debtors' federal tax identification number (if applicable), are: Local Insight Media Holdings, Inc. (2696); Local Insight Media Holdings II, Inc. (8133); Local Insight Media Holdings III, Inc. (8134); LIM Finance Holdings, Inc. (8135); LIM Finance, Inc. (8136); LIM Finance II, Inc. (5380); Local Insight Regatta Holdings, Inc. (6735); The Berry Company LLC (7899); Local Insight Listing Management, Inc. (7524); Regatta Investor Holdings, Inc. (8137); Regatta Investor Holdings II, Inc. (8138); Regatta Investor LLC; Regatta Split-off I LLC; Regatta Split-off II LLC; Regatta Split-off III LLC; Regatta Holding I, L.P.; Regatta Holding II, L.P.; and Regatta Holding III, L.P. For the purpose of these chapter 11 cases, the service address for all Debtors is: 188 Inverness Drive West, Suite 800, Englewood, CO 80112.

[2] Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to them in the DIP Agreement.

(I) authorization (a) for Local Insight Regatta Holdings, Inc. (the "Borrower") to obtain $25,000,000 in aggregate principal amount of postpetition financing (the "DIP Financing") on the terms and conditions set forth in this interim order (this "Order"), the Final Order (as defined below) and the Credit Agreement (substantially in the form as **Exhibit B** attached to the Motion, and, as hereafter amended, supplemented or otherwise modified from time to time, the "DIP Agreement," and, together with all agreements, documents and instruments delivered or executed in connection therewith, as hereafter amended, supplemented or otherwise modified from time to time, the "DIP Documents"), among the Borrower, the Guarantors (as defined below), JPMorgan Chase Bank, N.A. ("JPMorgan"), as Administrative Agent (in such capacity, the "DIP Agent") for itself and other financial institutions (collectively, the "DIP Lenders"), and (b) for Regatta Investor LLC and each of its direct and indirect subsidiaries other than the Borrower (collectively, the "Guarantors," and, together with the Borrower, the "Loan Parties"), to jointly and severally guaranty on a secured basis the Borrower's obligations in respect of the DIP Financing;

(II) authorization for the Loan Parties to execute and deliver the DIP Agreement and the other DIP Documents and to perform such other and further acts as may be necessary or appropriate in connection therewith;

(III) authorization for the Loan Parties to (a) use the Cash Collateral (as defined in paragraph 11 below) pursuant to sections 361, 362 and 363 of the Bankruptcy Code, and all other Prepetition Collateral (as defined in paragraph 3(b) below) and (b) provide adequate protection to the lenders (including lenders or their affiliates that entered into, on a prepetition basis, Specified Hedge Agreements (as defined in the Prepetition Credit Agreement) or are owed obligations pursuant to the Cash Management Agreement (as defined in the Prepetition Credit

2

Agreement), collectively, the "Prepetition Secured Lenders") under the Credit Agreement, dated as of April 23, 2008 (as amended, supplemented or otherwise modified, the "Prepetition Credit Agreement," and, together with any other security, pledge or guaranty agreements and all other documentation executed in connection with any of the foregoing, each as amended, supplemented or otherwise modified, the "Prepetition Loan Documents"), among the Borrower, the Guarantors, the Prepetition Secured Lenders and JPMorgan, as administrative agent and collateral agent (in such capacity, the "Prepetition Agent") for the Prepetition Secured Lenders;

(IV)     authorization for the DIP Agent to accelerate the Loans and terminate the Commitments under the DIP Agreement and exercise its rights and remedies thereunder upon the occurrence and continuance of an Event of Default, subject to the limitations set forth in the DIP Agreement and in this Order with respect to an Avoidance Action Default (as defined in paragraph 8(b) below), including, without limitation, upon the entry of an order or orders granting relief from the automatic stay applicable under section 362 of the Bankruptcy Code in respect of the Loan Parties' assets having a value in excess of $1,000,000;

(V)     subject to entry of the Final Order, authorization to grant liens to the DIP Lenders on the proceeds of the Loan Parties' claims and causes of action (but not on the actual claims and causes of action) arising under sections 502(d), 544, 545, 547, 548, 549 and 550 of the Bankruptcy Code (collectively, the "Avoidance Actions");

(VI)     subject to entry of the Final Order, the waiver by the Loan Parties of any right to seek to surcharge the DIP Collateral (as defined in paragraph 7 below) pursuant to section 506(c) of the Bankruptcy Code or any other applicable law or principle of equity;

(VII)     to schedule, pursuant to Bankruptcy Rule 4001, an interim hearing (the "Interim Hearing") on the Motion to be held before this Court to consider entry of this Order:

3

(a) authorizing the Borrower, on an interim basis, to borrow loans or request letters of credit under the DIP Agreement up to an aggregate principal amount not to exceed $7,500,000 at any time outstanding prior to the entry of the Final Order, to be used as the Loan Parties' working capital and for general corporate purposes; (b) authorizing the Loan Parties to use the Cash Collateral and the other Prepetition Collateral (in each case, with respect to clauses (a) and (b), subject to the terms and conditions of this Order, the Final Order and the DIP Agreement) and (c) granting adequate protection to the Prepetition Secured Lenders; and

(VIII) to schedule, pursuant to Bankruptcy Rule 4001, a final hearing (the "Final Hearing") for this Court to consider entry of the Final Order authorizing and approving, on a final basis, the relief requested in the Motion, including, without limitation, for the Borrower on a final basis to utilize the DIP Financing and for the Loan Parties to continue to use the Cash Collateral and the other Prepetition Collateral subject to the terms of this Order, the Final Order and the DIP Documents.

The Interim Hearing having been held by this Court on November [___], 2010, and upon the record made by the Debtors at the Interim Hearing, including, without limitation, the admission into evidence of the *Declaration of Richard C. Jenkins, the Debtors' Interim Chief Restructuring Officer, in Support of First Day Motions* and the *Declaration of Ari Lefkovits in Support of the Motion*, both of which were filed contemporaneously with the Motion, and the arguments of counsel made at the Interim Hearing, and after due deliberation and consideration and sufficient cause appearing therefor;

52928-001\DOCS_DE:165488.1

IT IS FOUND, DETERMINED, ORDERED AND ADJUDGED, that:

1. *Jurisdiction.* This Court has core jurisdiction over the Cases, this Motion, the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2. *Notice.* The Debtors have provided notice of this Motion by electronic mail or facsimile and by overnight mail to: (a) the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee"); (b) the entities listed on the Consolidated List of Creditors Holding the 30 Largest Unsecured Claims; (c) counsel to the agent for the Debtors' proposed postpetition financing agreement; (d) counsel to the administrative agent for Local Insight Regatta Holdings, Inc.'s prepetition senior credit facility; (e) the indenture trustee under Local Insight Regatta Holdings, Inc.'s Senior Subordinated Note Indenture, dated as of November 30, 2007 (as amended, supplemented, exchanged or otherwise modified, the "Unsecured Subordinated Note Indenture"); (f) counsel to the *ad hoc* committee of holders of notes issued under the Unsecured Subordinated Note Indenture; (g) counsel to Welsh, Carson, Anderson & Stowe; (h) the Office of the United States Attorney General for the State of Delaware; (i) the Internal Revenue Service; and (j) the Securities and Exchange Commission. Under the circumstances, the notice given by the Debtors of the Motion, the relief requested therein and the Interim Hearing constitutes due and sufficient notice thereof and complies with Bankruptcy Rules 4001(b) and (c), and no further notice of the relief sought at the Interim Hearing is necessary or required.

3. *Debtors' Stipulations.* Subject to the limitations contained in paragraphs 17 and 18 below, the Debtors admit, stipulate and agree that:

(a)　　as of the Petition Date, the Loan Parties were truly and justly indebted and liable to the Prepetition Secured Lenders, without objection, defense, counterclaim or offset of any kind, (i) in the aggregate principal amount of not less than $337,072,300 in respect of loans made under the Prepetition Credit Agreement, (ii) $19,000 in undrawn available amounts under letters of credit issued pursuant to the Prepetition Credit Agreement and (iii) amounts owed under Specified Hedge Agreements with the Qualified Counterparties (as defined in the Prepetition Credit Agreement) plus accrued and unpaid interest and fees with respect to the obligations described in clauses (i) through (iii) above, any obligations pursuant to any Cash Management Agreements owed to any Prepetition Secured Lender, all other Secured Obligations (as defined in the Guaranty and Collateral Agreement (which term is defined in the Prepetition Credit Agreement)) and fees and expenses (including fees and expenses of attorneys and advisors) as provided in the Prepetition Loan Documents and applicable Specified Hedge Agreements (collectively, the "Prepetition Obligations");

(b)　　the liens and security interests granted to the Prepetition Agent to secure the Prepetition Obligations are (i) except with respect to potential Avoidance Actions reserved by the Debtors in paragraph 14(b), valid, binding, perfected, enforceable, first priority (subject to permitted exceptions under the Prepetition Credit Agreement) liens on, and security interests in, the personal and real property constituting "Collateral" under, and as defined in, the Prepetition Loan Documents in respect of the Prepetition Obligations (together with the Cash Collateral, the "Prepetition Collateral"), and (ii) except with respect to potential Avoidance Actions reserved by the Debtors in paragraph 14(b), not subject to valid objection, defense, counterclaim, offset, contest, attachment, disallowance, recharacterization or subordination pursuant to the Bankruptcy Code or applicable nonbankruptcy law, and (iii) except with respect to potential

6

Avoidance Actions reserved by the Debtors in paragraph 14(b), subject and subordinate only to (A) after giving effect to this Order, the Carve Out (as defined in paragraph 6(b) below), the Lien Avoidance Carve Out (as defined in paragraph 6(c) below) and the liens and security interests granted to secure the DIP Financing and the Adequate Protection Obligations (as defined in paragraph 13 below), and (B) valid, perfected and unavoidable liens permitted under the Prepetition Loan Documents to the extent such permitted liens are senior to the liens securing the Prepetition Obligations (the "Permitted Prepetition Liens");

(c)     the Prepetition Obligations constitute the legal, valid and binding obligations of the Loan Parties, enforceable in accordance with their terms (other than in respect of the stay of enforcement arising under section 362 of the Bankruptcy Code) and constitute "Senior Indebtedness" and "Guarantor Senior Indebtedness," as applicable, under and as defined in the Unsecured Subordinated Note Indenture;

(d)     the Prepetition Secured Lenders hold "Designated Senior Indebtedness" within the meaning of the subordination provisions set forth in Article XII of the Unsecured Subordinated Note Indenture, which subordination provisions are, and shall be, fully enforceable in these Cases, and the Debtors have not designated any other "Designated Senior Indebtedness" since the closing of the Prepetition Credit Agreement;

(e)     pursuant to the Unsecured Subordinated Note Indenture, the holders of the Notes thereunder (and as defined therein) are not entitled to receive or retain any payments or other recoveries until and unless the Prepetition Obligations (whether or not deemed to be secured) have been paid in full, in cash, unless the Prepetition Secured Lenders otherwise consent;

(f)     (i) subject to the proviso herein, no portion of the Prepetition Obligations shall be subject to valid objection, defense, counterclaim, offset, avoidance, disallowance, recharacterization, recovery or subordination pursuant to the Bankruptcy Code or applicable nonbankruptcy law; provided that the Loan Parties retain the right to seek avoidance of the liens securing the Prepetition Obligations, and (ii) except with respect to Avoidance Actions reserved by the Debtors in paragraph 14(b), the Loan Parties do not have any claims, counterclaims, causes of action, defenses, setoff or recoupment rights, whether arising under the Bankruptcy Code or applicable nonbankruptcy law, against the Prepetition Agent, the Prepetition Secured Lenders and their respective affiliates, subsidiaries, agents, officers, directors, employees, attorneys and advisors; and

(g)     the Prepetition Agent and Prepetition Secured Lenders retain, and have not waived or otherwise prejudiced, any of their rights, claims, defenses or counterclaims at law or in equity with respect to the Debtors or any other Person (as defined in the Bankruptcy Code) in connection with or relating to any Avoidance Action with respect to the liens and security interests granted by the Loan Parties to secure the Prepetition Obligations or the adequate protection granted hereunder.

4.     *Findings Regarding the DIP Financing.*

(a)     Good cause has been shown for the entry of this Order.

(b)     The Loan Parties have an immediate need to obtain the DIP Financing and to use the Prepetition Collateral, including the Cash Collateral, in order to, among other things, permit the orderly continuation of their businesses, preserve the going-concern value of the Loan Parties, and satisfy payroll obligations and other working capital and general corporate needs of the Loan Parties.  The Loan Parties' use of the Prepetition Collateral (including the Cash

Collateral) is necessary to ensure that the Loan Parties have sufficient working capital and liquidity to preserve and maintain the going-concern value of the Loan Parties' estates.

(c)     The Loan Parties are unable to obtain financing, when taken as a whole, on more favorable terms from sources other than the DIP Lenders pursuant to, and for the purposes set forth in, the DIP Documents and are unable to obtain adequate unsecured credit allowable as an administrative expense under section 503(b)(1) of the Bankruptcy Code. The Loan Parties are also unable to obtain secured credit allowable under sections 364(c)(1), 364(c)(2) and 364(c)(3) of the Bankruptcy Code without the Loan Parties' granting (i) the priming DIP Liens (as defined in paragraph 7 below) and (ii) the Superpriority Claims (as defined in paragraph 6(a) below), in each case on the terms and conditions set forth in this Order and the DIP Documents.

(d)     The terms of the DIP Financing and the use of the Prepetition Collateral (including the Cash Collateral) pursuant to this Order are fair and reasonable, reflect the Loan Parties' exercise of prudent business judgment consistent with their fiduciary duties, are appropriate under the circumstances and constitute reasonably equivalent value and fair consideration.

(e)     The DIP Documents have been the subject of extensive negotiations conducted in good faith and at arm's length among the Loan Parties, the DIP Agent and the DIP Lenders, and all of the Loan Parties' obligations and indebtedness arising under or in connection with the DIP Financing, including, without limitation, (i) all Loans made to the Loan Parties pursuant to the DIP Agreement and (ii) all other obligations of the Loan Parties under the DIP Documents and this Order now and hereafter owing to the DIP Agent or any DIP Lender (collectively, the "DIP Obligations"), shall be deemed to have been extended by the DIP Agent

and the DIP Lenders in "good faith" as such term is used in section 364(e) of the Bankruptcy Code, and in express reliance upon the protections set forth therein, and shall be entitled to the full protection of section 364(e) of the Bankruptcy Code, in the event that this Order or any provision hereof is vacated, reversed or modified on appeal or otherwise.

(f)     The Debtors have requested immediate entry of this Order pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2).  Absent granting the interim relief set forth in this Order, the Debtors' estates will be immediately and irreparably harmed.  Consummation of the DIP Financing and the use of the Prepetition Collateral (including the Cash Collateral) in accordance with this Order and the DIP Documents are, therefore, in the best interest of the Debtors' estates.

5.     *Authorization of the DIP Financing and the DIP Documents.*

(a)     The Loan Parties are hereby authorized to enter into and perform under the DIP Documents and, in the case of the Borrower, to borrow or request issuance of letters of credit under, and subject to the terms of, the DIP Agreement pending entry of the Final Order up to an aggregate principal amount of $7,500,000 for working capital and other general corporate purposes of the Loan Parties, including, without limitation, to pay interest, fees and expenses in connection with the DIP Financing.

(b)     In furtherance of the foregoing and without further approval of this Court, each Loan Party is authorized and directed to perform all acts and to execute and deliver all instruments and documents that the DIP Agent determines to be reasonably required or necessary for the Loan Parties' performance of their obligations under the DIP Documents, including without limitation:

(i)     the execution, delivery and performance of the DIP Documents;

(ii)     the execution, delivery and performance of the guarantees of the obligations of the Borrower by the other Loan Parties;

(iii)     the execution, delivery and performance of one or more amendments, waivers, consents or other modifications to and under the DIP Documents, in each case in such form as the Loan Parties, the DIP Agent and the requisite DIP Lenders may agree, and no further approval of this Court shall be required for amendments, waivers, consents or other modifications to and under the DIP Documents (and any fees paid in connection therewith) that do not (A) shorten the maturity of the Loans, (B) increase the Commitments or the rate of interest payable on the Loans under the DIP Agreement, or (C) change any Event of Default, add any covenants or amend the covenants therein, in each case as applicable to the Loan Parties, in any such case to be materially more restrictive; provided, however, that, after any such amendment, waiver, consent or other modification becomes effective, a copy of any such amendment, waiver, consent or other modification shall be filed by the Debtors with this Court and served by the Debtors on the U.S. Trustee and the statutory committee of unsecured creditors appointed in the Cases (the "Committee");

(iv)     the non-refundable payment to the DIP Agent, its affiliates and the DIP Lenders, as the case may be, of the fees set forth in the DIP Documents and the separate fee letters with the DIP Agent and the lenders party thereto; and

(v)     the performance of all other acts required under, or in connection with, the DIP Documents.

(c)     Upon execution and delivery of the DIP Documents, the DIP Documents shall constitute valid and binding obligations of the Loan Parties, enforceable against the Loan Parties in accordance with the terms of this Order and the DIP Documents.  No obligation,

payment, transfer or grant of security under the DIP Documents or this Order, with respect to the DIP Financing or, subject to the limitations herein, the Adequate Protection Liens, shall be stayed, voidable, avoidable or recoverable under the Bankruptcy Code or under any applicable nonbankruptcy law (including, without limitation, under sections 502(d) or 548 of the Bankruptcy Code or under any applicable state Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act or similar statute or common law), or subject to any defense, reduction, setoff, recoupment or counterclaim.

6.    *Superpriority Claims.*

(a)    Except to the extent expressly set forth in this Order in respect of (i) the Carve Out (as defined below) and (ii) the Lien Avoidance Carve Out (as defined below), pursuant to section 364(c)(1) of the Bankruptcy Code, all of the DIP Obligations shall constitute allowed senior administrative expense claims (the "Superpriority Claims") against the Loan Parties with priority over any and all administrative expenses, adequate protection claims and all other claims against the Loan Parties, now existing or hereafter arising, of any kind whatsoever, including, without limitation, all administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code, and over any and all administrative expenses or other claims arising under sections 105, 326, 328, 330, 331, 503(b), 507(a), 507(b), 726, 1113 or 1114 of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment.

(b)    For purposes hereof, the "Carve Out" shall mean the sum of: (i) all fees required to be paid to the Clerk of the Bankruptcy Court and to the U.S. Trustee under section 1930(a) of title 28 of the United States Code and section 3717 of title 31 of the United States Code, and (ii) at any time after the first business day after the occurrence and during the

52928-001\DOCS_DE:165488.1

continuance of an Event of Default under the DIP Agreement and delivery of notice thereof to the U.S. Trustee and each of the lead counsel for the Debtors and the Committee (once appointed) (the "Carve Out Notice"), to the extent allowed at any time, whether by interim order, procedural order or otherwise, the payment of accrued and unpaid professional fees, costs and expenses (collectively, the "Professional Fees") incurred by persons or firms retained by the Debtors and the Committee (if any) after the Business Day following delivery of the Carve Out Notice and allowed by this Court, in an aggregate amount not exceeding $2 million (the "Carve Out Cap") (plus all unpaid Professional Fees allowed by this Court at any time that were incurred on or prior to the Business Day following delivery of the Carve Out Notice, whether paid or unpaid); provided further that (A) except with respect to the Lien Avoidance Carve Out, the Carve Out shall not be available to pay any such Professional Fees incurred in connection with the initiation or prosecution of any claims, causes of action, adversary proceedings or other litigation against the DIP Agent, the DIP Lenders, the Prepetition Secured Lenders or the Prepetition Agent, (B) so long as no Event of Default shall have occurred and be continuing, the Carve Out shall not be reduced by the payment of fees and expenses allowed by this Court and payable under sections 328, 330 and 331 of the Bankruptcy Code, and (C) nothing in this Order or the Final Order shall impair the right of any party to object to any such fees or expenses to be paid by the Debtors' estates. For the avoidance of doubt and notwithstanding anything to the contrary herein, in the DIP Documents, or in the Prepetition Credit Agreement and related documents and agreements, the Carve Out shall be senior to all liens securing the DIP Obligations, the adequate protection liens, all claims and any and all other forms of adequate protection, liens or claims securing the DIP Obligations or Prepetition Obligations granted or recognized as valid, including the liens and security interests granted to the Prepetition Secured

13

Lenders. Upon delivery of a Carve Out Notice, prior to making any distributions, the Loan Parties shall deposit an amount equal to the Professional Fees incurred and unpaid as of such time, plus an amount equal to the Carve Out Cap in a segregated account to be utilized solely for the payment of Professional Fees, and the DIP Agent, the DIP Lenders, the Prepetition Agent and the Prepetition Lenders shall not hinder or delay the Loan Parties' compliance with the foregoing deposit requirement. Notwithstanding the foregoing deposit, no portion of the Professional Fees otherwise within the Carve Out shall cease to be within the Carve Out.

(c) For purposes hereof, the "Lien Avoidance Carve Out" shall mean the amount of $500,000 (subject to increase for cause and approval of the Court), which sum shall be segregated from the Loan Parties' cash on hand as of the Petition Date. The Lien Avoidance Carve Out shall be available only to the Loan Parties in accordance with the provisions of the DIP Agreement, this Order and the Final Order and only to investigate and, if necessary, prosecute an Avoidance Action to avoid one or more prepetition liens securing the Prepetition Obligations. For the avoidance of doubt and notwithstanding anything to the contrary herein, in the DIP Documents, or in the Prepetition Credit Agreement and related documents and agreements, the Lien Avoidance Carve Out shall be senior to all liens securing the DIP Obligations, the adequate protection liens, all claims and any and all other forms of adequate protection, liens or claims securing the DIP Obligations and Prepetition Obligations granted or recognized as valid, including the liens and security interests granted to the Prepetition Secured Lenders.

7. *DIP Liens*. As security for the DIP Obligations, effective and perfected upon the date of this Order and without the necessity of the execution by the Loan Parties (or recordation or other filing) of security agreements, control agreements, pledge agreements, financing

14

statements, mortgages or other similar documents, or the possession or control by the DIP Agent of any property, the following security interests and liens are hereby granted to the DIP Agent, for its own benefit and the benefit of the DIP Lenders (all property identified in clauses (a), (b) and (c) below being collectively referred to as the "DIP Collateral"), subject only to the Carve Out and the Lien Avoidance Carve Out (all such liens and security interests granted to the DIP Agent, for its benefit and for the benefit of the DIP Lenders, pursuant to this Order and the DIP Documents, the "DIP Liens"):

(a)    First Lien on Unencumbered Property.  Pursuant to section 364(c)(2) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected first priority lien on, and security interest in, all tangible and intangible prepetition and postpetition property in which the Loan Parties have an interest, whether existing on or as of the Petition Date or thereafter acquired, that is not subject to valid, perfected, non-avoidable and enforceable liens in existence on or as of the Petition Date (collectively, the "Unencumbered Property"), including, without limitation, any and all unencumbered cash, accounts receivable, inventory, general intangibles, contracts, securities, chattel paper, owned real estate, real property leaseholds, fixtures, machinery, equipment, deposit accounts, patents, copyrights, trademarks, tradenames, rights under license agreements and other intellectual property, capital stock of the subsidiaries of each Loan Party and the proceeds of all of the foregoing; provided that, the Loan Parties shall not be required to pledge in excess of 65% of the capital stock of their direct foreign subsidiaries or any of the capital stock or interests of indirect foreign subsidiaries (if adverse tax consequences would result to the Borrower); provided further that the Unencumbered Property shall not include the Avoidance Actions and any assets upon which security may not be lawfully

52928-001\DOCS_DE:165488.1

granted, but subject to the entry of the Final Order, Unencumbered Property shall include any proceeds or property recovered in respect of any Avoidance Actions.

(b)  Liens Junior to Certain Existing Liens.  Pursuant to section 364(c)(3) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected junior lien on, and security interest in all tangible and intangible prepetition and postpetition property in which the Loan Parties have an interest (other than the property described in paragraph 7(c), as to which the DIP Liens will be as described in such clause), whether now existing or hereafter acquired and all proceeds thereof, that is subject to valid, perfected and unavoidable liens in existence immediately prior to the Petition Date or to valid and unavoidable liens in existence immediately prior to the Petition Date that are perfected after the Petition Date as permitted by section 546(b) of the Bankruptcy Code, which security interests and liens in favor of the DIP Agent and the DIP Lenders shall be junior to such valid, perfected and unavoidable liens.

(c)  Liens Priming Prepetition Secured Lenders' Liens.  Pursuant to section 364(d)(1) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected first priority, senior priming lien on, and security interest in, all now or hereafter acquired Prepetition Collateral and all proceeds thereof.  The DIP Liens on the Prepetition Collateral shall be senior in all respects to the security interests in, and liens on, the Prepetition Collateral of the Prepetition Agent and the Prepetition Secured Lenders (including, without limitation, the Adequate Protection Liens (as defined in paragraph 13(a) below)), but shall be junior to any valid, perfected and unavoidable security interests in and liens on the Prepetition Collateral that were valid and senior to the liens of the Prepetition Agent and the Prepetition Secured Lenders as of the Petition Date, including as permitted by section 546(b) of the Bankruptcy Code.

52928-001\DOCS_DE:165488.1

(d) <u>Liens Senior to Certain Other Liens</u>. The DIP Liens and the Adequate Protection Liens shall not be (i) subject or subordinate to (A) any lien or security interest that is avoided and preserved for the benefit of the Loan Parties and their estates under section 551 of the Bankruptcy Code or (B) any liens arising after the Petition Date or (ii) subordinated to or made *pari passu* with any other lien or security interest under sections 363 or 364 of the Bankruptcy Code or otherwise. To the extent any liens securing the Prepetition Obligations are avoided, the Prepetition Collateral that had been subject to such avoided liens will be automatically subject to the first priority DIP Liens and remaining Adequate Protection Liens.

8. *Remedies After Event of Default.*

(a) The automatic stay under section 362 of the Bankruptcy Code is vacated and modified to the extent necessary to permit the DIP Agent and the DIP Lenders to exercise, (i) immediately upon the occurrence and during the continuance of an Event of Default, all rights and remedies under the DIP Documents, other than those rights and remedies against the DIP Collateral as provided in clause (ii) below and subject to the limitations set forth in paragraph 8(b) of this Order with respect to an Avoidance Action Default, and (ii) upon the occurrence and during the continuance of an Event of Default, and following the giving of five business days' prior written notice to the Debtors (with a copy to lead counsel for the Debtors, lead counsel to the Committee and to the U.S. Trustee) and subject to the limitations set forth in paragraph 8(b) of this Order with respect to an Avoidance Action Default, all rights and remedies against the DIP Collateral provided for in the DIP Documents and this Order (including, without limitation, the right to setoff monies of the Loan Parties in accounts maintained with the DIP Agent or any DIP Lender and the right to prohibit further use of Cash Collateral), in each case subject to the funding requirement set forth in paragraph 6(b) of this Order. In any hearing regarding any

exercise of rights or remedies, the only issue that may be raised by any party in opposition thereto shall be whether, in fact, an Event of Default has occurred and is continuing.  In no event shall the DIP Agent, the DIP Lenders, the Prepetition Agent or the Prepetition Secured Lenders be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to the DIP Collateral.  The DIP Agent's or any DIP Lender's delay or failure to exercise rights and remedies under the DIP Documents or this Order shall not constitute a waiver of the DIP Agent's or the DIP Lenders' rights hereunder, thereunder or otherwise, unless any such waiver is pursuant to a written instrument executed in accordance with the terms of the DIP Agreement.

(b)     Following the occurrence of an Event of Default under the DIP Documents, the Prepetition Secured Lenders may not exercise any rights or remedies under the Prepetition Loan Documents or this Order unless and until all DIP Obligations have been paid in full in cash and all commitments thereunder have been terminated.  Following the occurrence of an Event of Default under the DIP Documents, after all DIP Obligations have been paid in full in cash and all commitments thereunder have been terminated, the Prepetition Secured Lenders may, provided that the liens on Cash Collateral securing the Prepetition Obligations have not been avoided, prohibit further use of the Cash Collateral, subject to further order of the Bankruptcy Court, as provided herein or in the Prepetition Loan Documents, in each case subject to the funding requirement set forth in paragraph 6(b) of this Order and subject to the Debtors' right to utilize the Lien Avoidance Carve Out.  If, prior to the payment in full in cash of all DIP Obligations and all commitments thereunder having been terminated, the Prepetition Secured Lenders or any other party holding a claim junior to the DIP Obligations receive any DIP Collateral or proceeds thereof, the DIP Lenders shall have the right to seek to recover any such DIP Collateral or proceeds.  Following the occurrence of an Event of Default triggered upon the

18

Loan Parties' filing a complaint or other pleading contesting any of the Prepetition Secured Lenders' prepetition liens in an Avoidance Action (such Event of Default, an "Avoidance Action Default") and provided that no other Event of Default has occurred and is continuing, the Loan Parties may continue to utilize Cash Collateral, subject to the other terms and conditions of the DIP Documents and this Order and without limiting any other rights and remedies thereunder and hereunder, for a period of sixty (60) days following the occurrence an Avoidance Action Default; provided, however, that the Loan Parties' right to use Cash Collateral shall terminate immediately without any requirement of notice if another Event of Default occurs and is continuing during such sixty-day period. Upon the expiration or earlier termination of such sixty-day period, the DIP Agent and the DIP Lenders shall have the right to exercise all of their rights and remedies in accordance with the terms of this Order, including, without limitation, those set forth in paragraph 8(a)(ii). For the avoidance of doubt, other than the use of the Lien Avoidance Carve Out in accordance with the terms of this Order, the Loan Parties may not use the DIP Lenders' DIP Collateral to challenge in any manner the claims and liens of the Prepetition Secured Lenders.

9.     *Limitation on Charging Expenses Against Collateral.* Subject to and effective upon entry of the Final Order and to the extent provided for therein, except to the extent of the Carve Out and the Lien Avoidance Carve Out, no expenses of administration of the Cases or any future proceeding that may result therefrom, including liquidation in bankruptcy or other proceedings under the Bankruptcy Code, shall be charged against or recovered from the DIP Collateral or the Prepetition Collateral pursuant to section 506(c) of the Bankruptcy Code or any similar principle of law or in equity, without the prior written consent of the DIP Agent or the Prepetition Agent, as the case may be, and no such consent shall be implied from any other

action or inaction by the DIP Agent, the DIP Lenders, the Prepetition Agent or the Prepetition Secured Lenders.

10. *Payments Free and Clear.* Any and all payments or proceeds remitted to the DIP Agent on behalf of the DIP Lenders or the Prepetition Agent on behalf of the Prepetition Secured Lenders pursuant to the provisions of this Order or any subsequent order of this Court shall be received free and clear of any claim, charge, assessment or other liability.

11. *Cash Collateral.* All of the Loan Parties' cash, including, without limitation, all cash and other amounts from time to time on deposit or maintained by the Loan Parties in any account or accounts with any Prepetition Secured Lender and any cash proceeds of the disposition of any Prepetition Collateral, constitute proceeds of the Prepetition Collateral and, therefore, are cash collateral of the Prepetition Secured Lenders within the meaning of section 363(a) of the Bankruptcy Code (the "Cash Collateral").

12. *Use of Prepetition Collateral (including Cash Collateral).* The Loan Parties are hereby authorized to use the Prepetition Collateral, including the Cash Collateral, during the period from the Petition Date through and including the Termination Date under the DIP Agreement for working capital and general corporate purposes in accordance with and subject to the terms and conditions of this Order and the DIP Agreement; provided that, (a) the Prepetition Secured Lenders are granted adequate protection as hereinafter set forth and (b) except on the terms of this Order, or other order entered by the Bankruptcy Court after notice and an opportunity to be heard, the Loan Parties shall be enjoined and prohibited from at any time using the Cash Collateral.

13. *Adequate Protection.* Subject to the provisions of paragraph (f) hereof, the Prepetition Agent and the Prepetition Secured Lenders are entitled, pursuant to sections 361,

363(c)(2) and 364(d)(1) of the Bankruptcy Code, to adequate protection of their interests in the Prepetition Collateral, including Cash Collateral, in an amount equal to the aggregate diminution in value of the Prepetition Collateral to the extent of their interests therein, including without limitation, any such diminution resulting from the sale, lease or use by the Loan Parties (or other decline in value) of any Prepetition Collateral, including the Cash Collateral, the priming of the Prepetition Agent's liens on the Prepetition Collateral by the DIP Liens, and the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code, to the extent provided for under section 507(b) of the Bankruptcy Code (such diminution in value, if any, the "Adequate Protection Obligations").   As adequate protection, the Prepetition Agent and the Prepetition Secured Lenders are hereby granted the following:

(a)     Adequate Protection Liens.  As security for the payment of the Adequate Protection Obligations, the Prepetition Agent (for itself and for the benefit of the Prepetition Secured Lenders) is hereby granted (effective and perfected upon the date of this Order and without the necessity of the execution by the Loan Parties of security agreements, pledge agreements, mortgages, financing statements or other agreements) a valid, perfected replacement security interest in and lien on all of the DIP Collateral (the "Adequate Protection Liens"), subject and subordinate only to (i) the Permitted Prepetition Liens, (ii) the DIP Liens, (iii) the Carve Out and (iv) the Lien Avoidance Carve Out.

(b)     Section 507(b) Claim.   The Adequate Protection Obligations shall constitute superpriority claims as provided in section 507(b) of the Bankruptcy Code (the "507(b) Claims"), with priority in payment over any and all administrative expenses of the kinds specified or ordered pursuant to any provision of the Bankruptcy Code, including without limitation, sections 326, 328, 330, 331, 503(b), 506(c), 507(a), 726, 1113 and 1114 of the

Bankruptcy Code, subject and subordinate only to (i) the Carve Out, (ii) the Lien Avoidance Carve Out and (iii) the Superpriority Claims granted in respect of the DIP Obligations. Except to the extent expressly set forth in this Order, the Prepetition Agent and the Prepetition Secured Lenders shall not receive or retain any payments, property or other amounts in respect of the 507(b) Claims unless and until the payment in full in cash of all obligations arising under or relating to the Loans under the DIP Agreement and the termination of the commitments under the DIP Agreement (the "Discharge of the DIP Obligations").

(c) <u>Fees and Expenses</u>. The Prepetition Agent shall receive from the Loan Parties reimbursement of all fees and expenses incurred or accrued, whether prior to or after the Petition Date, by the Prepetition Agent under the Prepetition Loan Documents, including without limitation, the reasonable fees and disbursements of financial advisors (which may include an additional accounting or investment banking firm) and counsel (in each relevant jurisdiction) to the Prepetition Agent. None of the fees and expenses payable pursuant to this paragraph 13(c) shall be subject to separate approval by this Court (but this Court shall resolve any dispute as to the reasonableness of any such fees and expenses), and no recipient of any such payment shall be required to file any interim or final fee application with respect thereto. The Loan Parties shall pay the fees and expenses provided for in this paragraph 13(c) promptly (but no later than ten (10) business days) after invoices for such fees and expenses shall have been submitted to the Loan Parties, and the Loan Parties shall promptly provide copies of such invoices to the Committee and the U.S. Trustee.

(d) <u>Information</u>. The Loan Parties shall promptly provide to the Prepetition Agent any written financial information or periodic reporting that is provided to, or required to

be provided to, the DIP Agent or the DIP Lenders, with such information and reporting being subject to the confidentiality undertakings set forth in the Prepetition Credit Agreement.

(e)     <u>Application of Proceeds</u>.  So long as the Discharge of the DIP Obligations has not occurred, all proceeds of any Prepetition Collateral pursuant to the enforcement of any of the Prepetition Loan Documents or the exercise of any remedial provision thereunder or under this Order or the Final Order, together with all other proceeds received by any Prepetition Secured Lender as a result of any such enforcement or the exercise of any such remedial provision or as a result of any distribution of or in respect of any Prepetition Collateral (whether or not expressly characterized as such), or the application of any Prepetition Collateral (or proceeds thereof) to the payment thereof or any distribution of Prepetition Collateral (or proceeds thereof) upon the liquidation or dissolution of any Debtor, shall be turned over by the Prepetition Agent to the DIP Agent until the Discharge of the DIP Obligations has occurred. Upon the Discharge of the DIP Obligations, subject to the terms hereof, the DIP Agent shall deliver to the Prepetition Agent any proceeds of Prepetition Collateral held by it in the same form as received, with any necessary endorsements or as a court of competent jurisdiction may otherwise direct.  No Prepetition Collateral or any proceeds thereof may be applied against the Prepetition Obligations without further order of the Bankruptcy Court.

(f)     <u>Reservation of Rights.</u>   Notwithstanding anything to the contrary herein, the Bankruptcy Court reserves the right to unwind (in part or in whole) the adequate protection provided in clauses (a) and (b) above, after notice and a hearing, solely to the extent that a final and non-appealable order or judgment has been entered by a court of competent jurisdiction in favor of Loan Parties in an Avoidance Action brought by the Loan Parties with respect to one or more of the Prepetition Secured Lenders' prepetition liens.

52928-001\DOCS_DE:165488.1

14.    *Reservation of Rights of Prepetition Secured Lenders and Debtors.*

(a)    Based upon the record made by the Debtors at the Interim Hearing, this Court finds that the adequate protection provided herein is reasonable and sufficient to protect the interests of the Prepetition Agent and the Prepetition Secured Lenders. Notwithstanding any other provision hereof, the grant of adequate protection to the Prepetition Agent and the Prepetition Secured Lenders pursuant hereto is without prejudice to the right of the Prepetition Agent to seek modification of the grant of adequate protection provided hereby so as to provide different or additional adequate protection, and without prejudice to the right of the Loan Parties or any other party in interest to contest any such modification. The Prepetition Secured Lenders reserve all of their rights and remedies following the Discharge of the DIP Obligations. Except as expressly provided herein, nothing contained in this Order (including, without limitation, the authorization to use any Cash Collateral) shall impair or modify any rights, claims or defenses available in law or equity to the Prepetition Agent or any Prepetition Secured Lender.

(b)    The Debtors retain all rights to investigate and prosecute, if necessary, the Avoidance Actions, including with respect to liens securing the Prepetition Obligations at any time, subject to the time bar set forth in section 546(a) of the Bankruptcy Code.

15.    *Perfection of DIP Liens and Adequate Protection Liens.*

(a)    The DIP Agent, the DIP Lenders, the Prepetition Agent and the Prepetition Secured Lenders are hereby authorized, but not required, to file or record financing statements, intellectual property filings, mortgages, notices of lien or similar instruments in any jurisdiction, take possession of or control over, or take any other action in order to validate and perfect the liens and security interests granted to them hereunder. Whether or not the DIP Agent or the Prepetition Agent shall, in their respective sole discretion, choose to file such financing

24

statements, intellectual property filings, mortgages, notices of lien or similar instruments, take possession of or control over, or otherwise confirm perfection of the liens and security interests granted to them hereunder, such liens and security interests shall be deemed valid, perfected, allowed, enforceable, non-avoidable and not subject to challenge, dispute or subordination as of the date of entry of this Order.

(b)  A certified copy of this Order may, in the discretion of the DIP Agent or the Prepetition Agent, as the case may be, be filed with or recorded in filing or recording offices in addition to or in lieu of such financing statements, mortgages, notices of lien or similar instruments, and all filing offices are hereby authorized to accept such certified copy of this Order for filing and recording.

(c)  The Loan Parties shall execute and deliver to the DIP Agent and the Prepetition Agent, as the case may be, all such agreements, financing statements, instruments and other documents as the DIP Agent and the Prepetition Agent may reasonably request to evidence, confirm, validate or perfect the DIP Liens and the Adequate Protection Liens.

(d)  Subject to entry of the Final Order and to the extent provided for therein, any provision of any lease or other license, contract or other agreement that requires (i) the consent or approval of one or more landlords or other parties or (ii) the payment of any fees or obligations to any governmental entity, in order for any Loan Party to pledge, grant, sell, assign, or otherwise transfer any such leasehold interest, or the proceeds thereof, or other DIP Collateral related thereto, is hereby deemed to be inconsistent with the applicable provisions of the Bankruptcy Code. Any such provision shall have no force and effect with respect to the granting of DIP Liens or Adequate Protection Liens on such leasehold interest or the proceeds of any

25

assignment and/or sale thereof by any Loan Party in favor of the DIP Lenders or the Prepetition Secured Lenders in accordance with the terms of the DIP Documents or this Order.

16. *Preservation of Rights Granted Under the Order.*

(a) No claim or lien having a priority senior to or *pari passu* with those granted by this Order to the DIP Agent, the DIP Lenders, the Prepetition Agent and the Prepetition Secured Lenders shall be granted or allowed and the DIP Liens and the Adequate Protection Liens shall not be subject or junior to any lien or security interest that is avoided and preserved for the benefit of the Loan Parties' estates under section 551 of the Bankruptcy Code or subordinated to or made *pari passu* with any other lien or security interest, whether under section 364(d) of the Bankruptcy Code or otherwise.

(b) The Debtors shall not seek, and it shall constitute an Event of Default under the DIP Agreement and a termination of the right to use Cash Collateral if any of the Debtors seek, or if there is entered, any modification of this Order without the prior written consent of the DIP Agent and the Prepetition Agent, and no such consent shall be implied by any other action, inaction or acquiescence by the DIP Agent or the Prepetition Agent; provided, however, if any such modification results from entry of an order that does not explicitly modify this Order, notice of such Event of Default must be given in writing and the Debtors shall have the right to use the Lien Avoidance Carve Out and Cash Collateral for the remaining balance of any sixty-day period that had already commenced in accordance with paragraph 8(b). It shall also be an Event of Default if any of the Debtors seek or if there is an order entered dismissing or converting any of the Cases under section 1112 of the Bankruptcy Code or otherwise. If an order dismissing any of the Cases under section 1112 of the Bankruptcy Code or otherwise is at any time entered, (A) the Superpriority Claims, the 507(b) Claims, the other administrative expense

26

claims granted pursuant to this Order, the DIP Liens and the Adequate Protection Liens shall continue in full force and effect and shall maintain their priorities as provided in this Order until all DIP Obligations and all Adequate Protection Obligations shall have been paid and satisfied in full (and such Superpriority Claims, the 507(b) Claims, the other administrative expense claims granted pursuant to this Order, the DIP Liens and the Adequate Protection Liens shall, notwithstanding such dismissal, remain binding on all parties in interest) and (B) this Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing the claims, liens and security interests referred to in clause (A) above.

(c)     If any or all of the provisions of this Order are hereafter reversed, modified, vacated or stayed, such reversal, stay, modification or vacatur shall not affect (i) the validity, priority or enforceability of any DIP Obligations or the Adequate Protection Obligations incurred prior to the actual receipt of written notice by the DIP Agent or the Prepetition Agent, as applicable, of the effective date of such reversal, stay, modification or vacatur or (ii) the validity, priority or enforceability of the DIP Liens or the Adequate Protection Liens.  Notwithstanding any such reversal, stay, modification or vacatur, any use of Cash Collateral, any DIP Obligations or any Adequate Protection Obligations incurred by the Loan Parties to the DIP Agent, the DIP Lenders, the Prepetition Agent or the Prepetition Secured Lenders, as the case may be, prior to the actual receipt of written notice by the DIP Agent and the Prepetition Agent of the effective date of such reversal, stay, modification or vacatur shall be governed in all respects by the original provisions of this Order, and the DIP Agent, the DIP Lenders, the Prepetition Agent and the Prepetition Secured Lenders shall be entitled to all of the rights, remedies, privileges and benefits granted in section 364(e) of the Bankruptcy Code, this Order and pursuant to the DIP Documents.

(d)     Except as expressly provided in this Order or in the DIP Documents, the DIP Liens, the Superpriority Claims, the Adequate Protection Obligations, the 507(b) Claims and all other rights and remedies of the DIP Agent, the DIP Lenders, the Prepetition Agent and the Prepetition Secured Lenders granted by this Order and the DIP Documents shall survive, and shall not be modified, impaired or discharged by (i) the entry of an order converting any of the Cases to a case under chapter 7 of the Bankruptcy Code, dismissing any of the Cases or by any other act or omission, or (ii) the entry of an order confirming a plan of reorganization in any of the Cases and, pursuant to section 1141(d)(4) of the Bankruptcy Code, the Loan Parties having waived any discharge as to any remaining DIP Obligations or Adequate Protection Obligations. The terms and provisions of this Order and the DIP Documents shall continue in the Cases, in any successor cases if the Cases cease to be jointly administered, or in any superseding chapter 7 cases under the Bankruptcy Code, and the DIP Liens, the Adequate Protection Liens, the DIP Obligations, the Superpriority Claims, the Section 507(b) Claims, the other administrative expense claims granted pursuant to this Order, and all other rights and remedies of the DIP Agent, the DIP Lenders, the Prepetition Agent and the Prepetition Secured Lenders granted by this Order and the DIP Documents shall continue in full force and effect until all DIP Obligations and all Adequate Protection Obligations are indefeasibly paid in full in cash.

17.     *Effect of Stipulations on Third Parties.*  For the avoidance of doubt, the only parties authorized to bring an Avoidance Action, including with respect to the Prepetition Credit Agreement, are the Debtors. The stipulations and admissions contained in this Order, including, without limitation, in paragraphs 3 and 11 of this Order, shall be binding solely upon the Loan Parties in all circumstances. The stipulations and admissions contained in this Order, including, without limitation, in paragraphs 3 and 11 of this Order, shall be binding upon all other parties in

52928-001\DOCS_DE:165488.1

interest, including, without limitation, the Committee, unless (a) the Committee or any other party-in-interest, including any chapter 7 trustee that may be appointed in any subsequent chapter 7 case of the Debtors, in each case, with requisite standing, has duly filed an adversary proceeding (subject to the limitations contained herein, including without limitation, in paragraph 18) by no later than the date that is the later of (i) in the case of any such adversary proceeding filed by a party-in-interest with requisite standing other than the Committee, 75 days after the date of entry of this Order, (ii) in the case of any such adversary proceeding filed by the Committee, 60 days after the appointment of the Committee, (iii) any such later date agreed to in writing by the Prepetition Agent and (iv) any such later date ordered by the Court for cause shown after notice and an opportunity to be heard provided that such order is entered before the termination of any such applicable period as set forth in paragraph 17(a)(i), (ii) or (iii), (A) challenging the validity or enforceability of the Prepetition Obligations or (B) otherwise asserting or prosecuting any other claims, counterclaims or causes of action, objections, contests or defenses (collectively, the "Claims and Defenses") against the Prepetition Agent or any of the Prepetition Secured Lenders or their respective agents, affiliates, subsidiaries, directors, officers, representatives, attorneys or advisors in connection with any matter related to the Prepetition Obligations and (b) an order is entered by a court of competent jurisdiction and becomes final and non-appealable in favor of the plaintiff sustaining any such challenge or claim in any such duly filed adversary proceeding; provided, however, in no event shall the Claims and Defenses include any Avoidance Actions; provided further, that, as to the Loan Parties, all such Claims and Defenses (expressly excluding any Avoidance Actions) are hereby irrevocably waived and relinquished as of the Petition Date. If no such adversary proceeding with respect to the Claims and Defenses is duly filed and successfully prosecuted as provided in the penultimate sentence of

this paragraph in respect of the Prepetition Obligations, the Prepetition Obligations shall constitute allowed claims, not subject to counterclaim, setoff, subordination, disallowance, recharacterization, defense or avoidance, for all purposes in the Cases and any subsequent chapter 7 case. Except to the extent of any Avoidance Action that may be brought by the Loan Parties in accordance with the provisions of this Order, the liens on the Prepetition Collateral securing the Prepetition Obligations, as the case may be, shall be deemed to have been, as of the Petition Date, and to be, legal, valid, binding, perfected and of the priority specified in paragraph 3(b), not subject to defense, counterclaim, recharacterization, subordination, disallowance or avoidance. Further, except as expressly set forth herein, the Prepetition Obligations, the Prepetition Agent and the Prepetition Secured Lenders, as the case may be, and the liens on the Prepetition Collateral granted to secure the Prepetition Obligations shall not be subject to any other or further challenge by (as applicable) the Debtors, the Committee or any other party-in-interest, and the Debtors, such Committee or party-in-interest shall be enjoined from seeking to exercise the rights of the Debtors' estates, including without limitation, any successor thereto (including, without limitation, any estate representative or a chapter 7 or 11 trustee appointed or elected for any of the Debtors). If any such adversary proceeding is timely filed, the stipulations and admissions contained in paragraphs 3 and 11 of this Order shall nonetheless remain binding and preclusive (as provided in the second sentence of this paragraph) on the Committee and any other party-in-interest, except as to any such findings and admissions related to the Claims and Defenses that were permitted to be challenged by the Committee pursuant to this paragraph and that were expressly and successfully challenged in such adversary proceeding as set forth in a final, non-appealable order of a court of competent jurisdiction. Nothing in this Order vests or confers on any Person, including the Committee, standing or authority to pursue any cause of

action belonging to the Debtors or their estates, including, without limitation, Avoidance Actions and Claims and Defenses with respect to the Prepetition Loan Documents or the Prepetition Obligations or any liens granted by any Debtor to secure any of the foregoing.

18.    *Limitation on Use of DIP Financing and DIP Collateral.*  The Loan Parties shall use the DIP Financing and the Prepetition Collateral (including the Cash Collateral) solely as provided in this Order and the DIP Documents.  Notwithstanding anything herein or in any other order of this Court to the contrary, but subject to the provisos below, no Loans under the DIP Agreement, DIP Collateral, Prepetition Collateral (including the Cash Collateral) or the Carve Out may be used to (a) object, contest or raise any defense to, the validity, perfection, priority, extent or enforceability of any amount due under the DIP Documents, the Prepetition Loan Documents or the liens or claims granted under this Order, the DIP Documents or the Prepetition Loan Documents, (b) assert any Claims and Defenses or any other causes of action against the DIP Agent, the DIP Lenders, the Prepetition Agent, the Prepetition Secured Lenders or their respective agents, affiliates, subsidiaries, directors, officers, representatives, attorneys or advisors, (c) prevent, hinder or otherwise delay the DIP Agent's or the Prepetition Agent's assertion, enforcement or realization on the Prepetition Collateral or the DIP Collateral in accordance with the DIP Documents, the Prepetition Loan Documents or this Order, (d) seek to modify any of the rights granted to the DIP Agent, the DIP Lenders, the Prepetition Agent or the Prepetition Secured Lenders hereunder or under the DIP Documents or the Prepetition Loan Documents, in the case of each of the foregoing clauses (a) through (d), without such party's prior written consent or (e) pay any amount on account of any claims arising prior to the Petition Date unless such payments are (i) approved by an Order of this Court and (ii) permitted under the DIP Documents; provided, however, that the Lien Avoidance Carve Out may be used by only

31

the Loan Parties to investigate and, if necessary, prosecute an Avoidance Action in accordance with the terms of this Order; provided, further, that no more than an aggregate amount of $75,000 of the Prepetition Collateral (including the Cash Collateral), Loans under the DIP Agreement, the DIP Collateral or the Carve Out may be used by the Committee to investigate Claims and Defenses.

19.    *Insurance.*  To the extent the Prepetition Agent is listed as loss payee under the Loan Parties' insurance policies, the DIP Agent is also deemed to be the loss payee under the Loan Parties' insurance policies and shall act in that capacity and distribute any proceeds recovered or received in respect of any such insurance policies, first, to the payment in full of the DIP Obligations, and second, to the payment of the Prepetition Obligations.

20.    *Master Proof of Claim.*

(a)    To facilitate the processing of claims, to ease the burden upon this Court and to reduce any unnecessary expense to the Loan Parties' estates, the Prepetition Agent is authorized (but not required) to file a single master proof of claim on behalf of itself and the Prepetition Secured Lenders on account of their claims arising under the Prepetition Loan Documents and hereunder against all Loan Parties (the "Master Proof of Claim"), and the Prepetition Agent shall not be required to file a verified statement pursuant to Bankruptcy Rule 2019 in any of the Cases.

(b)    Upon filing of the Master Proof of Claim, the Prepetition Agent, each Prepetition Secured Lender and each of their respective successors and assigns, shall be deemed to have filed a proof of claim in the amount set forth opposite its name therein in respect of its claims against each of the Loan Parties arising under the Prepetition Loan Documents as if each such entity had filed a separate proof of claim in each of the Cases in the amount set forth in the

Master Proof of Claim; <u>provided</u> that the Prepetition Agent may, but shall not be required, to amend the Master Proof of Claim from time to time to, among other things, reflect a change in the holders of the claims set forth therein or a reallocation among such holders of the claims asserted therein resulting from any transfer of any such claims.

(c)     The provisions set forth in paragraphs (a) and (b) above and the Master Proof of Claim are intended solely for the purpose of administrative convenience and, except to the extent set forth herein or therein, neither the provisions of this paragraph nor the Master Proof of Claim shall affect the substantive rights of the Debtors, the Committee, the Prepetition Agent, the Prepetition Secured Lenders or any other party in interest or their respective successors in interest, including without limitation, the right of each Prepetition Secured Lender (or its successor in interest) to vote separately on any plan of reorganization proposed in the Cases.

21.     *Order Governs.*  In the event of any inconsistency between the provisions of this Order and the DIP Documents, the provisions of this Order shall govern.

22.     *Binding Effect; Successors and Assigns.*  The DIP Documents and the provisions of this Order, including all findings herein, shall be binding upon all parties-in-interest in the Cases, including without limitation, the DIP Agent, the DIP Lenders, the Prepetition Agent, the Prepetition Secured Lenders, the Committee, and the Debtors and their respective successors and assigns (including any chapter 7 or chapter 11 trustee hereinafter appointed or elected for any of the Debtors, an examiner appointed pursuant to section 1104 of the Bankruptcy Code, or any other fiduciary appointed as a legal representative of any of the Debtors or with respect to the property of the estate of any of the Debtors) and shall inure to the benefit of the DIP Agent, the DIP Lenders, the Prepetition Agent, the Prepetition Secured Lenders and the Debtors and their

respective successors and assigns; provided that, except to the extent expressly set forth in this Order, the DIP Agent, the Prepetition Agent, the DIP Lenders and the Prepetition Secured Lenders shall have no obligation to permit the use of Cash Collateral or extend any financing to any chapter 7 trustee or similar responsible person appointed for the estates of the Debtors.

23. *Limitation of Liability.* In determining to make any loan under the DIP Agreement, permitting the use of Cash Collateral or in exercising any rights or remedies as and when permitted pursuant to this Order or the DIP Documents, the DIP Agent, the Prepetition Agent, the DIP Lenders and the Prepetition Secured Lenders shall not be deemed to be in control of the operations of the Loan Parties or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Loan Parties (as such terms, or any similar terms, are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 29 U.S.C. §§ 9601 et seq. as amended, or any similar federal or state statute). Furthermore, nothing in this Order or in the DIP Documents shall in any way be construed or interpreted to impose or allow the imposition upon the DIP Agent, the DIP Lenders, the Prepetition Agent or the Prepetition Secured Lenders any liability for any claims arising from the prepetition or postpetition activities of any of the Loan Parties, the Debtors and their affiliates (as defined in section 101(2) of the Bankruptcy Code).

24. *Effectiveness.* This Order shall constitute findings of fact and conclusions of law and shall take effect immediately upon execution hereof as of the Petition Date, and there shall be no stay of execution of effectiveness of this Order.

25. *Final Hearing.* The Final Hearing is scheduled for _____ __, 2010 at __:00 _.m., prevailing Eastern time, before this Court.

26.    *Final Hearing Notice.*  The Debtors shall promptly mail copies of this Order (which shall constitute adequate notice of the Final Hearing) to the parties that received notice of the Interim Hearing, and to any other party that has filed a request for notices with this Court and to the Committee after the same has been appointed, or Committee counsel, if the same shall have been appointed.  Any party-in-interest objecting to the relief sought at the Final Hearing shall serve and file written objections; which objections shall be served upon (a) Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York 10022, Attention: Christopher J. Marcus, Esq. (christopher.marcus@kirkland.com) and Ross M. Kwasteniet, Esq. (ross.kwasteniet@kirkland.com), attorneys for the Debtors, (b) Pachulski Stang Ziehl & Jones LLP, 919 North Market Street, 17th Floor, Wilmington, Delaware 19899, Attention: Laura Davis Jones, Esq. (ljones@pszj.com), local counsel for the Debtors, (c) Simpson Thacher & Bartlett LLP, 425 Lexington Avenue, New York, New York 10017, Attention: Sandy Qusba, Esq. (squsba@stblaw.com), attorneys for the DIP Agent and the Prepetition Agent, (d) Richards, Layton & Finger, P.A., One Rodney Square, 920 North King Street, Wilmington, Delaware 19801, Attention: Mark Collins, Esq. (collins@rlf.com), local counsel for the DIP Agent and the Prepetition Agent and (e) the U.S. Trustee, 844 King Street, Suite 2207, Wilmington, Delaware 19801, Attention: Richard Schepacarter, Esq. and shall be filed with the Clerk of the United States Bankruptcy Court, District of Delaware, in each case to allow actual receipt by the foregoing no later than _____ __, 2010 at _:00 p.m., prevailing Eastern time.

Dated:    November __, 2010
       Wilmington, Delaware

                                      _____

                                      United States Bankruptcy Judge

52928-001\DOCS_DE:165488.1