(a)     the Disposition of (x) Property having an aggregate fair market value of $250,000 or less in any Disposition or series of related Dispositions or (y) obsolete, damaged or worn out Property;

(b)     the sale of the Borrower's or such Subsidiary's primary products and services in the ordinary course of business;

(c)     Dispositions permitted by Section 7.4;

(d)     [RESERVED];

(e)     other Dispositions to the extent that the aggregate Net Cash Proceeds received from all such Dispositions permitted by this clause (e) shall not exceed $1,000,000 in the aggregate during the term of this Agreement; provided that (i) each such Disposition shall be in an amount at least equal to the fair market value thereof and for proceeds consisting of at least 75% cash (with the assumption of Indebtedness (other than Indebtedness subordinated in right of payment to any of the Obligations or to any of the obligations of any Guarantor under Section 10) and the sale for cash within thirty (30) days of receipt of securities received counted as cash) and (ii) the Net Cash Proceeds of any such sale are applied as required by Section 2.12;

(f)     any Recovery Event, provided that the requirements of Section 2.12 are complied with in connection therewith;

(g)     a Disposition of assets between or among the Borrower and any Subsidiary Guarantor or by any Subsidiary Guarantor to the Borrower or any Subsidiary Guarantor;

(h)     the sale or other Disposition of cash or Cash Equivalents in the ordinary course of business;

(i)     the license or sublicense of Intellectual Property in the ordinary course of business;

(j)     any lease, license, sublease or sublicense of any property in ordinary course; provided that the requirements of Section 7.3 are complied with in connection therewith;

(k)     the write-off, discount sale or other Disposition of defaulted or past due receivables and similar obligations (other than those owed by Affiliates of Debtors) in the ordinary course of business; and

(l)     Properties described on Schedule 7.5(l).

7.6     **Limitation on Restricted Payments**.  Declare or pay any dividend on, or make any payment on account of, or set apart assets for a sinking or other analogous fund for, the purchase, redemption, defeasance, retirement or other acquisition of, any Capital Stock of the Borrower or any Subsidiary, whether now or hereafter outstanding, or make any other

- 72 -

distribution in respect thereof, either directly or indirectly, whether in cash or property or in obligations of the Borrower or any Subsidiary (collectively, "Restricted Payments"), except that (a) any Debtor may make Restricted Payments to any other Debtor, (b) any Subsidiary may make a Restricted Payment to another Subsidiary or the Borrower in respect of its Capital Stock on a pro rata basis and (c) any Loan Party may make Restricted Payments to Regatta Holdings or to any other Loan Party so that Regatta Holdings or any Loan Party may make Restricted Payments (i) in the amount of the Permitted LIMI Payment Amount on a bi-weekly basis and (ii) to provide funds to pay Taxes imposed on the common parent of a consolidated, unitary or similar tax group of which the Borrower or any of its Subsidiaries is a member, in amounts not to exceed any such Taxes that would have been payable by the Borrower and/or its Subsidiaries as a stand-alone group (reduced by any such taxes paid directly by the Borrower or its Subsidiaries).

7.7    **Limitation on Capital Expenditures**. Make or commit to make any Capital Expenditure, except (a) Capital Expenditures of the Borrower and its Subsidiaries in the aggregate, in the ordinary course of business not exceeding (w) $7,250,000 for the period from October 1, 2010 through and including December 31, 2010, (x) $4,240,000 for the period from and including January 1, 2011, to and including March 31, 2011, (y) $3,630,000 for the period from and including April 1, 2011, to and including June 30, 2011 and (z) $1,680,000 for the period from and including July 1, 2011, to and including Sept 30, 2011, (b) Capital Expenditures made with the proceeds of any Reinvestment Deferred Amount or otherwise with Net Cash Proceeds of an asset Disposition or a Recovery Event which are not subject to the prepayment and/or reinvestment obligations under Section 2.12(b), (c) Capital Expenditures (x) made by the Borrower or any Subsidiary as a tenant in leasehold improvements, to the extent actually reimbursed by the landlords or subject to a current Contractual Obligation of the landlord to reimburse or (y) actually paid for by a third party (excluding Holdings, the Borrower or any Subsidiary) and for which none of Holdings, the Borrower or any Subsidiary has provided or is required to provide or incur, directly or indirectly, any consideration or monetary obligation to such third party or any other Person. Notwithstanding the foregoing, any such amount referred to in clause (a) above, not to exceed $[2,000,000] in any periods, if not so expended in the period for which it is permitted, may be carried over for expenditures in the next succeeding periods.

7.8    **Limitation on Investments**. Make any advance, loan, extension of credit (by way of Guarantee Obligation or otherwise) or capital contribution to, or purchase any Capital Stock, bonds, notes, debentures or other debt securities of, or any assets constituting an ongoing business from, or make any other investment in, any other Person (all of the foregoing, "Investments"), except:

(a)    extensions of trade credit in the ordinary course of business (including any instrument evidencing the same and any instrument, security or other asset acquired through bona fide collection efforts with respect to the same);

(b)    Investments in Cash Equivalents;

(c)    Investments arising in connection with the incurrence of Indebtedness permitted by Sections 7.2(b) and/or 7.2(e);

509600-0298-00338-Active.12182817.11

(d)     loans and advances to officers, directors, employees of the Borrower or any of its Subsidiaries in the ordinary course of business (including, without limitation, for travel, entertainment and relocation expenses, but not to repurchase Capital Stock) in an aggregate amount for the Group Members not to exceed $500,000 at any one time outstanding;

(e)     Investments in assets useful in the Borrower's business made by the Borrower or any of its Subsidiaries with the proceeds of any Reinvestment Deferred Amount (other than working capital);

(f)     Investments (other than those relating to the incurrence of Indebtedness permitted by Section 7.8(c)) by the Borrower or any of its Subsidiaries in (i) the Borrower or (ii) any Person that, prior to such Investment, is a Subsidiary Guarantor;

(g)     [RESERVED];

(h)     in addition to Investments otherwise expressly permitted by this Section, Investments by the Borrower or any of its Subsidiaries in an aggregate amount (valued at cost) not to exceed during the term of this Agreement $500,000;

(i)     [RESERVED];

(j)     indemnities granted in the ordinary course of business;

(k)     Investments resulting as a result of the receipt of non-cash consideration in connection with Dispositions permitted under Section 7.5;

(l)     deposits, prepayments and other credits to suppliers made in the ordinary course of business; provided that (i) with respect to deposits, prepayment and other credits to suppliers that are Affiliates of the Debtors, the Loan Parties shall provide to the Administrative Agent, concurrently with the delivery of the financial statements pursuant to Section 6.1(c), a detailed summary of all such deposits, prepayments and other credits made to such Affiliated suppliers in the immediately preceding month and (ii) no Loan Party has made any materially adverse change of the terms of such deposits, prepayments and other credits from the most recent historical practice;

(m)     Investments consisting of endorsements for collection or deposit in the ordinary course of business;

(n)     Investments outstanding on the Petition Date and identified on Schedule 7.8;

(o)     advances to customers or suppliers in the ordinary course of business that are, in conformity with GAAP, recorded as accounts receivable, prepaid expenses or deposits on balance sheet and endorsements for collection or deposit arising in the ordinary course of business; provided that (i) Loan Parties shall provide to the Administrative Agent, concurrently with the delivery of the financial statements pursuant

509600-0298-00338-Active.12182817.11

to Section 6.1(c), a detailed summary of all such advances to customers or suppliers that are Affiliates of the Debtors made in the immediately preceding month and (ii) no Loan Party has made any materially adverse change of the terms of such advances to customers or suppliers from the most recent historical practice; and

(p)     Investments consisting of licensing or contribution of Intellectual Property pursuant to joint marketing arrangements with other Persons in the ordinary course of business.

Notwithstanding the foregoing, the Loan Parties may not make Investments in any Person which compete with any Loan Party.

7.9     <u>**Limitation on Payments and Modifications of Debt Instruments, etc.**</u>

(a)     Prepay, redeem, purchase, defease or otherwise satisfy prior to the scheduled maturity thereof in any manner the Indebtedness under the Prepetition Loan Documents, the Senior Subordinated Notes or any other Indebtedness that is required to be subordinated to the Obligations pursuant to the terms of the Loan Documents (collectively, "<u>Junior Financing</u>") or make any payment in violation of any subordination terms of any Junior Financing.

(b)     Amend, modify or change in any manner (i) any term or condition of any Junior Financing Documentation or (ii) any Intercompany Note, in any case without the consent of the Administrative Agent.

(c)     Amend, modify, extend or renew any WBS Contract; <u>provided</u> that the prepetition WBS Contract with ACS Media Finance LLC is permitted to be automatically renewed for an additional one year term (i.e. with a new expiration date in February, 2012) pursuant to and on the same terms and without modification of such prepetition WBS Contract; <u>provided</u> further that the Debtors acknowledge and agree that such automatic renewal of the WBS Contract with ACS Media Finance LLC should not be deemed an assumption of such contract pursuant to Section 365 of the Bankruptcy Code.

7.10     <u>**Limitation on Transactions with Affiliates**</u>.  Enter into any transaction of any kind with any Affiliate of Regatta Holdings, whether or not in the ordinary course of business, other than (a) transactions exclusively among any Debtors; <u>provided</u>, that in each case such transactions are not otherwise prohibited by this Agreement, (b) transactions in the ordinary course of business that are not otherwise prohibited by this Agreement and that are on fair and reasonable terms no less favorable to Regatta Holdings, the Borrower or such Subsidiary as would be obtainable by Regatta Holdings, the Borrower or such Subsidiary at the time in a comparable arm's-length transaction with a Person other than an Affiliate, (c) Investments of the type permitted by clauses (c), (d), (f) and (i) of Section 7.8 and Restricted Payments permitted by Section 7.6, and (d) transactions pursuant to permitted agreements in existence on the Petition Date and set forth on Schedule 7.10.

7.11     <u>**Limitation on Sales and Leasebacks**</u>.  Enter into any arrangement with any Person providing for the leasing by any Group Member of real or personal Property which

has been or is to be sold or transferred by the Borrower or such Subsidiary to such Person or to any other Person to whom funds have been or are to be advanced by such Person on the security of such Property or rental obligations of the Borrower or such Subsidiary.

7.12 **Limitation on Changes in Fiscal Periods; Amendment of Organizational Documents**. (a) Permit the fiscal year of the Borrower to end on a day other than December 31, or (b) amend, modify or change its articles of incorporation, certificate of designation (or corporate charter or other similar organizational document) operating agreement or bylaws (or other similar document), in each case, without the prior written consent of the Required Lenders.

7.13 **Limitation on Negative Pledge Clauses**. Enter into or suffer to exist or become effective any agreement that prohibits or limits the ability of a Loan Party or any of its Subsidiaries to create, incur, assume or suffer to exist any Lien upon any of its Property or revenues, whether now owned or hereafter acquired, to secure the Obligations other than (a) this Agreement and the other Loan Documents, (b) restrictions which exist on the Petition Date and are listed on Schedule 7.13, (c) any agreements governing any purchase money Liens or Capital Lease Obligations otherwise permitted hereby (in which case, any prohibition or limitation shall only be effective against the assets financed thereby), (d) customary restrictions on assignment of contracts contained therein, (e) customary restrictions with respect to an asset imposed pursuant to an agreement for the Disposition (which Disposition is permitted by Section 7.5) of such asset, (f) agreements which are (i) binding on a Subsidiary at the time such Subsidiary first becomes a Subsidiary, so long as such agreements were not entered into in contemplation of such Person becoming a Subsidiary, (ii) customary restrictions in leases, subleases, licenses or asset sale arrangements otherwise permitted hereby so long as such restrictions relate to the assets subject thereto, (iii) customary provisions restricting subletting or assignment of any lease governing a leasehold interest of the Borrower or any Subsidiary, and (iv) restrictions on cash or other deposits imposed by customers under contracts entered into in the ordinary course of business and (g) any prohibition or limitation that exists pursuant to applicable Requirements of Law.

7.14 **Limitation on Restrictions on Subsidiary Distributions**. Enter into or suffer to exist or become effective any consensual encumbrance or restriction on the ability of any Subsidiary to (a) make Restricted Payments in respect of any Capital Stock of such Subsidiary held by, or pay any Indebtedness owed to, any Debtor or its Subsidiaries , (b) make Investments in any Debtor or its Subsidiaries or (c) transfer any of its assets to any Debtor or its Subsidiaries, except for such encumbrances or restrictions existing under or by reason of (i) any restrictions existing under the Loan Documents; provided that (A) the foregoing shall not apply to restrictions and conditions imposed by law, rule, regulation or order or by any Loan Document, (B) the foregoing shall not apply to restrictions and conditions existing on the date hereof set forth on Schedule 7.14, (C) the foregoing shall not apply to customary restrictions and conditions contained in agreements relating to the sale of a Subsidiary pending such sale; provided such restrictions and conditions apply only to the Subsidiary that is to be sold and such sale is permitted hereunder, (D) the foregoing shall not apply to restrictions or conditions imposed by any agreement relating to secured Indebtedness permitted by this Agreement if such restrictions or conditions apply only to the Property or assets other than Collateral securing such Indebtedness and the proceeds thereof and only for so long as such Indebtedness is outstanding, (E) clause (a) of the foregoing shall not apply to customary provisions in leases restricting the

- 76 -

assignment thereof, (F) clause (a) of the foregoing shall not apply to restrictions or conditions imposed by any agreement related to any Indebtedness incurred by a Subsidiary prior to the date on which such Subsidiary was acquired by the Borrower; provided such restrictions and conditions apply only to the Subsidiary (and its assets at the time of acquisition) that was acquired and were not created in contemplation of such acquisition (but shall apply to any amendment, modification, restatement, renewal, increase, supplement, refund, replacement or financing expanding the scope of, any such restriction or condition; provided that the amendments, modifications, restatements, renewals, increases, supplements, refunding, replacements or refinancings are no more restrictive, taken as a whole, than contained by any agreement related to such Indebtedness; provided, further, that such Indebtedness was permitted to be incurred hereunder), (G) clause (a) of the foregoing shall not apply to restrictions or conditions imposed by any agreement related to the refinancing of Indebtedness permitted hereunder, provided that the original restrictions or conditions were permitted hereunder and the terms of any such restrictions or conditions are not materially less favorable to the Borrower and its Subsidiaries or the Lenders than the restrictions or conditions contained in the predecessor agreements, (H) clause (a) of the foregoing shall not apply to customary provisions in capital leases or purchase money obligations for property acquired or leased in the ordinary course of business that impose restrictions on that property of the nature of clause (A); provided that such Indebtedness and such Liens shall be permitted to be incurred hereunder, (I) clause (a) of the foregoing shall not apply to customary provisions in leases or licenses entered into in the ordinary course of business that impose restrictions on the property so leased, [(J) the foregoing shall not apply to provisions with respect to the disposition or distribution of assets or property in joint venture agreements and other similar agreements; provided that such restrictions apply only to the assets or property subject to such joint venture,] (K) the foregoing shall not apply to restrictions on cash or other deposits or net worth under contracts or leases entered into in the ordinary course of business and (L) clause (a) of the foregoing shall not apply to customary provisions in any agreement relating to Capital Lease Obligations otherwise permitted hereunder, but only on the assets subject to such transaction or lease and only to the extent that such restrictions or encumbrances are customary with respect to a sale and leaseback transaction or Capital Lease Obligations; provided that such Indebtedness and such Liens are permitted to be incurred hereunder; provided, further, that such sale and leaseback is permitted under Section 7.11.

7.15    **Limitation on Lines of Business**.  (a) With respect to the Borrower and its Subsidiaries, enter into any business, either directly or through any Subsidiary, except for those businesses in which the Borrower and its Subsidiaries are engaged on the date of this Agreement or that are reasonably related thereto or are reasonable extensions thereof or (b) in the case of Holdings, engage in any business other than (i) the ownership of all outstanding Capital Stock owed by it on the Petition Date, (ii) maintaining its existence, (iii) participating in tax, accounting and other administrative activities as a parent of the consolidated group of companies, including the Loan Parties, (iv) the execution and delivery of the Loan Documents to which it is a party and the performance of its obligations thereunder, (v) any transaction that Holdings is expressly permitted to enter into or consummate under this Section 7, including making any Restricted Payment, that does not result in Holdings directly conducting operations, (vi) the incurrence of fees, costs and expenses relating to the raising of equity and fees, costs and expenses relating to its existence or to overhead including professional fees for legal, tax and accounting services, (vii) providing indemnification to officers, directors and shareholders, and

(viii) activities incidental to the businesses or activities described in clauses (b)(i) through (vii) of this Section 7.15.

7.16 **Chapter 11 Claims**. Incur, create, assume, suffer to exist or permit any other Superpriority Claim or Lien on any Collateral which is pari passu with or senior to the Obligations (or the Liens securing the Obligations) hereunder, except in each case for the Carve Out, the Lien Avoidance Carveout and Liens permitted pursuant to Section 7.3(g).

## SECTION 8

## EVENTS OF DEFAULT

8.1 **Events of Default**. If any of the following events shall occur and be continuing:

(a) the Borrower shall fail to pay (i) any principal of any Loan or Reimbursement Obligation when due and payable in accordance with the terms hereof, or (ii) interest on any Loan or Reimbursement Obligation, any Commitment Fee payable hereunder or any other fees or other amount payable hereunder or under any other Loan Documents, within three Business Days after any such interest, Commitment Fee, other fees or amounts becomes due in accordance with the terms hereof or thereof; or

(b) any representation or warranty made or deemed made by any Loan Party herein or in any other Loan Document furnished by it at any time under or in connection with this Agreement or any such other Loan Document shall prove to have been inaccurate in any material respect on or as of the date made or deemed made or furnished; or

(c) any Loan Party shall default in the observance or performance of any agreement contained in clause (i) or (ii) of Section 6.4(a) (with respect to the Borrower only), Section 6.7(a), Section 6.15, Section 7 or Section 8.1(s); or

(d) any Loan Party shall default in the observance or performance of any other agreement contained in this Agreement or any other Loan Document (other than as provided in paragraphs (a) through (c) of this Section), and such default shall continue unremedied for a period of 30 days after notice of such default shall have been given to the Borrower by the Administrative Agent or the Required Lenders; or

(e) any Loan Party shall, after giving effect to applicable cure periods and consents and waivers obtained during such cure periods, (i) default in making any payment of any principal of any Indebtedness (including, without limitation, any Guarantee Obligation, but excluding the Loans and Reimbursement Obligations and pre-Petition Date Indebtedness) on the scheduled or original due date with respect thereto; or (ii) default in making any payment of any interest on any such Indebtedness beyond the period of grace, if any, provided in the instrument or agreement under which such Indebtedness was created; or (iii) default in the observance or performance of any other agreement or condition relating to any such Indebtedness or contained in any instrument or agreement evidencing, securing or relating thereto, or any other event shall occur or

- 78 -

condition, after giving effect to applicable cure periods and consents and waivers obtained during such cure periods, exist, the effect of which default or other event or condition is to cause, or to permit the holder or beneficiary of such Indebtedness (or a trustee or agent on behalf of such holder or beneficiary) to cause, with the giving of notice if required, such Indebtedness to become due prior to its stated maturity or to become subject to or mandatory offer to purchase by the obligor thereunder or (in the case of any such Indebtedness constituting a Guarantee Obligation) to become payable; provided that a default, event or condition described in clause (i), (ii) or (iii) of this paragraph (e) shall not at any time constitute an Event of Default unless, at such time, one or more defaults, events or conditions of the type described in clauses (i), (ii) and (iii) of this paragraph (e) shall have occurred and be continuing with respect to Indebtedness the outstanding principal amount of which exceeds in the aggregate $2,000,000; or

(f)      the Debtors [seek to] assume one or more of the WBS Contracts pursuant to Section 365 of the Bankruptcy Code without the prior written consent of the Required Lenders.

(g)      (i) Any Person shall engage in any "prohibited transaction" (as defined in Section 406 of ERISA or Section 4975 of the Code) involving any Plan, (ii) any failure to satisfy the minimum funding standard of Section 412 of the Code shall exist with respect to any Plan, or any Lien in favor of the PBGC or a Plan shall arise on the assets of the Borrower or any Commonly Controlled Entity, (iii) a Reportable Event shall occur with respect to, or proceedings shall commence to have a trustee appointed, or a trustee shall be appointed, to administer or to terminate, any Single Employer Plan, which Reportable Event or commencement of proceedings or appointment of a trustee is reasonably likely to result in the termination of such Plan for purposes of Title IV of ERISA, (iv) any Single Employer Plan shall terminate for purposes of Title IV of ERISA, (v) the Borrower or any Commonly Controlled Entity shall, or shall be reasonably likely to, incur any liability in connection with a withdrawal from, or the Insolvency or Reorganization of, a Multiemployer Plan or (vi) any other event or condition shall occur or exist with respect to a Plan; and in each case in clauses (i) through (vi) above, such event or condition, together with all other such events or conditions, if any, could reasonably be expected to have a Material Adverse Effect; or

(h)      one or more judgments or decrees required to be satisfied as an administrative expense claim shall be entered after the Petition Date against any Debtor involving in the aggregate liabilities for all Debtors (not paid or fully covered by insurance as to which the relevant insurance company has not disputed coverage) in excess of $3,000,000, and all such judgments or decrees shall not have been vacated, discharged, stayed or bonded pending appeal within twenty (20) days from the entry thereof; or

(i)      [RESERVED];

(j)      Any Change of Control shall occur;

(k)     There shall exist any Lien on any or all of the Capital Stock of the Borrower, except as created under the Prepetition Loan Documents, the Security Documents or under the Orders; or

(l)     [RESERVED]

(m)     (i) An order of the Bankruptcy Court shall be entered granting another Superpriority Claim (other than the Carve Out or Lien Avoidance Carveout) or Lien pari passu with or senior to that granted (x) to the Lenders and the Administrative Agent pursuant to this Agreement and the Interim Order (or the Final Order, as applicable), or (y) to the Prepetition Secured Parties pursuant to the Interim Order (or the Final Order, as applicable), (ii) an order of the Bankruptcy Court shall be entered reversing, staying for a period in excess of five (5) days, vacating or otherwise amending, supplementing or modifying the Interim Order (or the Final Order, as applicable) without the written consent of the Administrative Agent and the Required Lenders; (iii) the Prepetition Secured Parties' Cash Collateral shall be used in a manner inconsistent with the Interim Order (or the Final Order, as applicable); (iv) an order of a court of competent jurisdiction shall be entered terminating the use of the Prepetition Secured Parties' Cash Collateral; (v) an order of the Bankruptcy Court shall be entered under Section 1106(b) of the Bankruptcy Code in any of the Cases appointing a Chapter 11 trustee with plenary powers, a responsible officer or an examiner having enlarged powers relating to the operation of the business of the Loan Parties (i.e., powers beyond those set forth under Sections 1106(a)(3) and (4) of the Bankruptcy Code) and such order shall not be reversed or vacated within thirty (30) days after the entry thereof; (vi) the Final Order Entry Date shall not have occurred by the date that is forty-five (45) days following the Petition Date (or such later date as the Required Lenders may agree); or (vii) a plan shall be confirmed in any of the Cases of the Debtors that does not provide for termination of the Commitments and payment in full in cash of the Obligations  on the Effective Date of such plan of reorganization or any order shall be entered which dismisses any of the Cases of the Debtors or converts any of the Cases to a case under Chapter 7 of the Bankruptcy Code and which order does not provide for termination of the Commitments, payment in full in cash of the Obligations and termination or replacement of Letters of Credit or any of the Debtors shall seek support, or fail to contest in good faith the filing or confirmation of such a plan or the entry of such an order; or

(n)     Any Debtor shall make any payments relating to pre-Petition Date obligations other than (i) as permitted under the Interim Order (or the Final Order, as applicable), (ii) in respect of and in accordance with, and to the extent authorized by, a "first day" order reasonably satisfactory to the Administrative Agent, (iii) as otherwise permitted under this Agreement, including pursuant to the Orders and in connection with adequate protection payments described in Section 2.25(c) and (iv) other orders that the Bankruptcy Court enters throughout the Cases (provided that any payments pursuant to such orders identified in clause (iv) shall not exceed, in aggregate principal amount, $1,000,000 and shall not be made to an Affiliate of such Debtor); or

(o)     The entry of an order granting relief from the automatic stay so as to allow a third party to proceed against any property of any Debtor which has a value in

excess of $1,000,000 in the aggregate or to permit other actions that could reasonably be expected to have a Material Adverse Effect on the Loan Parties or their estates; or

(p)     Any Loan Party or any Subsidiary thereof shall fail to comply with the Interim Order or the Final Order; or

(q)     The filing of any pleading by any Loan Party seeking, or otherwise consenting to, any of the matters set forth in paragraphs (l), (m), (n), (o) or (p) above in this Section; or

(r)     [RESERVED]

(s)     Any proceeding shall be commenced by any Loan Party seeking, or otherwise consenting to, (i) the invalidation, subordination or other challenging of the Superpriority Claims and Liens granted to secure the Obligations, (ii) any relief under Section 506(c) of the Bankruptcy Code with respect to any Collateral or (iii) the invalidation, subordination or other challenge to the Prepetition Obligations or the avoidance of any or all of the Liens securing the Prepetition Obligations (this clause (iii) being the "Avoidance Action Default"); or

(t)     Any Debtor files a plan of reorganization that does not provide for either (i) the termination of the Commitments and payment in full in cash of the Obligations on the Effective Date or (ii) which does not contain terms and conditions otherwise reasonably acceptable to the Administrative Agent and the Required Lenders; or

(u)     The Loan Parties or any of their Affiliates shall breach or otherwise violate any of the provisions of the Orders or any of the Security Documents shall cease, for any reason, to be in full force and effect, or any Loan Party or any Affiliate of any Loan Party shall so assert, or any Liens or Superpriority Claims created by the Orders or any Security Documents or Prepetition Loan Documents in favor of the Lenders or the Prepetition Secured Parties (as applicable) shall cease to be enforceable and of the same effect and priority purported to be created thereby other than by reason of the release thereof in accordance with the terms thereof; or

(v)     The Guarantee Obligations contained in the Orders or in this Agreement shall cease, for any reason, to be in full force and effect or any Loan Party or the Sponsors or any of their Affiliates shall so assert in writing (except in accordance with the terms hereof or thereof);

(w)     [any amounts the Sponsor is contractually entitled to receive pursuant to agreements as in effect on the Petition Date are not paid solely out of the Monthly Management Fee Amount (as defined in the Base Indenture Definitions List for the WBS securitization) to the extent actually paid from time to time by WBS];

then, and in any such event, the Administrative Agent may, and, at the request of the Required Lenders, the Administrative Agent shall, by notice to the Borrower (with a copy to the Prepetition Agent, counsel for any statutory committee appointed in the Cases and to the United

States Trustee), take one or more of the following actions, at the same or different times (provided that with respect to clause (iii) below and the enforcement of Liens or other remedies with respect to the Collateral under clause (iv) below, the Administrative Agent shall provide the Borrower (with a copy to the Prepetition Agent, counsel for any statutory committee appointed in the Cases and to the United States Trustee) with three Business Days' written notice prior to taking the action contemplated thereby; provided, further, that upon receipt of the notice referred to in the immediately preceding clause, the Borrower may continue to make ordinary course and Carve Out and Lien Avoidance Carveout disbursements from the account referred to in clause (iii) below but may not withdraw or disburse any other amounts from such account) (in any hearing after the giving of the aforementioned notice, the only issue that may be raised by any party in opposition of any such action shall be whether, in fact, an Event of Default has occurred and is continuing): (i) terminate forthwith the Commitments; (ii) declare the Loans (including, without limitation, all amounts of L/C Obligations, whether or not the beneficiaries of the then outstanding Letters of Credit shall have presented the documents required thereunder) then outstanding to be forthwith due and payable, whereupon the principal of the Loans, together with accrued interest thereon and any unpaid accrued fees and all other Obligations of the Borrower accrued hereunder and under any other Loan Document, shall become forthwith due and payable, without presentment, demand, protest or any other notice of any kind, all of which are hereby expressly waived by the Loan Parties, anything contained herein or in any other Loan Document to the contrary notwithstanding; and (iii) subject to the Interim Order(including paragraph 8 (c) thereof) (or Final Order, as applicable), (a) set-off amounts held as cash collateral or in the accounts of the Loan Parties and apply such amounts to the Obligations of the Loan Parties hereunder and under the other Loan Documents in accordance with Section 11.3; and (b) exercise any and all remedies under this Agreement, the Interim Order (or Final Order, as applicable), and applicable law available to the Administrative Agent and the Lenders.

## SECTION 9

## THE ADMINISTRATIVE AGENT

9.1 **Appointment and Authority**. Each of the Lenders and the Issuing Lender hereby irrevocably appoints JPMCB to act on its behalf as the Administrative Agent and Collateral Agent hereunder and under the other Loan Documents and authorizes each of the Administrative Agent and Collateral Agent to take such actions on its behalf and to exercise such powers as are delegated to the Administrative Agent or the Collateral Agent, as the case may be, by the terms hereof or thereof, together with such actions and powers as are reasonably incidental thereto. The provisions of this Section are solely for the benefit of the Administrative Agent, the Collateral Agent and the Lenders and the Issuing Lender, and neither the Borrower nor any other Loan Party shall have rights as a third party beneficiary of any of such provisions.

9.2 **Nature of Duties**. Anything herein to the contrary notwithstanding, neither the Lead Arranger nor the Lead Bookrunner shall have any powers, duties or responsibilities under this Agreement or any of the other Loan Documents.

The Administrative Agent and the Collateral Agent may perform any and all of their respective duties and exercise their respective rights and powers hereunder or under any other Loan Document by or through any one or more sub-agents appointed by the Administrative

Agent or the Collateral Agent, as the case may be. The Administrative Agent and the Collateral Agent and any such sub-agent may perform any and all of its duties and exercise its rights and powers by or through their respective Related Parties. The exculpatory provisions of this Section shall apply to any such sub-agent and to the Related Parties of the Administrative Agent, the Collateral Agent and any such sub-agent, and shall apply to their respective activities in connection with the syndication of the Credit Facilities provided for herein as well as activities as Administrative Agent or Collateral Agent, as the case may be.

9.3 **Exculpatory Provisions**. The Agents shall not have any duties or obligations except those expressly set forth herein and in the other Loan Documents. Without limiting the generality of the foregoing, the Agents:

(a) shall not be subject to any fiduciary or other implied duties, regardless of whether a Default has occurred and is continuing;

(b) shall not have any duty to take any discretionary action or exercise any discretionary powers, except discretionary rights and powers expressly contemplated hereby or by the other Loan Documents that the Agents are required to exercise as directed in writing by the Required Lenders (or such other number or percentage of the Lenders as shall be expressly provided for herein or in the other Loan Documents), provided that no Agent shall be required to take any action that, in its opinion or the opinion of its counsel, may expose such Agent to liability or that is contrary to any Loan Document or applicable law; and

(c) shall not, except as expressly set forth herein and in the other Loan Documents, have any duty to disclose, and shall not be liable for the failure to disclose, any information relating to the Borrower or any of its Affiliates that is communicated to or obtained by the Person serving as the Administrative Agent or Collateral Agent or any of its Affiliates in any capacity.

No Agent shall be liable for any action taken or not taken by it (i) with the consent or at the request of the Required Lenders (or such other number or percentage of the Lenders as shall be necessary, or as such Agent shall believe in good faith shall be necessary, under the circumstances as provided in Sections 9.1 and 9.2) or (ii) in the absence of its own gross negligence or willful misconduct. The Agents shall be deemed not to have knowledge of any Default unless and until notice describing such Default is given to the Agents by the Borrower, a Lender or the Issuing Lender.

No Agent shall be responsible for or have any duty to ascertain or inquire into (i) any statement, warranty or representation made in or in connection with this Agreement or any other Loan Document, (ii) the contents of any certificate, report or other document delivered hereunder or thereunder or in connection herewith or therewith, (iii) the performance or observance of any of the covenants, agreements or other terms or conditions set forth herein or therein or the occurrence of any Default, (iv) the validity, enforceability, effectiveness or genuineness of this Agreement, any other Loan Document or any other agreement, instrument or document or (v) the satisfaction of any condition set forth in Section 5 or elsewhere herein, other than to confirm receipt of items expressly required to be delivered to such Agent.

- 83 -

9.4     **Reliance by Administrative Agent and Collateral Agent**.  The Administrative Agent and Collateral Agent shall each be entitled to rely upon, and shall not incur any liability for relying upon, any notice, request, certificate, consent, statement, instrument, document or other writing (including any electronic message, Internet or intranet website posting or other distribution) believed by it to be genuine and to have been signed, sent or otherwise authenticated by the proper Person.  The Administrative Agent and Collateral Agent also may each rely upon any statement made to it orally or by telephone and believed by it to have been made by the proper Person, and shall not incur any liability for relying thereon.  In determining compliance with any condition hereunder to the making of a Loan, the issuance of a Letter of Credit, that by its terms must be fulfilled to the satisfaction of a Lender or the Issuing Lender, each of the Administrative Agent and the Collateral Agent may presume that such condition is satisfactory to such Lender or the Issuing Lender unless such Agent shall have received notice to the contrary from such Lender or the Issuing Lender prior to the making of such Loan or the issuance of such Letter of Credit.  Each of the Administrative Agent and the Collateral Agent may consult with legal counsel (who may be counsel for the Borrower), independent accountants and other experts selected by it, and shall not be liable for any action taken or not taken by it in accordance with the advice of any such counsel, accountants or experts.

9.5     **Notice of Default**.  Neither the Administrative Agent nor the Collateral Agent shall be deemed to have knowledge or notice of the occurrence of any Default or Event of Default hereunder unless the Administrative Agent has received written notice from a Lender or the Borrower referring to this Agreement, describing such Default or Event of Default and stating that such notice is a "notice of default."  In the event that the Administrative Agent receives such a notice, the Administrative Agent shall give prompt notice thereof to the Lenders and the Collateral Agent.  The Administrative Agent and the Collateral Agent shall take such action with respect to such Default or Event of Default as shall be reasonably directed by the Required Lenders; provided, however, that unless and until the Administrative Agent or the Collateral Agent, as the case may be, shall have received such directions, the Administrative Agent and the Collateral Agent each may (but shall not be obligated to) take such action, or refrain from taking such action, with respect to such Default or Event of Default as it shall deem advisable in the best interests of the Lenders except to the extent that this Agreement expressly requires that such action be taken, or not taken, only with the consent or upon the authorization of the Required Lenders, or all of the Lenders, as the case may be.

9.6     **Non-Reliance on Administrative and Other Lenders**.  Each Lender and the Issuing Lender expressly acknowledges that neither the Agents nor any of their respective officers, directors, employees, agents, attorneys-in-fact or affiliates has made any representation or warranty to it and that no act by the Agents hereinafter taken, including any review of the affairs of any Loan Party, shall be deemed to constitute any representation or warranty by any Agent to any Lender.  Each Lender and the Issuing Lender acknowledges that it has, independently and without reliance upon any Agent or any other Lender or any of their Related Parties and based on such documents and information as it has deemed appropriate, made its own credit analysis and decision to enter into this Agreement.  Each Lender and the Issuing Lender also acknowledges that it will, independently and without reliance upon any Agent or any other Lender or any of their Related Parties and based on such documents and information as it shall from time to time deem appropriate, continue to make its own decisions in taking or not taking

- 84 -

action under or based upon this Agreement, any other Loan Document or any related agreement or any document furnished hereunder or thereunder.

7.7     **Indemnification**.  The Lenders agree to indemnify each Agent and the Issuing Lender each in its capacity as such hereunder, and their Affiliates and their respective officers, directors, agents and employees (to the extent not reimbursed by the Borrower and without limiting the obligation of the Borrower to do so), ratably according to their respective Commitment Percentages in effect on the date on which indemnification is sought under this Section (or, if indemnification is sought after the date upon which the Commitments shall have terminated and the Loans shall have been paid in full, ratably in accordance with such Commitment Percentages immediately prior to such date, for, and to save such indemnitee harmless from and against, any and all liabilities, obligations, losses, damages, penalties, actions, judgments, suits, costs, expenses or disbursements of any kind whatsoever which may at any time (including, without limitation, at any time following the payment of the Obligations) be imposed on, incurred by or asserted against any such indemnitee in any way relating to or arising out of any Loan Document or any documents contemplated by or referred to herein or therein or the transactions contemplated hereby or thereby or any action taken or omitted by any such indemnitee under or in connection with any of the foregoing; provided, however, that no Lender shall be liable for the payment of any portion of such liabilities, obligations, losses, damages, penalties, actions, judgments, suits, costs, expenses or disbursements to the extent resulting from such indemnitee's gross negligence or willful misconduct, as determined by a court of competent jurisdiction.  The agreements in this Section 9.7 shall survive the termination of this Agreement and payment of the Notes, any Reimbursement Obligations and all other amounts payable hereunder.

9.8     **Agents in Its Individual Capacity**.  Each Agent hereunder shall have the same rights and powers in its capacity as a Lender as any other Lender and may exercise the same as though it were not an Agent and the term "Lender" or "Lenders" shall, unless otherwise expressly indicated or unless the context otherwise requires, include the Person serving as such Agent hereunder in its individual capacity.  Such Person and its Affiliates may accept deposits from, lend money to, act as the financial advisor or in any other advisory capacity for and generally engage in any kind of business with the Borrower or any Subsidiary or other Affiliate thereof as if such Person were not an Agent hereunder and without any duty to account therefor to the Lenders.

9.9     **Successor Administrative Agent or Collateral Agent**.  The Administrative Agent or Collateral Agent may at any time give notice of its resignation to the Lenders, the Issuing Lender and the Borrower.  Upon receipt of any such notice of resignation, the Required Lenders shall have the right to appoint from among the Lenders a successor agent for the Lenders, whereupon such successor agent shall succeed to the rights, powers and duties of the Administrative Agent or the Collateral Agent, as the case may be, and the term "Administrative Agent" or "Collateral Agent", as the case may be, shall mean such successor agent effective upon such appointment and approval, and the former Agent's rights, powers and duties as Administrative Agent or Collateral Agent, as the case may be, shall be terminated, without any other or further act or deed on the part of such former Agent or any of the parties to this Agreement or any holders of the Loans.  If no such successor shall have been so appointed by the Required Lenders and shall have accepted such appointment within thirty (30) days after

- 85 -

the retiring Agent gives notice of its resignation, then the retiring Agent may on behalf of the Lenders and the Issuing Lender, appoint a successor Administrative Agent or Collateral Agent, as the case may be, meeting the qualifications set forth above; provided that if the Administrative Agent or Collateral Agent, as the case may be, shall notify the Borrower and the Lenders that no qualifying Person has accepted such appointment, then such resignation shall nonetheless become effective in accordance with such notice and (a) the retiring Agent shall be discharged from its duties and obligations hereunder and under the other Loan Documents (except that in the case of any Collateral held by the Collateral Agent or Administrative Agent, as the case may be, on behalf of the Lenders or the Issuing Lender under any of the Loan Documents, such Agent shall continue to hold such Collateral until such time as a successor Administrative Agent or Collateral Agent, as the case may be, is appointed) and (b) all payments, communications and determinations provided to be made by, to or through the Administrative Agent or Collateral Agent, as the case may be, shall instead be made by or to each Lender and the Issuing Lender directly, until such time as the Required Lenders appoint a successor Administrative Agent or Collateral Agent, as the case may be, as provided for above in this paragraph. Upon the acceptance of a successor's appointment as Administrative Agent or Collateral Agent, as the case may be, hereunder, such successor shall succeed to and become vested with all of the rights, powers, privileges and duties of the retiring (or retired) Administrative Agent or Collateral Agent, as the case may be, and the retiring Administrative Agent or Collateral Agent, as the case may be, shall be discharged from all of its duties and obligations hereunder or under the other Loan Documents (if not already discharged therefrom as provided above in this paragraph). The fees payable by the Borrower to a successor Agent shall be the same as those payable to its predecessor unless otherwise agreed between the Borrower and such successor. After the retiring Agent's resignation hereunder and under the other Loan Documents, the provisions of this Section and Section 9.5 shall continue in effect for the benefit of such retiring Agent, its sub-agents and their respective Related Parties in respect of any actions taken or omitted to be taken by any of them while the retiring Agent was acting as Administrative Agent or Collateral Agent, as the case may be,.

9.10 **Other Agents**. None of the Lenders or other Persons identified on the facing page or signature pages of this Agreement as a "bookrunner," or "arranger" shall have any right, power, obligation, liability, responsibility or duty under this Agreement other than, in the case of such Lenders, those applicable to all Lenders as such. Without limiting the foregoing, none of the Lenders or other Persons so identified shall have or be deemed to have any fiduciary relationship with any Lender. Each Lender acknowledges that it has not relied, and will not rely, on any of the Lenders or other Persons so identified in deciding to enter into this Agreement or in taking or not taking action hereunder.

9.11 **Taxes**.

(a) To the extent required by any applicable law, the Agents may withhold from any payment to any Lender an amount equivalent to any applicable withholding Tax. If the IRS or any other authority of the United States or other jurisdiction asserts a claim that an Agent did not properly withhold Tax from amounts paid to or for the account of any Lender for any reason (including, without limitation, because the appropriate form was not delivered or not properly executed, or because such Lender failed to notify the Agent of a change in circumstance that rendered the exemption from, or reduction of withholding Tax ineffective), such Lender

509600-0298-00338-Active.12182817.11

shall indemnify and hold harmless the Agent (to the extent that the Agent has not already been reimbursed by a Loan Party pursuant to Section 2.19 and Section 2.20 and without limiting the obligation of a Loan Party to do so) for all amounts paid, directly or indirectly, by the Agent as taxes or otherwise, together with all expenses incurred, including legal expenses and any other out-of-pocket expenses, whether or not such Tax was correctly or legally imposed or asserted by the relevant Governmental Authority. A certificate as to the amount of such payment or liability delivered to any Lender by the Administrative Agent shall be conclusive absent manifest error.

(b)     To the extent not covered by Section 9.11(a) and not otherwise indemnified by a Loan Party under this Agreement (without limiting the obligation of a Loan Party to do so), each Lender shall severally indemnify the Administrative Agent for any Taxes attributable to such Lender that are paid or payable by the Administrative Agent in connection with any Loan Document and any reasonable expenses arising therefrom or with respect thereto, whether or not such Taxes were correctly or legally imposed or asserted by the relevant Governmental Authority. A certificate as to the amount of Taxes so paid or payable by the Administrative Agent shall be conclusive absent manifest error.

(c)     For purposes of this Section 9.11, the term "Lender" includes any Issuing Lender.

9.12    **Collateral and Guaranty Matters**.

(a)     The Lenders irrevocably authorize and direct the Administrative Agent and the Collateral Agent, as applicable:

(i)     to release any Lien on any Property granted to or held by the Administrative Agent or the Collateral Agent under any Loan Document (i) upon termination of the Total Commitments and payment in full of all Obligations and the expiration or termination of all Letters of Credit (unless cash collateralized or subject to other arrangements satisfactory to the Issuing Lender), (ii) that is Disposed of in connection with any sale or other Disposition permitted under the Loan Documents, or (iii) subject to Section 12.1, if otherwise approved, authorized or ratified in writing by the Required Lenders;

(ii)     to (in the Administrative Agent's discretion (exercised reasonably)) subordinate any Lien on any Property granted to or held by such Administrative Agent or Collateral Agent under any Loan Document to the holder of any Lien on such Property that is permitted by Section 7.3; provided that any such subordination that would result in Liens under the Loan Documents being subordinated to Liens granted or existing pursuant to Section 7.3(a) securing obligations exceeding $5,000,000 in the aggregate, the consent of the Required Lenders shall be required to be obtained prior to effecting such subordination; and

(iii)     to release any Subsidiary Guarantor from its obligations under the Guaranty and Collateral Agreement if such Person ceases to be a Subsidiary Guarantor as a result of a Disposition or any other transaction permitted under any Loan Document.

(b)     In connection with a termination or release pursuant to this Section 9.12, the Administrative Agent and the Collateral Agent shall promptly execute and deliver to the applicable Loan Party, at the Borrower's expense, all documents that the applicable Loan Party shall reasonably request to evidence such termination or release.  Upon request by the Administrative Agent or the Collateral Agent at any time, the Required Lenders will confirm in writing such Agent's authority to release or subordinate its interest in particular types or items of Property, or to release any Subsidiary Guarantor from its obligations under the Guaranty and Collateral Agreement pursuant to this Section 9.12.


# SECTION 10

## GUARANTEE

### 10.1     **Guarantee**.

(a)     Each of the Guarantors hereby, jointly and severally, unconditionally and irrevocably, guarantees to the Administrative Agent, for the ratable benefit of the Lenders and their respective successors, indorsees, transferees and assigns permitted hereunder, the prompt and complete payment and performance by the Borrower when due (whether at the stated maturity, by acceleration or otherwise) of the Obligations.

(b)     Anything herein or in any other Loan Document to the contrary notwithstanding, the maximum liability of each Guarantor under this Section 10.1 and under the other Loan Documents shall in no event exceed the amount which is permitted under applicable federal and state laws relating to the insolvency of debtors.

(c)     Each Guarantor agrees that the Obligations may at any time and from time to time exceed the amount of the liability of such Guarantor hereunder without impairing the guarantee contained in this Section 10 or affecting the rights and remedies of the Administrative Agent or any Lender hereunder.

(d)     The guarantee contained in this Section 10 shall remain in full force and effect until all the Obligations and the obligations of each Guarantor under the guarantee contained in this Section 10 shall have been satisfied by payment in full (other than contingent reimbursement and indemnification obligations not yet accrued and payable) and all Commitments and Letters of Credit have expired or terminated.

(e)     No payment made by the Borrower, any of the Guarantors, any other guarantor or any other Person or received or collected by the Administrative Agent or any Lender from the Borrower, any of the Guarantors, any other guarantor or any other Person by virtue of any action or proceeding or any set-off or appropriation or application at any time or from time to time in reduction of or in payment of the Obligations shall be deemed to modify, reduce, release or otherwise affect the liability of any Guarantor hereunder which shall, notwithstanding any such payment (other than any payment made by such Guarantor in respect of the Obligations or any payment received or collected from such Guarantor in respect of the

509600-0298-00338-Active.12182817.11

Obligations), remain liable for the Obligations up to the maximum liability of such Guarantor hereunder until the Obligations are paid in full (other than contingent reimbursement and indemnification obligations not yet accrued and payable) and the Commitments are terminated.

10.2 **Right of Contribution**. Each Guarantor hereby agrees that to the extent that a Guarantor shall have paid more than its proportionate share of any payment made hereunder, such Guarantor shall be entitled to seek and receive contribution from and against any other Guarantor hereunder which has not paid its proportionate share of such payment. Each Guarantor's right of contribution shall be subject to the terms and conditions of Section 10.3. The provisions of this Section 10.2 shall in no respect limit the obligations and liabilities of any Guarantor to the Administrative Agent and the Lenders, and each Guarantor shall remain liable to the Administrative Agent and the Lenders for the full amount guaranteed by such Guarantor hereunder.

10.3 **No Subrogation**. Notwithstanding any payment made by any Guarantor hereunder or any set-off or application of funds of any Guarantor by the Administrative Agent or any Lender, no Guarantor shall be entitled to be subrogated to any of the rights of the Administrative Agent or any Lender against the Borrower or any other Guarantor or any collateral security or guarantee or right of offset held by the Administrative Agent or any Lender for the payment of the Obligations, nor shall any Guarantor seek or be entitled to seek any contribution or reimbursement from the Borrower or any other Guarantor in respect of payments made by such Guarantor hereunder, until all amounts owing to the Administrative Agent and the Lenders by the Borrower on account of the Obligations are paid in full and the Commitments are terminated. If any amount shall be paid to any Guarantor on account of such subrogation rights at any time when all of the Obligations shall not have been paid in full, such amount shall be held by such Guarantor in trust for the Administrative Agent and the Lenders, segregated from other funds of such Guarantor, and shall, forthwith upon receipt by such Guarantor, be turned over to the Administrative Agent in the exact form received by such Guarantor (duly indorsed by such Guarantor to the Administrative Agent, if required), to be applied against the Obligations, whether matured or unmatured, in accordance with the terms of this Agreement.

10.4 **Amendments, etc. with Respect to the Obligations**. Each Guarantor shall remain obligated hereunder notwithstanding that, without any reservation of rights against any Guarantor and without notice to or further assent by any Guarantor, any demand for payment of any of the Obligations made by the Administrative Agent or any Lender may be rescinded by the Administrative Agent or such Lender and any of the Obligations continued, and the Obligations, or the liability of any other Person upon or for any part thereof, or any collateral security or guarantee therefor or right of offset with respect thereto, may, from time to time, in whole or in part, be renewed, extended, amended, modified, accelerated, compromised, waived, surrendered or released by the Administrative Agent or any Lender, and this Agreement and the other Loan Documents and any other documents executed and delivered in connection herewith or therewith may be amended, modified, supplemented or terminated, in whole or in part, as the Administrative Agent (or the Required Lenders or all Lenders, as the case may be) may deem advisable from time to time, and any collateral security, guarantee or right of offset at any time held by the Administrative Agent or any Lender for the payment of the Obligations may be sold, exchanged, waived, surrendered or released. Neither the Administrative Agent nor any Lender shall have any obligation to protect, secure, perfect or insure any Lien at any time held by it as

509600-0298-00338-Active.12182817.11

security for the Obligations or for the guarantee contained in this Section 10 or any property subject thereto.

10.5 **Guarantee Absolute and Unconditional**. Each Guarantor waives any and all notice of the creation, renewal, extension or accrual of any of the Obligations and notice of or proof of reliance by the Administrative Agent or any Lender upon the guarantee contained in this Section 10 or acceptance of the guarantee contained in this Section 10; the Obligations, and any of them, shall conclusively be deemed to have been created, contracted or incurred, or renewed, extended, amended or waived, in reliance upon the guarantee contained in this Section 10; and all dealings between the Borrower and any of the Guarantors, on the one hand, and the Administrative Agent and the Lenders, on the other hand, likewise shall be conclusively presumed to have been had or consummated in reliance upon the guarantee contained in this Section 10. Each Guarantor waives diligence, presentment, protest, demand for payment and notice of default or nonpayment to or upon the Borrower or any of the Guarantors with respect to the Obligations. Each Guarantor understands and agrees that the guarantee contained in this Section 10 shall be construed as a continuing, absolute and unconditional guarantee of payment without regard to (a) the validity or enforceability of this Agreement or any other Loan Document, any of the Obligations or any other collateral security therefor or guarantee or right of offset with respect thereto at any time or from time to time held by the Administrative Agent or any Lender, (b) any defense, set-off or counterclaim (other than a defense of payment or performance) which may at any time be available to or be asserted by the Borrower or any other Person against the Administrative Agent or any Lender, or (c) any other circumstance whatsoever (with or without notice to or knowledge of the Borrower or such Guarantor) which constitutes, or might be construed to constitute, an equitable or legal discharge of the Borrower for the Obligations, or of such Guarantor under the guarantee contained in this Section 10, in bankruptcy or in any other instance. When making any demand hereunder or otherwise pursuing its rights and remedies hereunder against any Guarantor, the Administrative Agent or any Lender may, but shall be under no obligation to, make a similar demand on or otherwise pursue such rights and remedies as it may have against the Borrower, any other Guarantor, or any other Person or against any collateral security or guarantee for the Obligations or any right of offset with respect thereto, and any failure by the Administrative Agent or any Lender to make any such demand, to pursue such other rights or remedies or to collect any payments from the Borrower, any other Guarantor, or any other Person or to realize upon any such collateral security or guarantee or to exercise any such right of offset, or any release of the Borrower, any other Guarantor, or any other Person or any such collateral security, guarantee or right of offset, shall not relieve any Guarantor of any obligation or liability hereunder, and shall not impair or affect the rights and remedies, whether express, implied or available as a matter of law, of the Administrative Agent or any Lender against any Guarantor. For the purposes hereof "demand" shall include the commencement and continuance of legal proceedings relating to this guarantee or the Obligations.

10.6 **Reinstatement**. The guarantee contained in this Section 10 shall continue to be effective, or be reinstated, as the case may be, if at any time payment, or any part thereof, of any of the Obligations is rescinded or must otherwise be restored or returned by the Administrative Agent or any Lender upon the insolvency, bankruptcy, dissolution, liquidation or reorganization of any Loan Party, or upon or as a result of the appointment of a receiver,

intervenor or conservator of, or trustee or similar officer for, any Loan Party or any substantial part of its property, or otherwise, all as though such payments had not been made.

10.7 **Payments**. Each Guarantor hereby guarantees that payments hereunder will be paid to the Administrative Agent without set-off or counterclaim in the applicable currency at the Administrative Agent's Office.

**SECTION 11**

**REMEDIES; APPLICATION OF PROCEEDS**

11.1 **Remedies; Obtaining the Collateral Upon Default**. Upon the occurrence and during the continuance of an Event of Default and with not fewer than three Business Days prior written notice by the Administrative Agent (or such longer time as may be required pursuant to the Orders), to the extent any such action is not inconsistent with the Interim Order (including paragraph 8(c) thereof) (or the Final Order, as applicable) or Section 10, the Administrative Agent, in addition to any rights now or hereafter existing under applicable law, and without application to or order of the Bankruptcy Court, shall have all rights as a secured creditor under the Uniform Commercial Code in all relevant jurisdictions and may:

(a) personally, or by agents or attorneys, immediately retake possession of the Collateral or any part thereof, from the Borrower, any Guarantor, or any other Person who then has possession of any part thereof with or without notice or process of law (but subject to any Requirements of Law), and for that purpose may enter upon the Borrower's, or any Guarantor's premises where any of the Collateral is located and remove the same and use in connection with such removal any and all services, supplies, aids and other facilities of the Borrower, or such Guarantor;

(b) instruct the obligor or obligors on any agreements, instrument or other obligation constituting the Collateral to make any payment required by the terms of such instrument or agreement directly to any cash collateral account;

(c) sell, assign or otherwise liquidate, or direct any Loan Party to sell, assign or otherwise liquidate, any or all of the Collateral or any part thereof in accordance with Section 11.2, and take possession of the proceeds of any such sale, assignment or liquidation; and

(d) take possession of the Collateral or any part thereof, by directing the Borrower and any Guarantor in writing to deliver the same to the Administrative Agent at any place or places designated by the Administrative Agent, in which event the Borrower and such Guarantor shall at its own expense:

(i) forthwith cause the same to be moved to the place or places so designated by the Administrative Agent and there delivered to the Administrative Agent,

(ii) store and keep any Collateral so delivered to the Administrative Agent at such place or places pending further action by the Administrative Agent as provided in Section 11.2, and

- 91 -

(iii)    while the Collateral shall be so stored and kept, provide such guards and maintenance services as shall be necessary to protect the same and to preserve and maintain them in good condition;

it being understood that the Borrower's and each Guarantor's obligation so to deliver the Collateral is of the essence of this Agreement and that, accordingly, upon application to the Bankruptcy Court, the Administrative Agent shall be entitled to a decree requiring specific performance by the Borrower or such Guarantor of such obligation.

11.2    **Remedies; Disposition of the Collateral**.  Upon the occurrence and during the continuance of an Event of Default (and following not fewer than seven Business Days prior written notice by the Administrative Agent (or such longer time as may be required pursuant to the Orders)), and to the extent not inconsistent with the Interim Order (or the Final Order, as applicable) or Section 10, without application to or order of the Bankruptcy Court, any Collateral repossessed by the Administrative Agent under or pursuant to Section 11.1 or the Interim Order (or the Final Order, as applicable) or otherwise, and any other Collateral whether or not so repossessed by the Administrative Agent, may be sold, assigned, leased or otherwise disposed of under one or more contracts or as an entirety, and without the necessity of gathering at the place of sale the property to be sold, and in general in such manner, at such time or times, at such place or places and on commercially reasonable terms, in compliance with any Requirements of Law.  Any of the Collateral may be sold, leased or otherwise disposed of, in the condition in which the same existed when taken by the Administrative Agent or after any overhaul or repair which the Administrative Agent shall determine to be commercially reasonable.  Any such disposition which shall be a private sale or other private proceeding permitted by applicable Requirements of Law shall be made upon not less than ten (10) days' written notice to the Borrower specifying the time at which such disposition is to be made and the intended sale price or other consideration therefor, and shall be subject, for the ten (10) days after the giving of such notice, to the right of the Borrower or any nominee of the Borrower to acquire the Collateral involved at a price or for such other consideration at least equal to the intended sale price or other consideration so specified.  Any such disposition which shall be a public sale permitted by applicable Requirements of Law shall be made upon not less than ten (10) days' written notice to the Borrower specifying the time and place of such sale and, in the absence of applicable Requirement of Law, shall be by public auction (which may, at the Administrative Agent's option, be subject to reserve), after publication of notice of such auction not less than ten (10) days prior thereto in USA Today and The Wall Street Journal, National Edition.  Subject to Section 11.4, to the extent permitted by any such Requirement of Law, the Administrative Agent on behalf of the Lenders or any Lender may bid for and become the purchaser of the Collateral or any item thereof, offered for sale in accordance with this Section 11.2 without accountability to the Borrower, any Guarantor or the Prepetition Secured Parties (except to the extent of surplus money received).  If, under mandatory Requirements of Law, the Administrative Agent shall be required to make disposition of the Collateral within a period of time which does not permit the giving of notice to the Borrower as hereinabove specified, the Administrative Agent need give the Borrower only such notice of disposition as shall be reasonably practicable.

11.3    **Application of DIP Proceeds**.

- 92 -

(a)     Notwithstanding anything to the contrary contained in this Agreement or any other Loan Document, (i) if the Administrative Agent takes action under Section 8 upon the occurrence and during the continuance of an Event of Default, or at any time on or after the Termination Date, any payment by any Debtor on account of principal of, interest on and fees with respect to the Loans or Reimbursement Obligations, or any Guarantee Obligations with respect thereto, and any proceeds arising out of any realization (including after foreclosure) upon the Collateral shall be applied as follows:  first, to the payment of professional fees pursuant to the Carve Out, second, to the payment in full of all costs and out-of-pocket expenses (including without limitation, reasonable attorneys' fees and disbursements) paid or incurred by the Administrative Agent or any of the Lenders in connection with any such realization upon the Collateral to which the Administrative Agent or the Lenders, as the case may be, are entitled to reimbursement under the Loan Documents, and third, to the payment in full of the Loans (including any accrued and unpaid interest thereon) and any fees and other Obligations in respect thereof, and (ii) any payments or distributions of any kind or character, whether in cash, property or securities, made by any Debtor or otherwise in a manner inconsistent with clause (i) of this Section 11.3(a) shall be held in trust and paid over or delivered to the Administrative Agent so that the priorities and requirements set forth in such clause (i) are satisfied.

(b)     It is understood that the Debtors shall remain liable to the extent of any deficiency between the amount of the proceeds of the Collateral and the amount of the Obligations.

11.4     **WAIVER OF CLAIMS.  EXCEPT AS OTHERWISE PROVIDED IN THIS AGREEMENT, THE LOAN PARTIES HEREBY WAIVE, TO THE EXTENT PERMITTED BY APPLICABLE LAW:**

(a)     NOTICE AND JUDICIAL HEARING IN CONNECTION WITH THE ADMINISTRATIVE AGENT'S TAKING POSSESSION OR THE ADMINISTRATIVE AGENT'S DISPOSITION OF ANY OF THE COLLATERAL, INCLUDING WITHOUT LIMITATION, ANY AND ALL PRIOR NOTICE AND HEARING FOR ANY PREJUDGMENT REMEDY OR REMEDIES AND ANY SUCH RIGHT WHICH THE US BORROWER, OR ANY GUARANTOR WOULD OTHERWISE HAVE UNDER ANY REQUIREMENT OF LAW;

(b)     ALL DAMAGES OCCASIONED BY SUCH TAKING OF POSSESSION EXCEPT ANY DAMAGES WHICH ARE THE DIRECT RESULT OF THE ADMINISTRATIVE AGENT'S OR ANY LENDER'S BAD FAITH, GROSS NEGLIGENCE OR WILLFUL MISCONDUCT;

(c)     ALL OTHER REQUIREMENTS TO THE TIME, PLACE AND TERMS OF SALE OR OTHER REQUIREMENTS WITH RESPECT TO THE ENFORCEMENT OF THE ADMINISTRATIVE AGENT'S RIGHTS HEREUNDER; AND

(d)     ALL RIGHTS OF REDEMPTION, APPRAISEMENT, STAY, EXTENSION OR MORATORIUM NOW OR HEREAFTER IN FORCE UNDER ANY APPLICABLE LAW IN ORDER TO PREVENT OR DELAY THE ENFORCEMENT OF THIS AGREEMENT OR THE ABSOLUTE SALE OF THE COLLATERAL OR ANY PORTION

509600-0298-00338-Active.12182817.11

THEREOF, AND EACH LOAN PARTY, FOR ITSELF AND ALL WHO MAY CLAIM UNDER IT, INSOFAR AS IT OR THEY NOW OR HEREAFTER LAWFULLY MAY, HEREBY WAIVES THE BENEFIT OF ALL SUCH LAWS.

11.5 **Remedies Cumulative**. Each and every right, power and remedy hereby specifically given to the Administrative Agent and the Lenders shall be in addition to every other right, power and remedy specifically given under this Agreement, the Orders or the other Loan Documents or now or hereafter existing at law or in equity, or by statute and each and every right, power and remedy whether specifically herein given or otherwise existing may be exercised from time to time or simultaneously and as often and in such order as may be deemed expedient by the Administrative Agent or any Lender. All such rights, powers and remedies shall be cumulative and the exercise or the beginning of exercise of one shall not be deemed a waiver of the right to exercise of any other or others. No delay or omission of the Administrative Agent or any Lender in the exercise of any such right, power or remedy and no renewal or extension of any of the Obligations shall impair any such right, power or remedy or shall be construed to be a waiver of any Default or Event of Default or an acquiescence therein. In the event that the Administrative Agent shall bring any suit to enforce any of its rights hereunder and shall be entitled to judgment, then in such suit the Administrative Agent may recover reasonable expenses, including reasonable attorneys' fees, and the amounts thereof shall be included in such judgment.

11.6 **Discontinuance of Proceeding**. In case the Administrative Agent shall have instituted any proceeding to enforce any right, power or remedy under this Agreement by foreclosure, sale, entry or otherwise, and such proceeding shall have been discontinued or abandoned for any reason or shall have been determined adversely to the Administrative Agent, then and in every such case the Borrower, the Administrative Agent and each holder of any of the Obligations shall be restored to their former positions and rights hereunder with respect to the Collateral subject to the Liens granted under this Agreement and the Final Order, and all rights, remedies and powers of the Administrative Agent and the Lenders shall continue as if no such proceeding had been instituted.

## SECTION 12

## MISCELLANEOUS

12.1 **Amendments and Waivers**. Neither this Agreement or any other Loan Document, nor any terms hereof or thereof may be amended, supplemented or modified except in accordance with the provisions of this Section 12.1. The Required Lenders and each Loan Party party to the relevant Loan Document may, or (with the written consent of the Required Lenders) the Administrative Agent and each Loan Party party to the relevant Loan Document may, from time to time, (a) enter into written amendments, supplements or modifications hereto and to the other Loan Documents (including amendments and restatements hereof or thereof) for the purpose of adding any provisions to this Agreement or the other Loan Documents or changing in any manner the rights of the Lenders or of the Loan Parties hereunder or thereunder or (b) waive, on such terms and conditions as may be specified in the instrument of waiver, any of the requirements of this Agreement or the other Loan Documents or any Default or Event of

Default and its consequences; provided, however, that no such waiver and no such amendment, supplement or modification shall:

(a)     forgive or reduce the principal amount or extend the final scheduled date of maturity of any Loan or Reimbursement Obligation; extend the scheduled date of any amortization payment in respect of any Loan; reduce the stated rate of any interest (but not the Default Rate) or fee payable hereunder or extend the scheduled date of any payment thereof, increase the amount or extend the expiration date of any Commitment of any Lender, in each case without the consent of each Lender directly affected thereby in an adverse manner; provided that it is understood and agreed that no waiver, reduction or deferral of a mandatory prepayment required pursuant to Section 2.12, nor any amendment of Section 2.12 or the definitions of Asset Sale or Recovery Event, shall constitute a reduction of the amount of, or an extension of the scheduled date of, any principal installment of any Loan or Note;

(b)     (i) amend, modify or waive any provision of this Section; (ii) reduce any percentage specified in the definition of Required Lenders or in any other provision hereof specifying the number or percentage of Lenders required to amend, waive or otherwise modify any rights hereunder or make any determination or grant any consent hereunder; (iii) consent to the assignment or transfer by the Borrower of any of its rights and obligations under this Agreement and the other Loan Documents; (iv) release all or substantially all of the Collateral (other than in connection with any transaction permitted under the Loan Documents or the Orders); or (v) release all or substantially all of the Subsidiary Guarantors from their Guarantee Obligations under this Agreement, in each case without the consent of all Lenders (other than in connection with any transaction permitted under the Loan Documents);

(c)     amend, modify or waive any provision of Section 9, or any other provision of any Loan Document affecting the rights and obligations of the Administrative Agent, Collateral Agent or Issuing Lender without the consent of the Administrative Agent, Collateral Agent or Issuing Lender, as the case may be, to the extent the Administrative Agent, Collateral Agent or Issuing Lender, as the case may be, is directly affected thereby;

(d)     amend or modify the Superpriority Claim status of the Lenders without the written consent of each Lender;

(e)     amend, modify or waive any of the pro rata sharing or allocation of payments provisions of Section 2.18 without the consent of each Lender affected thereby;

(f)     amend, modify or waive any provision of Section 3 or other rights of the Issuing Lender (including its right to Cash Collateral) without the consent of the Issuing Lender; or

(g)     change the percentage set forth in the definition of "Required Lenders", without the written consent of each Lender, other than to increase such

percentage or number or to give any additional Lender or group of Lenders such right to waive, amend or modify or make any such determination or grant any such consent.

Notwithstanding anything to the contrary contained in this Section 12.1, if the Administrative Agent and the Borrower shall have jointly identified an obvious error (including, but not limited to, an incorrect cross-reference) or any error or omission of a technical nature, in each case, in any provision of any Loan Document, then the Administrative Agent and/or the Collateral Agent (acting in their sole discretion) and the Borrowers or any other relevant Loan Party shall be permitted to amend such provision or cure any ambiguity, defect or inconsistency and such amendment shall become effective without any further action or consent of any other party to any Loan Document.

Any such waiver and any such amendment, supplement or modification shall apply equally to each of the Lenders and shall be binding upon the Loan Parties, the Lenders, the Administrative Agent and all future holders of the Loans. In the case of any waiver, the Loan Parties, the Lenders and the Administrative Agent shall be restored to their former respective positions and rights hereunder and under the other Loan Documents, and any Default or Event of Default waived shall be deemed to be cured and not continuing; but no such waiver shall extend to any subsequent or other Default or Event of Default, or impair any right consequent thereon. Any such waiver, amendment, supplement or modification shall be effected by a written instrument signed by the parties required to sign pursuant to the foregoing provisions of this Section; provided that delivery of an executed signature page of any such instrument by facsimile transmission shall be effective as delivery of a manually executed counterpart thereof.

If the Required Lenders shall have approved any amendment, modification, waiver or termination, which requires the consent of all of the Lenders or all affected Lenders, the Borrower may, upon notice to such non-consenting Lender and Administrative Agent, replace any such non-consenting Lender with another financial institution; provided that (i) the replacement financial institution shall purchase at par all Loans, including accrued interest thereon, accrued fees and all other amounts owing to such replaced Lender on or prior to the date of replacement, (ii) the Borrower shall be liable to such replaced Lender under Section 2.21 if any Eurodollar Loan owing to such replaced Lender shall be purchased other than on the last day of the Interest Period relating thereto (as if such purchase constituted a prepayment of such Loans), (iii) such replacement financial institution, if not already a Lender, shall be reasonably satisfactory to the Administrative Agent, (iv) the replaced Lender shall be obligated to make such replacement in accordance with the provisions of Section 12.6 (provided that the Borrower shall be obligated to pay the registration and processing fee referred to therein), (v) such replacement financial institution shall have agreed to the applicable amendment, (vi) any such replacement shall not be deemed to be a waiver of any rights the Borrower, the Administrative Agent or any other Lender shall have against the replaced Lender, (vii) such replaced Lender shall continue to be entitled to the benefits of Section 12.5 and (viii) to the extent such amendment, modification, waiver or termination relates to a reduction, elimination, forbearance or postponement of payment of the premium under Section 2.11(b), the Borrower will pay (or cause to be paid) such replaced Lender such premium when and if such premium would have otherwise become payable under such Section 2.11(b) before giving effect to such amendment, modification, waiver or termination.

509600-0298-00338-Active.12182817.11

12.2   **Notices**.  All notices, requests and demands to or upon the respective parties hereto to be effective shall be in writing (including by telecopy), and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when delivered, or three Business Days after being deposited in the mail, postage prepaid, or, in the case of telecopy notice, when received, addressed (a) in the case of the Borrower and the Administrative Agent, as follows and (b) in the case of the Lenders, as set forth in an Administrative Questionnaire delivered to the Administrative Agent or, in the case of a Lender which becomes a party to this Agreement pursuant to an Assignment and Assumption, in such Assignment and Assumption or (c) in the case of any party, to such other address as such party may hereafter notify to the other parties hereto:

(i)     if to the Borrower or any other Loan Party:

c/o Local Insight Regatta Holdings, Inc.
188 Inverness Drive West, Suite 800
Englewood, Colorado 80112
Attention: John S. Fischer, General Counsel
Telephone: (303) 867-1608
Telefax: (303) 867-1601

with copies to:

c/o Welsh, Carson, Anderson & Stowe
320 Park Avenue
Suite 2500
New York, New York  10022
Attention:  John Almeida, Jr.
Telephone: (212) 893-9500
Telefax: (212) 893-9575

and:

Kirkland & Ellis LLP
300 North LaSalle
Chicago, Illinois  60654
Attention:  Christopher Butler, P.C.
Telephone: (312) 862-2298
Telefax: (312) 862-2200

(ii)    if to the Administrative Agent:

JPMorgan Chase Bank, N.A.
277 Park Avenue, 8th Floor
New York, NY 10172
Attention: _____
Telephone number:  212-622-____
Facsimile number:  212-622-4557
Electronic mail address: _____@jpmorgan.com

JPMorgan Chase Loan and Agency Services
1111 Fannin Street, Floor 10
Houston, TX, 77002-6925, United States
Attention: Shadia O Aminu, Account Manager
Telephone: (713) 750-7933
Telefax: (713) 750-2878
Email: shadia.o.aminu@jpmchase.com

with a copy to:

JPMorgan Chase Bank, N.A.
383 Madison Avenue, 23rd Floor
New York, NY 10179
Attention: Neil Boylan, Managing Director
Telephone: 212-270-1410
Telefax: 212-622-4556
Email: neil.boylan@jpmorgan.com

(iii) if to the Issuing Lender:

JPMorgan Chase Loan and Agency Services
1111 Fannin Street, Floor 10
Houston, TX, 77002-6925, United States
Attention: Shadia O Aminu, Account Manager
Telephone: (713) 750-7933
Telefax: (713) 750-2878
Email: shadia.o.aminu@jpmchase.com

with a copy to:

JPMorgan Chase Bank, N.A.
383 Madison Avenue, 23rd Floor
New York, NY 10179
Attention: Neil Boylan, Managing Director
Telephone: 212-270-1410
Telefax: 212-622-4556
Email: neil.boylan@jpmorgan.com

(iv) if to a Lender, to it at its address (or telecopier number) set forth in its Administrative Questionnaire or Assignment and Assumption, as applicable.

12.3 **Waiver; Cumulative Remedies**. No failure to exercise and no delay in exercising, on the part of the Administrative Agent or any Lender, any right, remedy, power or privilege hereunder or under the other Loan Documents shall operate as a waiver thereof, nor shall any single or partial exercise of any right, remedy, power or privilege hereunder preclude any other or further exercise thereof or the exercise of any other right, remedy, power or privilege. The rights, remedies, powers and privileges herein provided are cumulative and not exclusive of any rights, remedies, powers and privileges provided by law.

- 98 -

12.4 **Survival of Representations and Warranties**. All representations and warranties made herein, in the other Loan Documents and in any document, certificate or statement delivered pursuant hereto or in connection herewith shall survive the execution and delivery of this Agreement and the making of the Loans and other extensions of credit hereunder.

12.5 **Payment of Expenses**. The Borrower agrees (a) to pay or reimburse the Administrative Agent, the Collateral Agent, the Lead Bookrunner and the Lead Arranger for all their reasonable out of pocket costs and expenses incurred in connection with the syndication of the Facility (other than fees payable to syndicate members) and the development, preparation and execution of, and any amendment, supplement or modification to, this Agreement and the other Loan Documents and any other documents prepared in connection herewith or therewith, and the consummation and administration of the transactions contemplated hereby and thereby, including, without limitation, the reasonable fees and disbursements and other charges of counsel to the Administrative Agent (including one lead counsel in each relevant jurisdiction) and the charges of IntraLinks and reasonable and documented fees and expenses of FTI and other advisors to the Administrative Agent, (b) to pay or reimburse each Lender, the Lead Bookrunner, the Collateral Agent and the Administrative Agent for all their costs and expenses incurred in connection with the enforcement or preservation of any rights under this Agreement, the other Loan Documents and any other documents prepared in connection herewith or therewith, and any negotiation, workout, restructuring or legal proceeding, including, without limitation, the fees and disbursements of counsel to each Lender and of counsel to the Administrative Agent and Collateral Agent, (including one lead counsel in each relevant jurisdiction) and the reasonable and documented fees and expenses of financial advisors, third party consultants and appraisors retained by the Administrative Agent, (c) to pay or reimburse the Administrative Agent, the Collateral Agent, the Lead Bookrunner and the Lead Arranger, for all reasonable documented out-of-pocket costs and expenses incurred in connection with this Agreement and the other Loan Documents, the Orders or the Cases (including, without limitation, the on-going monitoring of the Cases, including attendance at hearings or other proceedings and the on-going review of documents filed with the Bankruptcy Court, and all fees, disbursements and charges of counsel to the Administrative Agent Agreement (including one lead counsel in each relevant jurisdiction) and costs of FTI and other advisors to the Administrative Agent. The foregoing costs and expenses shall include all search, filing, recording and title insurance charges and fees and Taxes related thereto, and other (reasonable and out-of-pocket, in the case of clauses (a) and (c) above) expenses incurred by any Agent; (d) to pay, indemnify, or reimburse each Lender, the Collateral Agent and the Administrative Agent for, and hold each Lender, the Collateral Agent and the Administrative Agent harmless from, any and all recording and filing fees and any and all liabilities with respect to, or resulting from any delay in paying, stamp, excise and other taxes, if any, which may be payable or determined to be payable in connection with the execution and delivery of, or consummation or administration of any of the transactions contemplated by, or any amendment, supplement or modification of, or any waiver or consent under or in respect of, this Agreement, the other Loan Documents and any other documents, and (e) to pay, indemnify or reimburse each Lender, the Administrative Agent, the Collateral Agent, the Lead Bookrunner and the Lead Arranger and their respective Related Parties (each, an "Indemnitee") for, and hold each Indemnitee harmless from and against any and all other liabilities, obligations, losses (other than loss profit), damages, penalties, actions, judgments, suits, costs, expenses or disbursements of any kind or nature whatsoever with respect to the execution, delivery, enforcement, performance and administration of this Agreement, the other Loan Documents and any other

- 99 -

documents, including, without limitation, any of the foregoing relating to the use of proceeds of the Loans or the violation of, noncompliance with or liability under, any Environmental Law applicable to the operations of the Borrower or any of its Subsidiaries, or to any Property now or previously owned or operated by any of them, including the presence or Release of Materials of Environmental Concern at, on, in, under or emanating from any and all such Properties and the fees and disbursements and other charges of legal counsel in connection with claims, actions or proceedings by any Indemnitee against the Borrower hereunder (all the foregoing in this clause (e), collectively, the "Indemnified Liabilities"), provided that, in each case, the Borrower shall have no obligation hereunder to any Indemnitee with respect to Indemnified Liabilities to the extent such Indemnified Liabilities are found by a final and nonappealable decision of a court of competent jurisdiction to have resulted from (A) the bad faith, gross negligence or willful misconduct of such Indemnitee and/or its Related Parties or (B) a material breach by such Indemnitee and/or its Related Parties of its obligations hereunder, provided that the Borrower shall not be required to reimburse the legal fees and expenses of more than one primary outside counsel and reasonably necessary local and specialty counsel for all Indemnitees with respect to any matter for which indemnification is sought unless, as reasonably determined by such Indemnitee's counsel, representation of all such Indemnitees would create an actual or potential conflict of interest, and provided further that this section 12.5(e) shall not apply with respect to Taxes other than any Taxes that represent losses or damages arising from any non-Tax claim. The Borrower shall not be required to indemnify any Indemnitee for any Indemnified Liabilities paid or payable by such Indemnitee in, or resulting from, the settlement of any action, proceeding or investigation without the written consent of the Borrower, which consent shall not be unreasonably withheld or delayed; provided that the foregoing indemnity shall apply to any such settlement in the event that the Borrower was offered the ability to assume the defense of the action that was the subject matter of such settlement and elected not to assume. No party hereto or their respective Related Parties shall be liable for any damages arising from the use by unauthorized persons of information or other materials sent through electronic, telecommunications or other information transmission systems that are intercepted by such persons or for any special, indirect, consequential or punitive damages in connection with the Facility. Except as otherwise provided herein, and to the extent permitted by applicable law, the Borrower agrees not to assert and to cause its Subsidiaries not to assert, and hereby waives and agrees to cause its Subsidiaries so to waive, all rights for contribution or any other rights of recovery with respect to all claims, demands, penalties, fines, liabilities, settlements, damages, costs and expenses of whatever kind or nature, under or related to Environmental Laws, that any of them might have by statute or otherwise against any Indemnitee. All amounts due under this Section 12.5 shall be payable not later than 30 days after written demand therefor. The agreements in this Section shall survive repayment of the Loans and all other amounts payable hereunder.

12.6    **Successors and Assigns; Participations and Assignments**.

(a)     This Agreement shall be binding upon and inure to the benefit of the Borrower, the Lenders, the Administrative Agent, all future holders of the Loans and their respective successors and assigns, except that the Borrower may not assign or transfer any of its rights or obligations under this Agreement without the prior written consent of the Administrative Agent and each Lender.

509600-0298-00338-Active.12182817.11

(b)     Any Lender may, without the consent of the Borrower, in accordance with applicable law, at any time sell to one or more banks, financial institutions or other entities (each, a "Participant") participating interests in any Loan owing to such Lender, any Commitment of such Lender or any other interest of such Lender hereunder and under the other Loan Documents. In the event of any such sale by a Lender of a participating interest to a Participant, such Lender's obligations under this Agreement to the other parties to this Agreement shall remain unchanged, such Lender shall remain solely responsible for the performance thereof, such Lender shall remain the holder of any such Loan for all purposes under this Agreement and the other Loan Documents, and the Borrower and the Administrative Agent shall continue to deal solely and directly with such Lender in connection with such Lender's rights and obligations under this Agreement and the other Loan Documents. In no event shall any Participant under any such participation have any right to approve any amendment or waiver of any provision of any Loan Document, or any consent to any departure by any Loan Party therefrom, except to the extent that such amendment, waiver or consent would require the consent of all Lenders pursuant to Section 12.1. The Borrower agrees that if amounts outstanding under this Agreement and the Loans are due or unpaid, or shall have been declared or shall have become due and payable upon the occurrence of an Event of Default, each Participant shall, to the maximum extent permitted by applicable law, be deemed to have the right of setoff in respect of its participating interest in amounts owing under this Agreement to the same extent as if the amount of its participating interest were owing directly to it as a Lender under this Agreement; provided that, in purchasing such participating interest, such Participant shall be deemed to have agreed to share with the Lenders the proceeds thereof as provided in Section 12.7(a) as fully as if such Participant were a Lender hereunder. The Borrower also agrees that each Participant shall be entitled to the benefits of Sections 2.19, 2.20 and 2.21 (subject to the requirements and limitations therein, including the requirements under Section 2.20(e) (it being understood that the documentation required under Section 2.20(e) shall be delivered to the participating Lender)) with respect to its participation in the Commitments and the Loans outstanding from time to time as if such Participant were a Lender; provided that such Participant (A) agrees to be subject to the provisions of Sections 2.19 and 2.20 as if it were an assignee under paragraph (c) of this Section; and (B) shall not be entitled to receive any greater payment under Sections 2.19 or 2.20, with respect to any participation, than its participating Lender would have been entitled to receive, except to the extent such entitlement to receive a greater payment results from an adoption of or any change in any Requirement of Law or in the interpretation or application thereof or compliance by any Lender with any request or directive (whether or not having the force of law) from any central bank or other Governmental Authority made subsequent to the date hereof that occurs after the Participant acquired the applicable participation. To the extent permitted by law, each Participant also shall be entitled to the benefits of Section 12.7(b) as though it were a Lender, provided such Participant shall be subject to Section 12.7(a) as though it were a Lender. Each Lender that sells a participation shall, acting solely for this purpose as an agent of the Borrower, maintain a register on which it enters the name and address of each Participant and the principal amounts (and stated interest) of each Participant's interest in the Loans or other obligations under this Agreement or any other Loan Document (the "Participant Register"); provided that no Lender shall have any obligation to disclose all or any portion of the Participant Register to any Person (including the identity of any Participant or any information relating to a Participant's interest in any Commitments, Loans, Letters of Credit or its other obligations under any Loan Document) except to the extent that such disclosure is necessary to establish that such

Commitment, Loan, Letter of Credit or other obligation is in registered form under Section 5f.103-1(c) of the United States Treasury Regulations. The entries in the Participant Register shall be conclusive absent manifest error, and such Lender shall treat each person whose name is recorded in the Participant Register as the owner of such participation for all purposes of this Agreement notwithstanding any notice to the contrary.

(c)     Any Lender (an "<u>Assignor</u>") may, in accordance with applicable law and upon written notice to the Administrative Agent and with the written consent of the Administrative Agent, at any time and from time to time assign to any Lender, any Affiliate of a Lender or any Control Investment Affiliate of a Lender (including any Related Fund) thereof to any additional bank, financial institution or other entity (an "<u>Assignee</u>"), all or any part of its rights and obligations under this Agreement pursuant to an Assignment and Assumption, substantially in the form of <u>Exhibit B</u>, executed by such Assignee and such Assignor and delivered to the Administrative Agent for its acceptance and recording in the Register; provided that no such assignment to an Assignee (other than any Lender, Related Fund or any Affiliate thereof) shall be in an aggregate principal amount of less than $500,000 (other than in the case of an assignment of all of a Lender's interests under this Agreement) and, after giving effect thereto, the assigning Lender (if it shall retain any Commitments or Loans) shall have Commitments and Loans aggregating at least $500,000 in each case, unless otherwise agreed by the Borrower and the Administrative Agent.  Upon such execution, delivery, acceptance and recording in the Register, from and after the effective date determined pursuant to such Assignment and Assumption, (x) the Assignee thereunder shall be a party hereto and, to the extent provided in such Assignment and Assumption, have the rights and obligations of a Lender hereunder with Commitments and/or Loans as set forth therein, and (y) the Assignor thereunder shall, to the extent provided in such Assignment and Assumption, be released from its obligations under this Agreement (and, in the case of an Assignment and Assumption covering all of an Assignor's rights and obligations under this Agreement, such Assignor shall cease to be a party hereto, except as to Sections 2.19, 2.20 and 12.5 in respect of the period prior to such effective date).  Notwithstanding any provision of this Section, none of Holdings, the Borrower or any Subsidiary or Affiliate thereof shall be made an Assignee or Participant and no Assignee or Participant may be a natural person.  For purposes of the minimum assignment amounts set forth in this paragraph, multiple assignments by two or more Related Funds shall be aggregated.

(d)     The Administrative Agent shall, on behalf of the Borrower, maintain at its address referred to in Section 12.2 a copy of each Assignment and Assumption delivered to it and a register (the "Register") for the recordation of the names and addresses of the Lenders, and the Commitment of, and principal amount (and stated interest) of the Loans and L/C Obligations owing to, each Lender from time to time.  The entries in the Register shall be conclusive, in the absence of manifest error, and the Borrower, the Administrative Agent and the Lenders shall treat each Person whose name is recorded in the Register as the owner of the Loans and any Notes evidencing such Loans recorded therein for all purposes of this Agreement.  Any assignment of any Loan, whether or not evidenced by a Note, shall be effective only upon appropriate entries with respect thereto being made in the Register (and each Note shall expressly so provide).  Any assignment or transfer of all or part of a Loan evidenced by a Note shall be registered on the Register only upon surrender for registration of assignment or transfer of the Note evidencing such Loan, accompanied by a duly executed Assignment and Assumption; thereupon one or more new Notes in the same aggregate principal amount shall be

- 102 -

issued to the designated Assignee, and the old Notes shall be returned by the Administrative Agent to the Borrower marked "canceled." The Register shall be available for inspection by the Borrower or any Lender at any reasonable time and from time to time upon reasonable prior notice.

(e) Upon its receipt of an Assignment and Assumption executed by an Assignor and an Assignee (and, in any case where the consent of any other Person is required by Section 12.6(c), by each such other Person) together with payment to the Administrative Agent by the parties to such Assignment and Assumption of a registration and processing fee of $3,500 the Administrative Agent shall (i) promptly accept such Assignment and Assumption and (ii) on the effective date determined pursuant thereto record the information contained therein in the Register and give notice of such acceptance and recordation to the Borrower. On or prior to such effective date, the Borrower, at its own expense, upon request, shall execute and deliver to the Administrative Agent (in exchange for the Note of the assigning Lender) a new Note payable to such Assignee in an amount equal to the applicable Loans, assumed or acquired by it pursuant to such Assignment and Assumption and, if the Assignor has retained upon request, a new Credit Note payable to the Assignor in an amount equal to the Term Loans retained by it hereunder. Such new Note or Notes shall be dated the Closing Date and shall otherwise be in the form of the Note or Notes replaced thereby.

(f) For avoidance of doubt, the parties to this Agreement acknowledge that the provisions of this Section concerning assignments of Loans and Notes relate only to absolute assignments and that such provisions do not prohibit provisions creating security interests in Loans and Notes, including, without limitation, any pledge or assignment by a Lender of any Loan or Note to any Federal Reserve Bank in accordance with applicable law.

(g) Notwithstanding anything to the contrary contained herein, any Lender (a "Granting Lender") may grant to a special purpose funding vehicle (an "SPC"), identified as such in writing from time to time by the Granting Lender to the Administrative Agent and the Borrower, the option to provide to the Borrower all or any part of any Loan that such Granting Lender would otherwise be obligated to make to the Borrower pursuant to this Agreement; provided that (i) nothing herein shall constitute a commitment by any SPC to make any Loan and (ii) if an SPC elects not to exercise such option or otherwise fails to provide all or any part of such Loan, the Granting Lender shall be obligated to make such Loan pursuant to the terms hereof. The making of a Loan by an SPC hereunder shall utilize the Commitment of the Granting Lender to the same extent, and as if, such Loan were made by such Granting Lender. Each party hereto hereby agrees that no SPC shall be liable for any indemnity or similar payment obligation under this Agreement (all liability for which shall remain with the Granting Lender). In furtherance of the foregoing, each party hereto hereby agrees (which agreement shall survive the termination of this Agreement) that, prior to the date that is one year and one day after the payment in full of all outstanding commercial paper or other indebtedness of any SPC, it will not institute against, or join any other Person in instituting against, such SPC any bankruptcy, reorganization, arrangement, insolvency or liquidation proceedings under the laws of the United States or any state thereof. In addition, notwithstanding anything to the contrary in this Section 12.6(g), any SPC may (A) with notice to, but without the prior written consent of, the Borrower and the Administrative Agent and without paying any processing fee therefor, assign all or a portion of its interests in any Loans to the Granting Lender, or with the prior written

consent of the Borrower and the Administrative Agent (which consent shall not be unreasonably withheld) to any financial institutions providing liquidity and/or credit support to or for the account of such SPC to support the funding or maintenance of Loans, and (B) disclose on a confidential basis any non-public information relating to its Loans to any rating agency, commercial paper dealer or provider of any surety, guarantee or credit or liquidity enhancement to such SPC; provided that non-public information with respect to the Borrower may be disclosed only with the Borrower's consent, which will not be unreasonably withheld. This paragraph (g) may not be amended without the written consent of any SPC with Loans outstanding at the time of such proposed amendment. In addition, each Granting Lender granting an SPC the option to provide to the Borrower all or any part of any Loan that such Granting Lender would otherwise be obligated to make to the Borrower pursuant to this Agreement, (i) shall keep a register, meeting the requirements of Treasury Regulation section 5f.103-1(c), of each SPC which has funded all or any part of any Loan that such Lender would have otherwise been obligated to make to the Borrower pursuant to this Agreement, specifying such SPC's entitlement to payments of principal and interest with respect to such Loan, (ii) shall collect, prior to the time such SPC receives payments with respect to such funded Loan, from each SPC the appropriate forms, certificates and statements described in Section 2.20(e) (and updated as required by Section 2.20(e)) as if such SPC were a Lender under Section 2.20(e) and (iii) each SPC shall be entitled to the benefits of Sections 2.19, 2.20 and 2.21 (subject to the requirements and limitations therein) with respect to its participation in the Commitments and the Loans outstanding from time to time as if such SPC were a Lender; provided that neither the grant to any SPC nor the exercise by any SPC of such option shall increase the costs or expenses or otherwise increase or change the obligations of the Borrower under this Agreement, except, in the case of Section 2.20, if the grant was made with the Borrower's prior written consent (such consent not to be unreasonably withheld or delayed). Notwithstanding anything to the contrary in this Section 12.6(g), each Lender shall have the right to sell one or more participations in all or any part of its Commitments, Loans or any other Obligation to one or more lenders or other Persons that provide financing to such Lender in the form of sales and repurchases of participations without having to satisfy the foregoing requirements, provided that the sales and repurchases are treated as financing for U.S. federal income tax purposes.

(h)     Notwithstanding anything to the contrary contained herein, any Lender that is a fund may, without the consent of the Borrower or the Administrative Agent, create a security interest in all or any portion of the Loans owing to it and the Notes, if any, held by it to the trustee for holders of obligations owed, or securities issued, by such fund as security for such obligations or securities; provided that unless and until such trustee actually becomes a Lender in compliance with the other provisions of this Section 12.6, (i) no such pledge shall release the pledging Lender from any of its obligations under the Loan Documents and (ii) such trustee shall not be entitled to exercise any of the rights of a Lender under the Loan Documents even though such trustee may have acquired ownership rights with respect to the pledged interest through foreclosure or otherwise.

(i)     For purposes of this Section 12.6, if an Issuing Lender transfers its rights with respect to the Borrower's Reimbursement Obligation with respect to a Letter of Credit, (i) such Issuing Lender shall give the Borrower notice of such transfer for notation in the register maintained by the Borrower pursuant to Section 3.9(c), (ii) each such transfer may only be made

upon notation of such transfer in such register, and (iii) no such transfer will be effective for purposes of this Agreement unless it has been recorded in such register.

### 12.7  **Adjustments; Setoff**.

(a)     Except to the extent that this Agreement or any Court Order provides for payments to be allocated to a particular Lender or to the Lenders, if any Lender (a "Benefited Lender") shall at any time receive any payment of all or part of the Obligations owing to it, or receive any collateral in respect thereof (whether voluntarily or involuntarily, by setoff or otherwise), in a greater proportion than any such payment to or collateral received by any other Lender, if any, in respect of such other Lender's Obligations, such Benefited Lender shall purchase for cash from the other Lenders a participating interest in such portion of each such other Lender's Obligations, or shall provide such other Lenders with the benefits of any such collateral, as shall be necessary to cause such Benefited Lender to share the excess payment or benefits of such collateral ratably with each of the Lenders; provided, however, that if all or any portion of such excess payment or benefits is thereafter recovered from such Benefited Lender, such purchase shall be rescinded, and the purchase price and benefits returned, to the extent of such recovery, but without interest.

(b)     In addition to any rights and remedies of the Lenders provided by law, if an Event of Default shall have occurred and be continuing, subject to the Carve Out, the Lien Avoidance Carveout and the Orders and, after giving of the notice described in Section 8, notwithstanding the provisions of Section 362 of the Bankruptcy Code, each Lender shall have the right, without prior notice to the Borrower, any such notice being expressly waived by the Borrower to the extent permitted by applicable law, upon any amount becoming due and payable by the Borrower hereunder (whether at the stated maturity, by acceleration or otherwise), to set off and appropriate and apply against such amount any and all deposits (general or special, time or demand, provisional or final), in any currency, and any other credits, indebtedness or claims, in any currency, in each case whether direct or indirect, absolute or contingent, matured or unmatured, at any time held or owing by such Lender or any branch or agency thereof (but in any event excluding payroll, tax, trust, and petty cash accounts maintained in the ordinary course of business) to or for the credit or the account of the Borrower.  Each Lender agrees promptly to notify the Borrower and the Administrative Agent after any such setoff and application made by such Lender; provided that the failure to give such notice shall not affect the validity of such setoff and application.

### 12.8  **Counterparts**.  This Agreement may be executed by one or more of the parties to this Agreement on any number of separate counterparts, and all of said counterparts taken together shall be deemed to constitute one and the same instrument.  Delivery of an executed signature page of this Agreement by facsimile transmission shall be effective as delivery of a manually executed counterpart hereof.  A set of the copies of this Agreement signed by all the parties shall be lodged with the Borrower and the Administrative Agent.

509600-0298-00338-Active.12182817.11

12.9     **Severability**.  Any provision of this Agreement that is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof, and any such prohibition or unenforceability in any jurisdiction shall not invalidate or render unenforceable such provision in any other jurisdiction.

12.10     **Integration**.  This Agreement and the other Loan Documents represent the entire agreement of the Borrower, the Administrative Agent, the Lead Arranger and the Lenders with respect to the subject matter hereof and thereof, and there are no promises, undertakings, representations or warranties by the Lead Arranger, the Administrative Agent or any Lender relative to the subject matter hereof not expressly set forth or referred to herein or in the other Loan Documents.

12.11     **GOVERNING LAW**.  **THIS AGREEMENT AND THE RIGHTS AND OBLIGATIONS OF THE PARTIES UNDER THIS AGREEMENT SHALL BE GOVERNED BY, AND CONSTRUED AND INTERPRETED IN ACCORDANCE WITH, THE LAW OF THE STATE OF NEW YORK.**

12.12     **Submission to Jurisdiction; Waivers**.  The Borrower hereby irrevocably and unconditionally (and in the case of clauses (a), (b), (d) and (e), each of the Administrative Agent and the Lenders hereby irrevocably and unconditionally):

(a)     submits for itself and its Property in any legal action or proceeding relating to this Agreement and the other Loan Documents to which it is a party, or for recognition and enforcement of any judgment in respect thereof, to the non-exclusive general jurisdiction of the Bankruptcy Court and, if the Bankruptcy Court does not have (or abstains from) jurisdiction, to the exclusive general jurisdiction the courts of the State of New York, the courts of the United States of America for the Southern District of New York, and appellate courts from any thereof;

(b)     consents that any such action or proceeding may be brought in such courts and waives, to the fullest extent permitted by law, any objection that it may now or hereafter have to the venue of any such action or proceeding in any such court or that such action or proceeding was brought in an inconvenient court and agrees not to plead or claim the same;

[(c)     appoints Welsh, Carson, Anderson & Stowe at its address specified in Section 12.2 as its duly authorized agent for service of process and agrees that service of process in any such action or proceeding may be effected by mailing a copy thereof by registered or certified mail (or any substantially similar form of mail), postage prepaid, to the Borrower, as the case may be at its address set forth in Section 12.2 or at such other address of which the Administrative Agent shall have been notified pursuant thereto;]

(d)     agrees that nothing herein shall affect the right to effect service of process in any other manner permitted by law or shall limit the right to sue in any other jurisdiction; and

(e)     waives, to the maximum extent not prohibited by law, any right it may have to claim or recover in any legal action or proceeding referred to in this Section any special, exemplary, punitive or consequential damages.

12.13   **Acknowledgments**.  The Borrower hereby acknowledges that:

(a)     it has been advised by counsel in the negotiation, execution and delivery of this Agreement and the other Loan Documents;

(b)     neither the Administrative Agent, the Lead Arranger, the Lead Bookrunner nor any Lender has any fiduciary relationship with or duty to the Borrower arising out of or in connection with this Agreement or any of the other Loan Documents, and the relationship between the Lead Arranger, the Lead Bookrunner, the Administrative Agent and the Lenders, on one hand, and the Borrower, on the other hand, in connection herewith or therewith is solely that of creditor and debtor; and

(c)     no joint venture is created hereby or by the other Loan Documents or otherwise exists by virtue of the transactions contemplated hereby among the Lead Arranger, the Administrative Agent and the Lenders or among the Borrower and the Lenders.

12.14   **Confidentiality**.  Each of the Administrative Agent and the Lenders agrees to keep confidential all non-public information provided to it by any Loan Party pursuant to this Agreement; provided that nothing herein shall prevent the Administrative Agent or any Lender from disclosing any such information (a) to the Lead Arranger, the Lead Bookrunner, the Administrative Agent, any other Lender or any Affiliate of any thereof to the extent such Affiliate has agreed to be bound by the confidentiality provisions hereof, (b) to any Participant or Assignee (each, a "Transferee") or prospective Transferee that agrees to comply with the provisions of this Section or substantially equivalent provisions, (c) to any of its or its Affiliates' employees, directors, agents, attorneys, accountants and other professional advisors (it being understood that the persons to whom such disclosure is made will be informed of the confidential nature of such information and instructed to keep such information confidential pursuant to the terms hereof), (d) to any financial institution that is a direct or indirect contractual counterparty (or is a prospective direct or indirect contractual counterparty) in swap agreements or such contractual counterparty's professional advisor (so long as such contractual counterparty, prospective contractual counterparty or professional advisor to such contractual counterparty or prospective contractual counterparty agrees to be bound by the provisions of this Section), (e) upon the demand of any Governmental Authority having jurisdiction over it, (f) in response to any order of any court or other Governmental Authority or as may otherwise be required pursuant to any Requirement of Law, (g) in connection with any litigation or similar proceeding, (h) that has been publicly disclosed other than in breach of this Section, (i) to the National Association of Insurance Commissioners or any similar organization, or upon the request of any regulator or examiner or any nationally recognized rating agency that requires access to information about a Lender's investment portfolio in connection with ratings issued with respect

509600-0298-00338-Active.12182817.11

to such Lender or (j) in connection with the exercise of any remedy hereunder or under any other Loan Document, in the case of (e), (f) and (g) above, provided, however, that the Administrative Agent or Lender has provided the applicable Loan Party prior written notice thereof to the extent practicable, cooperated with such Loan Party to obtain a protective order or other confidential treatment, at the Borrower's expense, and discloses only that portion of the confidential information as is requested

12.15  **Accounting Changes**.  In the event that any Accounting Change (as defined below) shall occur and such change results in a change in the method of calculation of financial covenants, standards or terms in this Agreement, then the Borrower and the Administrative Agent agree to enter into negotiations in order to amend such provisions of this Agreement so as to equitably reflect such Accounting Change with the desired result that the criteria for evaluating the Borrower's financial condition shall be the same after such Accounting Change as if such Accounting Change had not been made.  Until such time as such an amendment shall have been executed and delivered by the Borrower, the Administrative Agent and the Required Lenders, all financial covenants, standards and terms in this Agreement shall continue to be calculated or construed as if such Accounting Change had not occurred. "Accounting Change" refers to any change in accounting principles required by the promulgation of any rule, regulation, pronouncement or opinion by the Financial Accounting Standards Board of the American Institute of Certified Public Accountants or, if applicable, the SEC.

12.16  **Subordination of Intercompany Debt**.  Each Loan Party agrees that all intercompany Indebtedness owing to non-Loan Parties (the "Intercompany Debt") is subordinated in right of payment to the prior payment in full of all Obligations (other than contingent indemnification obligations).  Notwithstanding any provision of this Agreement to the contrary, provided that no Event of Default has occurred and is continuing, Loan Parties may make and receive payments with respect to the Intercompany Debt to the extent otherwise permitted by this Agreement; provided that in the event of and during the continuation of any Event of Default, no payment shall be made (but such payments may accrue) by or on behalf of any Loan Party on account of any Intercompany Debt.  In the event that any non-Loan Party receives any payment of any Intercompany Debt at a time when such payment is prohibited by this Section 12.16, such payment shall be held by such non-Loan Party, in trust for the benefit of, and shall be paid forthwith over and delivered, upon written request, to, the Administrative Agent.

12.17  **Patriot Act Notice**.  The Administrative Agent and the Lenders hereby notify the Borrower that pursuant to the requirements of the Patriot Act, each Lender is required to obtain, verify and record information that identifies the Loan Parties, which information includes the name, address, tax identification number and other information regarding the Loan Parties that will allow such Lender to identify the Loan Parties in accordance with the Patriot Act.  This notice is given in accordance with the requirements of the Patriot Act and is effective as to each Lender.

12.18  **WAIVERS OF JURY TRIAL.  THE BORROWER, THE ADMINISTRATIVE AGENT AND THE LENDERS HEREBY IRREVOCABLY AND UNCONDITIONALLY WAIVE TRIAL BY JURY IN ANY LEGAL ACTION OR**

PROCEEDING RELATING TO THIS AGREEMENT OR ANY OTHER LOAN
DOCUMENT AND FOR ANY COUNTERCLAIM THEREIN.

   12.19 **No Fiduciary Duty**.  The Administrative Agent, Syndication Agent, the Documentation Agent, the Lead Arranger, the Lead Bookrunner and each Lender and their respective Affiliates (collectively, solely for purposes of this paragraph, the "Lenders") may have economic interests that conflict with those of the Loan Parties. The Loan Parties agree that nothing in the Loan Documents will be deemed to create an advisory, fiduciary or agency relationship or fiduciary or other similar implied duty between the Lenders and the Loan Parties. In connection with all aspects of each transaction contemplated by this Agreement, the Loan Parties acknowledge and agree that: (a) (i) the arranging and other services described herein are arm's-length commercial transactions between the Loan Parties, on the one hand, and the Lenders, on the other hand, (ii) the Loan Parties have consulted their own legal, accounting, regulatory and tax advisors to the extent you have deemed appropriate and have not relied on any of the Lenders for advice in any of such regards, and (iii) the Loan Parties are capable of evaluating, and understand and accept, the terms, risks and conditions of the transactions contemplated by this Agreement; and (b) (i) each Lender has been, is, and will be acting solely as a principal and, except as otherwise expressly agreed in writing by the relevant parties, has not been, is not, and will not be acting as an advisor, agent or fiduciary for any of Loan Parties under the Loan Documents and (ii) under the Loan Documents, no Lender has any obligation to the Loan Parties with respect to the transactions contemplated by this Agreement except those obligations expressly set forth in this Agreement and/or the other Loan Documents.  The Borrower further acknowledges and agrees that it is responsible for making its own independent judgment with respect to such transactions and the process leading thereto.

   12.20 **Exit Financing**  All or a portion of the Loans and issued and outstanding Letters of Credit under this Agreement may be converted to loans and letters of credit under a first priority exit financing facility on terms to be determined and subject to confirmation of a plan of reorganization in form and substance satisfactory to the Administrative Agent, Issuing Lender and Lenders as determined in their sole and absolute discretion

[THE REMAINDER OF THIS PAGE HAS BEEN LEFT BLANK INTENTIONALLY.]

509600-0298-00338-Active.12182817.11

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed and delivered by its proper and duly authorized officers as of the day and year first above written.

REGATTA INVESTOR LLC,
as Guarantor


By: _____
    Name:
    Title:


LOCAL INSIGHT REGATTA HOLDINGS, INC.,
as the Borrower


By: _____
    Name:
    Title:


THE BERRY COMPANY LLC
as Subsidiary Guarantor


By: _____
    Name:
    Title:


LOCAL INSIGHT LISTING MANAGEMENT,
INC., as Subsidiary Guarantor


By: _____
    Name:
    Title:

REGATTA HOLDING I, L.P., as Guarantor

By: _____
    Name:
    Title:

REGATTA HOLDING II, L.P., as Guarantor

By: _____
     Name:
     Title:


REGATTA HOLDING III, L.P., as Guarantor

By: _____
     Name:
     Title:

REGATTA SPLIT-OFF I LLC, as Guarantor


By: _____
     Name:
     Title:


REGATTA SPLIT-OFF II LLC, as Guarantor


By: _____
     Name:
     Title:


REGATTA SPLIT-OFF III LLC, as Guarantor


By: _____
     Name:
     Title:

JPMORGAN CHASE BANK, N.A., as
Administrative Agent, Collateral Agent and a
Lender


By: _____
    Name:
    Title: