# EXHIBIT C

# Lefkovits Declaration

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| LOCAL INSIGHT MEDIA HOLDINGS, INC., et al.,[1] | ) Case No. 10-13677 ( ) |
| | ) |
| Debtors. | ) Joint Administration Requested |
| | ) |

## DECLARATION OF ARI LEFKOVITS IN SUPPORT OF THE MOTION OF LOCAL INSIGHT MEDIA HOLDINGS, INC., ET AL. FOR THE ENTRY OF INTERIM AND FINAL ORDERS PURSUANT TO SECTIONS 105, 361, 362, 363 AND 364 OF THE BANKRUPTCY CODE AND RULES 2002, 4001 AND 9014 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE (A) AUTHORIZING CERTAIN OF THE DEBTORS TO OBTAIN SECURED POSTPETITION FINANCING ON SUPER-PRIORITY PRIMING LIEN BASIS, GRANTING ADEQUATE PROTECTION FOR PRIMING AND MODIFYING THE AUTOMATIC STAY, (B) AUTHORIZING CERTAIN OF THE DEBTORS TO USE CASH COLLATERAL OF PREPETITION SECURED LENDERS AND GRANTING ADEQUATE PROTECTION FOR THE USE THEREOF, AND (C) PRESCRIBING THE FORM AND MANNER OF NOTICE AND SETTING TIME FOR THE FINAL HEARING

Pursuant to 28 U.S.C. § 1746, I, Ari Lefkovits, hereby declare as follows:

1. I am a Director in the Restructuring Group of Lazard Frères & Co. LLC ("Lazard"), where I have been employed since 1999. Lazard is the U.S. operating subsidiary of a preeminent international financial advisory and asset management firm. Lazard, together with its predecessors and affiliates, has been advising clients around the world for over 150 years. The current managing directors, directors, vice presidents and associates at Lazard have extensive experience working with financially-troubled companies in complex financial restructurings out-

---

[1] The Debtors, together with the last four digits of each of the Debtors' federal tax identification number (if applicable), are: Local Insight Media Holdings, Inc. (2696); Local Insight Media Holdings II, Inc. (8133); Local Insight Media Holdings III, Inc. (8134); LIM Finance Holdings, Inc. (8135); LIM Finance, Inc. (8136); LIM Finance II, Inc. (5380); Local Insight Regatta Holdings, Inc. (6735); The Berry Company LLC (7899); Local Insight Listing Management, Inc. (7524); Regatta Investor Holdings, Inc. (8137); Regatta Investor Holdings II, Inc. (8138); Regatta Investor LLC; Regatta Split-off I LLC; Regatta Split-off II LLC; Regatta Split-off III LLC; Regatta Holding I, L.P.; Regatta Holding II, L.P.; and Regatta Holding III, L.P. For the purpose of these chapter 11 cases, the service address for all Debtors is: 188 Inverness Drive West, Suite 800, Englewood, CO 80112.

of-court and in chapter 11 proceedings. Lazard and its principals have been involved as advisors to debtors, creditors, equity constituencies and government agencies in many reorganization cases. Since 1990, Lazard's professionals have been involved in over 250 restructurings, representing over $1 trillion in debtor assets.

2. Personally, I have provided financial advisory services to debtors and creditors through in-court and out-of-court reorganizations in a number of industries since 2001. These matters have included bankruptcy planning and process oversight, financing, valuation advice, execution of buy-side and sell-side transactions, labor negotiations, retiree medical and pension negotiations, as well as other general reorganization strategy matters. I also have significant expertise in marketing and selling assets held by debtors in bankruptcy. I have worked on multiple chapter 11 engagements, including Extended Stay, LandSource, Vertis, Crescent Resources, New Century, Kaiser Aluminum, Asia Global Crossing, Collins & Aikman, and Metromedia Fiber Network.

3. Prior to joining Lazard, I received a Bachelor's degree from Dartmouth College and a law degree from Stanford Law School. I am admitted to the bar in the states of New York and Massachusetts.

4. I am offering this declaration in support of the Motion of Local Insight Media Holdings, Inc. for the Entry of Interim and Final Orders Pursuant to Sections 105, 361, 362, 363 and 364 of the Bankruptcy Code and Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (A) Authorizing Certain of the Debtors to Obtain Secured Postpetition Financing on Super-Priority Priming Lien Basis, Granting Adequate Protection for Priming and Modifying the Automatic Stay, (B) Authorizing Certain of the Debtors to Use Cash Collateral of Existing Secured Lenders and Granting Adequate Protection for the Use Thereof; and

(C) Prescribing the Form and Manner of Notice and Setting Time for the Final Hearing (the "DIP Motion").

5. In forming the opinions set forth in herein, I have relied upon and/or considered the following: (a) my experience; (b) the DIP Motion and supporting law cited therein; (c) certain of the Loan Parties'[2] financial statements and reports; (d) documents relating to the proposed DIP financing; (e) Lazard's analyses regarding the proposed DIP financing and DIP financing provided in comparable chapter 11 cases; (f) discussions with the Loan Parties' management team concerning their cash needs and requirements; and (g) ongoing meetings with prospective sources of financing including detailed conversations and negotiations with potential lenders.

6. On July 15, 2010, Debtor Local Insight Media Holdings, Inc. ("Super Holdco") and certain of its subsidiaries retained Lazard to provide financial advisory services, including the assessment of Debtor Local Insight Regatta Holdings, Inc.'s ("LIRH") financing needs and the exploration of recapitalization and restructuring alternatives. Once retained, Lazard explored various financing options and restructuring solutions to address liquidity and capital structure issues related to LIRH, Super Holdco, and other Super Holdco subsidiaries.

7. These issues resulted from, among other things, the downward revenue trends in the directory advertising sector and a corresponding reduction in the Loan Parties' cash flow. As a result of the decline in their cash flows, the Loan Parties faced potential covenant and liquidity issues and began exploring initiatives to restructure their debt. These initiatives included contemplation of both in-court solutions and out-of-court solutions, including amending LIRH's credit agreement and negotiating with the Loan Parties' senior lenders and bondholders.

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed in the Motion.

8. Beginning in September 2010, the Loan Parties and Lazard engaged with JPMorgan Chase Bank, N.A., the administrative and collateral agent under LIRH's prepetition credit agreement, and an *ad hoc* committee of holders of LIRH's senior subordinated notes, as well as each of their representatives. These parties met on numerous occasions to discuss the directory advertising sector, and more specifically, the Loan Parties' current and projected performance. Specifically, the parties discussed the potential for an out-of-court restructuring and potential debtor-in-possession financing scenarios in the event that the Loan Parties would have to commence insolvency proceedings.

9. Based on the Loan Parties' financial situation, the Loan Parties and Lazard believe that the Loan Parties are in need of financing to sustain their businesses as a going concern. Given that the Loan Parties rely on working capital financing to meet cash needs, they have an urgent need to obtain debtor in possession financing and use cash collateral for, among other things, continuing to operate their businesses in an orderly manner, maintaining business relationships with vendors, suppliers and customers, paying employees, and satisfying other working capital and operational needs. All of these tasks are critical to preserving and maintaining the Loan Parties' going-concern value and, ultimately, effectuating a successful reorganization for the benefit of all parties in interest. The Loan Parties and Lazard also believe that it is unlikely that the Loan Parties would be able to continue their operations for an extended period of time in sole reliance on their cash on hand.

10. Recognizing the importance of securing additional working capital to finance the Loan Parties continued operations, beginning in October 2010, the Loan Parties and their advisors engaged with various creditor constituencies and a number of third-parties to obtain debtor in possession financing. Ultimately, Lazard, on behalf of the Loan Parties,

solicited twelve parties to solicit debtor in possession financing. Seven such entities signed confidentiality agreements and five provided indicative, non-binding term sheet proposals.

11. Through the review of these term sheets, the Loan Parties, along with Lazard, evaluated the terms and costs associated with the potential financing alternatives available. Additionally, Lazard compared these potential financing alternatives to other debtor in possession financing agreements provided in other chapter 11 proceedings. No prospective third-party lenders were willing to make a loan without either priming the liens of the Prepetition Secured Lenders or without the Loan Parties first having avoided the liens of the Prepetition Secured Lenders. A subset of the Prepetition Secured Lenders agreed to provide a loan that preserved the Loan Parties' ability to prosecute an Avoidance Action against the Prepetition Secured Lenders (the "DIP Proposal"). In light of this accommodation, and considering the economic terms in the DIP Proposal, the Loan Parties, in consultation with their advisors, concluded that the DIP Proposal was the most favorable financing alternative available.

12. The DIP Proposal, which, as more fully described in the DIP Motion, is a $25 million delayed-draw term loan with a one-year maturity. The Loan Parties and Lazard believe that the DIP Proposal was consistent with the market and provided more favorable economic terms than other proposals. Importantly, the DIP Proposal provides for a Lien Avoidance Carve Out whereby $500,000 will be set aside at the onset of the Loan Parties' chapter 11 cases to provide funding to the Loan Parties in the event that they commence an Avoidance Action against the Prepetition Secured Lenders. The DIP Proposal also provides for a 60-day use of Cash Collateral immediately following the commencement of any such Avoidance Action, which the Loan Parties believe will be sufficient time to prosecute the Avoidance Action, if necessary, and to obtain replacement debtor in possession financing

secured by the assets that would become unencumbered as a result of the successful prosecution of an Avoidance Action.

13. Following the determination that the DIP Proposal was the most favorable financing alternative available, the Loan Parties, Lazard, and their attorneys negotiated with JPMorgan and GSO the terms of a loan agreement. These negotiations were lengthy and often contentious, and they were carried out at arm's length and in good faith. The result of these negotiations was the DIP Agreement, a copy of which is attached to the DIP Motion as **Exhibit B**. I believe that approval of the DIP Agreement is in the best interests of the Loan Parties, their estates and other parties in interest.

14. The Loan Parties have sought the authority, in the DIP Motion, to borrow up to $7.5 million under the DIP Facility on an interim basis pending a final DIP hearing. Based on the Loan Parties' interim cash forecast, they need access to that amount of financing and will be irreparably harmed if they do not have immediate access thereto. In particular, the Loan Parties need additional liquidity to meet their working capital needs, including, without limitation, to pay professional fees, satisfy payroll obligations and remain current on other expected and necessary postpetition obligations arising in the ordinary course. Further, I believe that the Loan Parties' request for interim authority is appropriately sized and tailored to cover their minimal operational and other needs pending a final hearing. Absent interim or final approval of the DIP Agreement, the Loan Parties may have to curtail or even terminate their business operations to the material detriment of all stakeholders.

- 6 -

52928-001\DOCS_DE:165488.1

15. I declare under penalty of perjury that to the best of my knowledge, information and belief, the foregoing is true and correct.

Executed on this 18th day of November, 2010.

By: /s/ Ari Lefkovits
Name: Ari Lefkovits
Title: Director, Restructuring Group
Lazard Frères & Co. LLC