## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

-----------------------------------------------------------------------x

In re:                              :     Chapter 11

LOCAL INSIGHT MEDIA HOLDINGS, INC., et al.,[1]  :    10-13677 (KG)

Debtors.                        :    Jointly Administered

-----------------------------------------------------------------------x    **RE: D.I. 11, 57**

**LIMITED OBJECTION OF OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO DEBTORS' MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS PURSUANT TO SECTIONS 105, 361, 362, 363 AND 364 OF BANKRUPTCY CODE AND RULES 2002, 4001 AND 9014 OF FEDERAL RULES OF BANKRUPTCY PROCEDURE (A) AUTHORIZING CERTAIN DEBTORS TO OBTAIN SECURED POSTPETITION FINANCING ON SUPER-PRIORITY PRIMING LIEN BASIS, GRANTING ADEQUATE PROTECTION FOR PRIMING AND MODIFYING AUTOMATIC STAY, (B) AUTHORIZING CERTAIN DEBTORS TO USE CASH COLLATERAL OF PREPETITION SECURED LENDERS AND GRANTING ADEQUATE PROTECTION FOR USE THEREOF, AND (C) PRESCRIBING FORM AND MANNER OF NOTICE AND SETTING TIME FOR FINAL HEARING**

The Official Committee of Unsecured Creditors (the "Committee") of Local Insight Media Holdings, Inc. and certain of its subsidiaries as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "Debtors") hereby submits this limited objection (the "Limited Objection") to the Debtors' Motion for the Entry of Interim and Final Orders Pursuant to Sections 105, 361, 362, 363 and 364 of the Bankruptcy Code and Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (a) Authorizing Certain of the Debtors to Obtain Secured Postpetition Financing on Super-Priority Priming Lien Basis,

---

[1] The Debtors, together with the last four digits of each of the Debtors' federal tax identification number (if applicable), are: Local Insight Media Holdings, Inc. (2696), Local Insight Media Holdings II, Inc. (8133); Local Insight Media Holdings III, Inc. (8134); LIM Finance Holdings, Inc. (8135); LIM Finance, Inc. (8136); LIM Finance II, Inc. (5380); Local Insight Regatta Holdings, Inc. (6735); The Berry Company LLC (7899); Local Insight Listing Management, Inc. (7524); Regatta Investor Holdings, Inc. (8137); Regatta Investor Holdings II, Inc. (8138); Regatta Investor LLC; Regatta Split-off I LLC; Regatta Split-off II LLC; Regatta Split-off III LLC; Regatta Holding I, L.P.; Regatta Holding II, L.P.; and Regatta Holding III, L.P. For the purpose of these chapter 11 cases, the service address for all Debtors is: 188 Inverness Drive West, Suite 800, Englewood, CO 80112.

Granting Adequate Protection for Priming and Modifying the Automatic Stay, (b) Authorizing Certain of the Debtors to Use Cash Collateral of Prepetition Secured Lenders and Granting Adequate Protection for the Use Thereof, and (c) Prescribing the Form and Manner of Notice and Setting Time for the Final Hearing (D.I. 11) (the "DIP Motion"),[2] dated November 18, 2010, and, in support thereof, respectfully represents as follows:

## PRELIMINARY STATEMENT

1.    Acknowledging the defects in the Prepetition Lenders' (defined below) liens and, in fact, filing these chapter 11 cases in order to preserve the cause of action to avoid these liens, the Debtors nonetheless represent that the currently proposed DIP Financing – the terms and conditions of which, among other things, contain an event of default upon the filing of an avoidance action against the Prepetition Lenders, i.e., the exercise of a fiduciary duty – is the best alternative available. The Committee objects to this and several other onerous provisions in the DIP Financing which impair the Committee's ability to carry out its fiduciary duties to preserve and promote the best interests of unsecured creditors and ensure the maximization of value for the estates. The Debtors have deliberately included provisions in the Interim DIP Order that severely restrict the Committee's ability to pursue Avoidance Actions against the Prepetition Lenders to avoid their defective liens purportedly securing over $330 million in claims against the Debtors. Although the Debtors have categorically admitted that such liens are avoidable as preferences, they have taken drastic measures to insulate the Prepetition Lenders from exposure to any Avoidance Actions.

2.    Specifically, the objectionable terms of the DIP Financing (a) expressly deny the Committee authority and standing to pursue Avoidance Actions against the Prepetition

---

[2]        Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the DIP Motion.

Lenders and, at the same time, (b) preserve and fully protect, upon an Event of Default under the DIP Agreement, $500,000, in the form of a Lien Avoidance Carve-Out, solely for the Debtors to fund their investigation and prosecution of such Avoidance Actions, (c) allocate an amount of only $75,000 to the Committee, solely to fund the investigation (but not prosecution) of certain claims against the Prepetition Lenders other than Avoidance Actions, and without protection upon an Event of Default, (d) provide a mere 60 days following the appointment of the Committee for the Committee to challenge the enforceability of the Prepetition Lenders' liens, (e) as noted, trigger an Event of Default upon the initiation of an Avoidance Action against the Prepetition Lenders, (f) grant liens to the DIP Lenders on the proceeds of any and all Avoidance Actions and (g) provide the Prepetition Lenders with inappropriate adequate protection and benefits under the circumstances.

3.     The confluence of the above terms improperly shelter the Prepetition Lenders from avoidance exposure while at the same time prejudice the Committee's fundamental rights and ability to defend stakeholders' best interests. As a further illustration, in a disguised attempt to insure the Prepetition Lenders against the consequences of the successful avoidance of their liens, the Debtors have slipped into the DIP Financing a binding stipulation enforcing certain subordination provisions to ensure that the Prepetition Lenders receive prioritized payments from the estates over certain noteholders even if their liens are avoided. The Debtors' request to approve the DIP Financing is not the forum for prematurely adjudicating such inter-creditor issues. The focus must be on ensuring that the terms of the DIP Financing are in the best interests of the estates. In that the Debtors have expressed uncertainty in ever pursuing any Avoidance Actions against the Prepetition Lenders, the terms of the DIP Financing are even more egregious and improperly shelter valuable assets. To ensure that the best interests of the

estates are advanced, the Committee should have access to the Lien Avoidance Carve-Out, the funds allocated to it should be increased and fully protected, the Committee's deadline to institute Clams and Defenses should be expanded, and the Committee should be granted authority and standing to investigate and prosecute Avoidance Actions against the Prepetition Lenders.

4. The Debtors should also not be permitted to grant liens to the DIP Lenders on the proceeds of Avoidance Actions, as such proceeds should in all scenarios be reserved for the benefit of unsecured creditors.

5. Moreover, the Debtors are proposing to provide the Prepetition Lenders with certain adequate protection and other benefits that are entirely unwarranted in light of the Prepetition Lenders' defective liens, including, but not limited to:

(a) a 506(c) waiver with respect to the Prepetition Collateral;

(b) a stipulation without qualification that the Debtors' cash is Cash Collateral of the Prepetition Lenders; and

(c) payment of the Prepetiton Lenders' fees and expenses (or any other amounts) free and clear of claims, charges, assessments and other liabilities and not subject to any unwinding in the event the defective liens are avoided.

6. Finally, to assist in fulfilling its duties, the Committee requests certain modifications to the order to: (a) provide the Committee and its professionals with the same referenced financial reporting and information and (b) provide the Committee with notice of any modifications to the DIP Documents not requiring Court approval prior to the effectiveness of any such modification.

7.     Given these objectionable provisions, is the DIP Financing as currently proposed truly in the best interests of these estates or are the supposed benefits of this DIP Financing over the financing alternatives rejected by the Debtors – alternatives which, upon information and belief, did not contain these restrictions and obstacles – illusory?   The Committee leaves the Debtors to their burden and respectfully submits that, unless the terms of the DIP Financing are modified to address these issues, the DIP Motion should be denied.

## FACTUAL BACKGROUND

8.     On November 17, 2010 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended, the "Bankruptcy Code").   On November 19, 2010, the Court entered an order consolidating the Debtors' chapter 11 cases for procedural purposes.   The Debtors continue to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.   On December 1, 2010, the United States Trustee appointed the Committee consisting of:   (a) U.S. Bank National; (b) Bain & Company, Inc.; (c) Quad/Graphics, Inc.; (d) Directory Distributing Associates, Inc.; and (e) Marchex Sales, Inc.

## A.     Prepetition Facility and Defective Perfection

9.     Prior to the Petition Date, Local Insight Regatta Holdings, Inc. ("LIRH") entered into that certain Credit Agreement, dated as of April 23, 2008 (as amended, the "Prepetition Credit Agreement"), among LIRH, as borrower, JPMorgan Chase Bank, N.A. ("JPMorgan"), as administrative agent (the "Prepetition Agent"), for the lenders parties thereto (collectively, the "Prepetition Lenders"), providing for the following loans (the "Prepetition Facility"):   a $337 million senior secured term loan, of which approximately $311 million is outstanding as of the Petition Date, and a $30 million senior secured revolving loan facility, of

which approximately $26 million is outstanding as of the Petition Date. Pursuant to that certain Guaranty and Collateral Agreement, dated as of April 23, 2008 (as amended and supplemented, the "Guaranty and Collateral Agreement"), among LIRH, as borrower, and JPMorgan, as collateral agent, the guarantors under the Prepetition Credit Agreement include The Berry Company LLC ("Berry"), Local Insight Listing Management, Inc., Regatta Holding I, L.P., Regatta Holding II, L.P., Regatta Holding III, L.P., and Regatta Investor LLC (collectively, the "Prepetition Guarantors"). The Prepetition Facility is allegedly secured by substantially all of the assets of LIRH and the Prepetition Guarantors, as well as pledges of all the issued and outstanding capital stock and other equity interests of LIRH and the Prepetition Guarantors.

10.     Notwithstanding the security interests granted to the Prepetition Lenders under the Guaranty and Collateral Agreement, the Debtors have indicated that there is a defect in the perfection of such security interests. Specifically, at the time the Prepetition Credit Agreement was entered into, the Prepetition Facility was secured by the assets of Local Insight Yellow Pages, Inc., Local Insight Berry Holdings, LLC and LIRH. Thereafter, Local Insight Yellow Pages, Inc. and Local Insight Berry Holdings, in separate transactions, merged into Berry, with Berry as the surviving entity, and which now holds substantially all of the assets of the Regatta business. Following the merger, the Prepetition Agent failed to record a new UCC financing statement to perfect the security interests of the Prepetition Lenders under the Prepetition Credit Agreement until August 20, 2010. The Debtors expressly acknowledge that because perfection occurred within 90 days of the commencement of these chapter 11 cases, perfection against Berry may be subject to an avoidance action as a preferential transfer. See First Day Declaration of Richard C. Jenkins at ¶ 20 ("The Debtors commenced these chapter 11

cases less than 90 days following the August 20, 2010 perfection to preserve the right to avoid the August 20, 2010 perfection against Berry as a preferential transfer.").

**B.     Senior Notes**

11.     On or about November 30, 2007, LIRH issued $210.5 million aggregate principal amount of 11% senior subordinated notes due November 30, 2017 (the "Senior Notes") pursuant to an indenture (the "Indenture") with Windstream Regatta Holdings, Inc. (subsequently renamed Local Insight Regatta Holdings, Inc.), as issuer, and Wells Fargo Bank, N.A., as trustee (the "Indenture Trustee").  The Prepetition Guarantors also guarantee the obligations under the Indenture.

12.     In November 2008, LIRH completed an offer to exchange all of the Senior Notes for 11% Series B Senior Subordinated Notes, due November 30, 2017 (the "Exchange Notes" and, together with the Senior Notes, the "Notes").  The terms of the Exchange Notes are identical in all material respects to the Senior Notes, except that the Exchange Notes have been registered under the Securities Act of 1933, as amended, under a registration statement that was declared effective by the Securities and Exchange Commission on October 10, 2008.

**C.     Proposed DIP Facility and Improper Terms**

13.     By the DIP Motion, the Debtors seek, among other relief, authorization to obtain postpetition secured financing up to the amount of $25 million (the "DIP Facility") pursuant to a credit agreement (the "DIP Agreement"), among LIRH, as borrower, Regatta Investor LLC and each of its direct and indirect subsidiaries other than LIRH, as guarantors (the "DIP Guarantors" and, together with LIRH, the "Loan Parties"), and JPMorgan, as administrative agent (the "DIP Agent").  On November 19, 2010, the Court entered an interim order (D.I. 57) (the "Interim DIP Order"), granting the DIP Motion on an interim basis, which permitted, among other things, the initial borrowing of $7.5 million under the DIP Facility, and

scheduling a final hearing on the DIP Motion for December 13, 2010, to consider granting the DIP Financing on a final basis.

      *i.*      ***Avoidance Action Provisions***

      14.      The Interim DIP Order[3] authorizes the Debtors to grant liens to the DIP Lenders on the proceeds of the Loan Parties' claims and causes of action arising under sections 502(d), 544, 545, 547, 548, 549 and 550 of the Bankruptcy Code (collectively, the "Avoidance Actions"). Specifically, the Interim DIP Order grants the DIP Agent, for the benefit of the DIP Lenders, first priority liens and security interests on all Unencumbered Property, which "shall include any proceeds or property recovered in respect of any Avoidance Actions." Interim DIP Order at ¶ 7. Further, the Interim DIP Order also grants the DIP Agent priming liens on "all now or hereafter acquired Prepetition Collateral and all proceeds thereof," id. at ¶ 7(c), and provides "[t]o the extent any liens securing the Prepetition Obligations are avoided, the Prepetition Collateral that had been subject to such avoided liens will be automatically subject to the first priority DIP Liens and remaining Adequate Protection Liens," id. at ¶ 7(d).

      15.      In addition, the Interim DIP Order solely empowers the Debtors, and at the same time expressly denies the Committee authority and standing, to pursue Avoidance Actions, including with respect to the Prepetition Credit Agreement (e.g., to avoid the perfection of the security interests in Berry as a preferential transfer under section 547 of the Bankruptcy Code). See id. at ¶ 14(b) ("The Debtors retain all rights to investigate and prosecute, if necessary, the Avoidance Actions, including with respect to liens securing the Prepetition Obligations at any time, subject to the time bar set forth in section 546(a) of the Bankruptcy Code."), ¶ 17 ("For the

---

[3]     As a proposed final order on the DIP Motion has not been filed, certain references to provisions are made herein to the Interim DIP Order.

avoidance of doubt, the only parties authorized to bring an Avoidance Action, including with respect to the Prepetition Credit Agreement, are the Debtors. ...[The] Committee...shall be enjoined from seeking to exercise the rights of the Debtors' estates... Nothing in this Order vests or confers on any Person, including the Committee, standing or authority to pursue any cause of action belonging to the Debtors or their estates, including, without limitation, Avoidance Actions and Claims and Defenses with respect to the Prepetition Loan Documents or the Prepetition Obligations or any liens granted by any Debtor to secure any of the foregoing.").

16.     For purposes of Avoidance Actions in respect of the Prepetition Obligations, the Interim DIP Order carves out $500,000 from the liens and superpriority claims granted to the DIP Lenders solely for the benefit of the Debtors to fund their pursuit of such actions. See id. at ¶ 6(c) ("The Lien Avoidance Carve Out shall be available only to the Loan Parties in accordance with the provisions of the DIP Agreement, this Order and the Final Order and only to investigate and, if necessary, prosecute an Avoidance Action to avoid one or more prepetition liens securing the Prepetition Obligations.  For the avoidance of doubt and notwithstanding anything to the contrary herein, in the DIP Documents, or in the Prepetition Credit Agreement and related documents and agreements, the Lien Avoidance Carve Out shall be senior to all liens securing the DIP Obligations, the adequate protection liens, all claims and any and all other forms of adequate protection, liens or claims securing the DIP Obligations and Prepetition Obligations granted or recognized as valid, including the liens and security interests granted to the Prepetition Secured Lenders.").

### ii.     Claims and Defenses Provisions

17.     The Interim DIP Order provides that the Committee may use up to $75,000 to investigate Claims and Defenses.  See id. at 18 ("[N]o more than an aggregate

amount of $75,000 of the Prepetition Collateral (including the Cash Collateral), Loans under the DIP Agreement, the DIP Collateral or the Carve Out may be used by the Committee to *investigate* Claims and Defenses.") (emphasis added). Claims and Defenses is defined to include "claims, counterclaims or causes of action, objections, contest of defenses . . . against the Prepetition Agent or any of the Prepetition Secured Lenders or their respective agents, affiliates, subsidiaries, directors, officers, representatives, attorneys or advisors in connection with any matter related to the Prepetition Obligations...." Id. ¶ 17. The Interim DIP Order specifically excludes Avoidance Action from the definition of Claims and Defenses. See id. ("[I]n no event shall the Claims and Defenses include any Avoidance Actions . . ."). Further, the Committee has only 60 days following its appointment to file an adversary proceeding challenging the validity or enforceability of the Prepetition Obligations or otherwise asserting or prosecuting Claims and Defenses against the Prepetition Lenders in connection with any matter related to the Prepetition Obligations. See id.

### iii. Subordination Stipulations

18.    The DIP Agent and DIP Lenders and the Prepetition Agent and Prepetition Lenders are not parties to the Indenture or otherwise in contractual privity with the Indenture Trustee and the noteholders. Moreover, the lenders cannot enforce provisions under the Indenture as they are not third party beneficiaries.[4]    However, the lenders are attempting enforcement of certain terms regarding the priorities of the outstanding obligations under the Prepetition Facility and Indenture as part of the Interim DIP Order. Specifically, the Interim DIP

---

[4]    See Indenture § 13,15 ("Nothing in this Indenture or in the Notes, express or implied, shall give to any Person, other than the parties hereto and their successors hereunder, and the Holders, any benefit or any legal or equitable right, remedy or claim under this Indenture, except as may otherwise be provided pursuant to this Indenture with respect to such Notes.").

Order includes certain stipulations (collectively, the "Subordination Stipulations"), providing that the Prepetition Obligations constitute "Senior Indebtedness" and "Guarantor Senior Indebtedness," and the Prepetition Lenders hold "Designated Senior Indebtedness," as those terms are defined in the Indenture, and that the holders of Notes are not entitled to receive any payments unless the Prepetition Obligations are paid in full (as further set forth in the Indenture, the "Subordination Provisions"). See Interim DIP Order ¶ 3(b).

### iv. *Avoidance Action Default*

19. Under the DIP Documents and as set forth in the Interim DIP order, the commencement of a proceeding to challenge the Prepetition Lenders' liens in an Avoidance Action triggers an Event of Default, i.e., an Avoidance Action Default. See Interim DIP Order ¶ 8(b).

### v. *Adequate Protection and Other Objectionable Provisions*

20. As noted above, the Debtors are proposing to provide the Prepetition Lenders with certain unwarranted adequate protection and other benefits, including: (a) a 506(c) waiver, id. at ¶ 9; (b) a finding that payments received by the Prepetition Lenders are free and clear, id. at ¶ 10; (c) a stipulation that the Loan Parties' cash is Cash Collateral of the Prepetition Lenders, id. at ¶ 11; and (d) adequate protection consisting of adequate protection liens, 507(b) Claims and payment of fees and expenses, id. at ¶ 13(a-c).

21. A "Reservation of Rights" provision relating to the proposed adequate protection provides for the unwinding in the event of lien avoidance of the adequate protection liens and the 507(b) claims, but not the fees and expenses. See id. at ¶ 13(f).

*vi.* ***Notice and Information Provisions***

22.     With respect to notice of amendments or modifications to the DIP Documents not requiring Court approval, the Interim DIP Order provides only that the Committee shall receive notice of any such amendment or modification <u>after</u> its effectiveness. <u>See</u> Interim DIP Order ¶ 5(b)(iii).

23.     In addition, with respect to the adequate protection provisions, the Interim DIP Order provides that the Prepetition Lenders shall receive "written financial information" and "periodic reporting" that is provided to the DIP Lenders. <u>See</u> <u>id.</u> at 13(d).  No similar provision is made for the Committee.

*vii.* ***Interim Hearing on DIP Motion***

24.     At the hearing to consider entry of the Interim DIP Order, counsel for the Debtors expressed reservations and uncertainty about ever instituting the Avoidance Actions against the Prepetition Lenders.  <u>See</u> 11/19/10 Hearing Tr. at p. 15:12 ("we are hopeful that we don't go down that path"); p. 27:24-25, p. 28:1-9 (noting Debtors' ability to prosecute Avoidance Actions, "should the need ever arise").   Counsel for the DIP Agent and Prepetition Agent similarly hoped there would be no avoidance litigation and indicated that, in any event, the Prepetition Lenders were the beneficiaries of any such successful Avoidance Actions because of the Subordination Provisions in the Indenture that provided for the Prepetition Lenders' payment priority. <u>See</u> <u>Id.</u> at p. 38:23-25, p. 39:1-10 (noting "it's not clear that they'll bring [the Avoidance Actions]," particularly because the Prepetition Lenders would be the beneficiaries).

## RELIEF REQUESTED

25.     As discussed below, each of the foregoing provisions of the DIP Financing are improper or otherwise are unreasonable in the context of the DIP Financing and should be removed from any final order granting the DIP Motion.  Therefore, the Committee respectfully

requests that the Court (a) sustain this Limited Objection, and (b) modify the terms of the DIP Financing in accordance with the Committee's requests.

## LIMITED OBJECTION

26. Courts generally apply a three-part test to determine whether a debtor may obtain secured credit pursuant to section 364(c) of the Bankruptcy Code. Specifically, a debtor must prove that (a) it cannot obtain credit unencumbered or without superpriority status, (b) the credit transaction is necessary to preserve the assets of the debtor's estate, and (c) the terms of the credit transaction are fair, reasonable, and adequate given the particular circumstances of the debtor and the proposed lender. See In re Crouse Group, Inc., 71 B.R. 544, 549 (Bankr. E.D. Pa. 1987), aff'd 75 B.R. 553 (E.D. Pa. 1987) ("a [m]otion pursuant to 11 U.S.C. § 364(c) can be approved only if the debtor meets its burden on each of the three (3) elements set forth [herein]"). Unless certain terms of the DIP Financing are modified, the Debtors have failed to meet their burden of proof and the DIP Motion should be denied.

## A. Improper Denial of Committee Standing to Bring Avoidance Actions

27. A debtor is obligated to maximize the value of its estate for the benefit of its creditors. See Commodity Futures Trading Comm'n v. Weintraub, 471 U.S. 343, 352 (1985) ("The trustee is accountable for all property received…and has the duty to maximize the value of the estate") (internal quotations omitted). Accordingly, a debtor is duty bound to pursue claims and defenses that will increase the value of its estate. See Commodore Int'l v. Gould (In re Commodore Int'l Ltd.), 262 F.3d 96, 99 (2d Cir. 2001) ("The [debtor in possession] has an obligation to pursue all actions that are in the best interests of creditors and the estate.") (quoting Liberty Mut. Ins. Co. v. Official Unsecured Creditors' Comm. of Spaulding Composites Co. (In re Spaulding Composites Co.), 207 B.R. 899, 904 (B.A.P. 9th Cir. 1997)); La. World Exposition v. Federal Ins. Co., 858 F.2d 233, 249 (5th Cir. 1988) ("If a valid – and potentially profitable –

cause of action exists ... which the debtor-in-possession may assert on behalf of the corporation, all creditors are harmed when the debtor-in-possession refuses to pursue it. The value of the estate is not maximized and the ultimate recovery of all creditors is diminished.").

28. The Third Circuit has held that the Bankruptcy Code provides a qualified right for a creditors' committee to commence actions on behalf of the debtor's estate. See Official Comm. of Unsecured Creditors of Cybergenics Corp, ex rel. Cybergenics Corp. v. Chinery, 330 F.3d 548, 567 (3d Cir. 2003) (en banc) ("Cybergenics II") (holding that it is "unmistakably clear that Congress approved of creditors' committees suing derivatively to recover property for the benefit of the estate. Avoiding fraudulent transfers through § 544(b) is a perfect application of that function"). For this reason, courts in the Third Circuit have taken a permissive approach in approving a committee's standing to pursue actions on behalf of a debtor's estate and creditors. See id. at 553 ("Nearly all courts considering the issue [of authorizing a creditors' committee to act on behalf of the debtor] have permitted creditors' committees to bring actions in the name of the debtor in possession if the committee is able to establish that a debtor is neglecting its fiduciary duty.") (quoting 7 COLLIER ON BANKRUPTCY ¶ 1103.05[6][a] (15th rev. ed. 2002)); In re Nicolet, Inc., 80 B.R. 733, 737-39 (Bankr. E.D. Pa. 1987) (referring to "liberal approach" employed by Third Circuit, and observing that vast majority of bankruptcy court decisions have authorized creditors' committees to take such actions) (citing In re McKeesport Steel Castings Co., 799 F.2d 91 (3d Cir. 1986)) (additional internal citations omitted); In re Monsour Med. Ctr., 5 B.R. 715, 718 (Bankr. W.D. Pa. 1980) (holding that a creditors' committee's implied authority to sue to avoid a preference or fraudulent transfer continues under Bankruptcy Code).

29.     Despite courts' favorable approach to permitting committees to pursue valuable avoidance actions, the Debtors have improperly sought, pursuant to the DIP Motion, to deny the Committee standing and authority to pursue Avoidance Actions, in particular, against the Prepetition Lenders to avoid their liens.  See Interim DIP Order at ¶¶ 14(b), 17. Preemptively denying the Committee standing to prosecute such Avoidance Actions before the Court can determine whether the Debtors will pursue such actions, is unacceptable under these cases.  Moreover, in determining whether this DIP Facility as proposed is indeed fair, adequate and reasonable, it is difficult to reconcile the Debtors' attempt to maintain exclusive authority to pursue the Avoidance Actions with their concession to the Avoidance Action Default—a provision that, arguably, any other lender would not have imposed on the Debtors and the Committee and should also be stricken from any final order on the DIP Motion.

30.     Astonishingly, while the Debtors expressly acknowledge the existence of patent defects in the Prepetition Lenders' security interests and the filing of these chapter 11 cases to preserve the avoidance action, they nonetheless seek to prevent the Committee from taking appropriate steps to pursue significant value.  Indeed, the subject liens purport to secure the repayment of the Prepetition Lenders' claims against the Debtors of over $330 million. Notwithstanding the effect of the Subordination Stipulations (which, as discussed below, should be stricken from the DIP Financing), the avoidance of these liens will clearly serve to maximize the value of the estates for the benefit of all creditors and stakeholders.

31.     Ultimately, by seeking exclusive authority to pursue Avoidance Actions, the Debtors attempt to remove Committee oversight with respect to a critical issue in these chapter 11 cases, and, in essence, request that the Court and their creditors blindly trust that the Debtors will reach the correct conclusions and act in the best interests of the estate while

beholden to the existing lenders. The audacity of this proposition is startling. As the above case law demonstrates, courts frequently grant committees standing to pursue meritorious claims that Debtors neglect to bring. Moreover, the mere possibility that a court may grant such a request helps ensure that debtors act in the best interests of all creditors. Tellingly, the Debtors fail to cite a single case to support the unprecedented nature of the relief requested.

32.　　At this time, it is inappropriate to preemptively foreclose the possibility of granting the Committee standing to bring Avoidance Actions on behalf of the estates because there is no way of guaranteeing that the Debtors will objectively evaluate and pursue Avoidance Actions in the future. Notably, the Debtors telegraphed their reluctance and uncertainty in ever bringing Avoidance Actions against the Prepetition Lenders at the first-day hearing, and they may be dissuaded in bringing such actions by the premature assumption that the Subordination Provisions will render the avoidance of the Prepetition Lenders' liens meaningless because the Prepetition Lenders will still receive priority payments over the holders of the Notes irrespective of whether or not the Avoidance Actions are successful and the Prepetition Lenders' security interests remain intact. The Debtors' unclear motives and misplaced assumptions further illustrate the impropriety of the restrictions on the Committee's standing.

33.　　Accordingly, the Court should strike the provisions in the DIP Financing that deny the Committee standing to bring Avoidance Actions against the Prepetition Lenders or any other parties. Moreover, the Committee requests that any order granting the DIP Financing on a final basis grant the Committee standing and authority to pursue such Avoidance Actions.

**B.　　Improper Limitation on Lien Avoidance Carve-Out**

34.　　As described above, pursuant to the Interim DIP Order, only the Loan Parties may use the Lien Avoidance Carve-Out of $500,000 to investigate and, if necessary, prosecute an Avoidance Action against the Prepetition Lenders. See Interim DIP Order at ¶ 18.

This provision creates another improper restriction on the Committee's ability to seek to avoid the prepetition liens securing the Prepetition Obligations. The Debtors are again seeking to shield the Prepetition Lenders from any Avoidance Action, at the unacceptable expense of impeding the Committee's duty to represent the interests of unsecured creditors and restore extensive value to the estates. The Committee, with the requisite standing to bring an Avoidance Action against the Prepetition Lenders, should be afforded the ability to utilize the Lien Avoidance Carve-Out to facilitate the investigation and prosecution of such action. In the alternative, the Debtors should increase the Carve-Out Cap (currently $2 million) under the DIP Agreement by an amount equal to the Lien Avoidance Carve-Out and make clear in the order that it is for the benefit of the Committee to fund its pursuit of Avoidance Actions against the Prepetition Lenders.[5]

C.    **Insufficient Funding to Investigate Claims and Defenses**

35.    The DIP Financing caps the amount of funds available to the Committee for the investigation of Claims and Defenses against the Prepetition Lenders at $75,000. See Interim DIP Order at ¶ 18. This provision seeks to shield the Prepetition Lenders from potential claims, including actions challenging the proper interpretation and effect of the Subordination Provisions contained in the Indenture. In combination with the restrictions contained in the Lien Avoidance Carve-Out, and the Debtors' expressed reservations and uncertainty about ever instituting the Avoidance Actions, the provision further evidences the Debtors' attempt to hamstring the Committee in order to impermissibly shield the Prepetition Lenders from any

---

[5]    The Interim DIP Order currently provides that "except with respect to the Lien Avoidance Carve Out, the Carve Out shall not be available to pay any such Professional Fees incurred in connection with the initiation or prosecution of any claims, causes of action, adversary proceedings or other litigation against the DIP Agent, the DIP Lenders, the Prepetition Secured Lenders or the Prepetition Agent." Interim DIP Order at ¶ 6(b).

meaningful challenge that may result in an increased distribution to other creditors. Such an attempt is unacceptable. See, e.g., In re Tenney Vill. Co., Inc., 104 B.R. 562, 568-69 (Bankr. D.N.H. 1989) (finding cap on fees unacceptably limited right of debtor's counsel to payment for bringing actions against postpetition lender); In re Ames Dep't Stores, 115 B.R. 34, 40 (Bankr. S.D.N.Y. 1990) ("[F]ailure to provide a reasonable sum for professionals has, in other cases before this Court, left estates, creditors' committees and trustees without the assistance of counsel and the Court without the adversary system contemplated by Congress."); In re Channel Master Holdings, Inc., No. 03-13004, 2004 Bankr. LEXIS 576, at *8-9 (Bankr. D. Del. Apr. 26, 2004) (refusing to enforce a $75,000 cap on committee's professional fees under a postpetition financing facility, finding such cap unreasonable in comparison with caps on other professionals in case).

36.     Moreover, it has become more common for official committees to be granted authority to use a lender's alleged collateral to prosecute colorable claims against such lender. See In re TOUSA, Inc., Case No. 08-10928 (Bankr. S.D. Fla. Jan. 9, 2009) (Docket No. 2355) (placing no limitation on the use of cash collateral to pursue colorable claims against alleged secured creditors); In re Lyondell Chemical Co., Case No. 09-10023 (Bankr. S.D.N.Y. Mar. 1, 2009) (Final Order Authorizing Debtors to Obtain Postpetition Financing) (Docket No. 1002) (permitting use of up to $250,000 for investigation and prosecution of claims against prepetition lenders).

37.     In order to maximize estate assets and ensure that creditors' claims are treated appropriately in chapter 11 plans, statutory fiduciaries, such as the Committee, must be equipped to represent the interests of their constituents. Thus, the actions of the Committee's

professionals should not be dictated by the interests of the Prepetition Lenders, but rather by the duties imposed by the Bankruptcy Code.

38.     Given the above, the Committee requests that the Court increase the $75,000 cap to investigate Claims and Defenses to ensure that the Prepetition Lenders' interests are not impermissibly protected at the expense of the fair and equitable treatment of other creditors.  In addition, the final amount set aside in connection with Claims and Defenses should be (a) segregated from the Loan Parties' cash on hand and designated as for the sole use of the Committee and (b) fully preserved and protected upon an Event of Default under the DIP Agreement, as a Carve-Out amount, similar to the protection afforded to the Lien Avoidance Carve-Out.  Further, the Committee should be granted express authority to prosecute, as well as investigate, Claims and Defenses.

## D.     No Lien on Avoidance Actions

39.     As discussed, the DIP Facility grants the DIP Agent, for the benefit of the DIP Lenders, liens on the proceeds or property recovered in respect of any Avoidance Action. See Interim Order, ¶ 7(a).  Avoidance actions, however, are distinct creatures of bankruptcy law designed to ensure equitable distribution among general unsecured creditors.  Numerous courts have restricted a debtor's ability to pledge avoidance actions as security interests.  The primary reason for such restriction, as recognized by the Third Circuit, is that avoidance actions are not property of a debtor's estate.  See Official Comm. of Unsecured Creditors v. Chinery (In re Cybergenics.  Corp.), 226 F.3d 237, 244 (3d Cir. 2000) (avoidance actions are not property of estate, but are essentially rights held by estate for benefit of creditors); see also In re Sweetwater, 55 B.R. 724, 731 (D. Utah 1985), rev'd on other grounds, 884 F.2d 1323 (10th Cir. 1989) ("The avoiding powers are not 'property' but a statutorily created power to recover property."); Official Comm. of Unsecured Creditors v. Goold Electronics Corp. (In re Goold Electronics Corp.), 1993

WL 408366, *34 (N.D. Ill., Sept. 22, 1993) (vacating bankruptcy court order approving postpetition financing to extent that order assigns to bank a security interest in debtor's preference actions).

40.     In light of the unique nature of avoidance actions, courts have recognized that, at least with respect to proceeds recovered pursuant to section 544(b) of the Bankruptcy Code, "empowering the trustee or debtor in possession to avoid a transaction by pursuing an individual creditor's cause of action is a method of forcing that creditor to share its valuable right with other unsecured creditors." Cybergenics, 226 F.3d at 244; see also Buncher Co. v. Official Comm. of Unsecured Creditors of Genfarm Ltd. P'ship IV, 229 F.3d 245, 250 (3d Cir. 2000) ("When recovery is sought under § 544(b) of the Bankruptcy Code, any recovery is for the benefit of all unsecured creditors, including those who individually had no right to avoid the transfer.").

41.     Because chapter 5 causes of action are not property of the Debtors' estates, there is no legal basis to grant the DIP Lenders liens and security interests, or a superpriority administrative expense claim, on Avoidance Actions or the proceeds thereof. More fundamentally, it is unfair to allow the DIP Lenders to receive liens and superpriority interests in what may be a key source of recovery for unsecured creditors' if the Debtors' estimates of value in these cases are incorrect. A successful reorganization of the Debtors' business requires the cooperation of, and a shared risk by, all parties in interest. Granting the DIP Lenders liens and superpriority claims with respect to Avoidance Actions places an inequitable amount of such risk on unsecured creditors solely to provide additional benefits to the DIP Lenders. Accordingly, proceeds of Avoidance Actions should not be subject to any liens, but should be preserved solely for the benefit of the Debtors' unsecured creditors.

**E.** **Subordination Stipulations Should Be Removed from Order**

42.     As a final attempt to protect the Prepetition Lenders against the effect of successful lien avoidance, the Debtors impermissibly seek to determine the rights of third parties by stipulating to the meaning of certain provisions contained in the Indenture with respect to the purported subordination of the Notes to the amount outstanding under the Prepetition Facility. See Interim DIP Order at ¶ 3(c)—(e).  Such Subordination Stipulations are an improper attempt to insure the Prepetition Lenders against the consequences of the successful avoidance of their liens.  Whether the relevant Subordination Provisions are enforceable is not an appropriate issue to decide in the DIP Motion when neither the trustee nor noteholders under the Indenture are parties to the DIP Facility or otherwise have any privity of contract with the DIP Agent or DIP Lenders.

43.     Ultimately, the Debtors cite no case to support the granting of such relief in the context of a motion to obtain postpetition financing.  To the contrary, courts have expressly recognized that it is inappropriate to determine certain issues, such as intercreditor claims, in the context of a debtor-in-possession financing motion.  See, e.g., Ion Media Networks, Inc. v. Cyrus Select Opportunities Master Fund, Ltd., 419 B.R. 585, 591 n.5 (S.D.N.Y. 2009) ("In entering the DIP Order, the Court made clear that it was not resolving the issue with respect to the FCC Licenses.  See 7/1 Hearing Tr. at p. 135:15-20 ('[T]his is not the confirmation hearing, this is not a hearing with respect to substantive consolidation, this is not a hearing with respect to intercreditor claims.  This is a hearing that relates to whether or not this debtor needs a debtor-in-possession financing facility with these terms').").  Similarly, it is inappropriate to decide certain issues—particularly complex issues which may affect creditors' recoveries and may implicate statutory rights and protections provided under section 1129 of the Bankruptcy Code—when they are peripheral to a debtor's ability to secure postpetition

financing. Accordingly, the Court should strike the Subordination Stipulations in any proposed final order approving the DIP Financing and not decide the subordination of the Senior Notes in the context of the DIP Motion.

## F. The Adequate Protection and Other Benefits Are Unwarranted

44. "The goal of adequate protection is to safeguard the secured creditor from diminution in the value of its interest during the Chapter 11 reorganization." In re 495 Central Park Avenue Corp., 136 B.R. 626, 631 (Bankr. S.D.N.Y. 1992). In light of the defects in the Prepetition Lenders' liens, however, the proposed adequate protection for the Prepetition Lenders is unwarranted and the following provisions found in paragraph 13(a-c) of the Interim DIP Order should be stricken:

        (a)      the adequate protection liens;

        (b)      the 507(b) Claims; and

        (c)      the payment of the Prepetition Lenders' fees and expenses.

At a minimum, the Prepetition Lenders' fees and expenses should be subject to the same unwinding set forth in paragraph 13(f) of the Interim DIP Order as items (a) and (b) in the event the liens are avoided.

45. Similarly, the following provisions found in paragraphs 9-11 of the Interim DIP Order should be stricken:

        (a) the 506(c) waiver;

        (b) the finding that payments received by the Prepetition Lenders are free and clear; and

        (c) the stipulation that the Loan Parties' cash is Cash Collateral of the Prepetition Lenders.

At a minimum, the foregoing provisions should be subject to the avoidance of the Prepetition Lenders' liens.

**G.      The Committee Is Entitled to Certain Notice and Reporting from the Debtors**

46.      Finally, to assist the Committee in fulfilling its duties, paragraphs 5(b)(iii) and 13(d) of the Interim DIP Order should be modified to provide to the Committee (a) timely notice prior to effectiveness of any amendments or modifications to the DIP documents not requiring Court approval and (b) the written financial information and other periodic reporting provided by the Debtors to the DIP Lender.

## RESERVATION OF RIGHTS

47.      The Committee reserves the right to amend, modify and/or supplement this Limited Objection and to seek discovery with respect to the relief sought by the DIP Motion and the issues raised by this Limited Objection.

## CONCLUSION

WHEREFORE, the Committee requests that the Court enter an order (i) sustaining this Limited Objection, (ii) modifying the terms of DIP Financing and granting the Committee standing as requested herein, and (iii) granting the Committee such other and further relief as the Court deems just and proper.

Dated: December 9, 2010

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

_____

Robert J. Dehney (No. 3578)
Gregory T. Donilon (No. 4244)
1201 North Market Street, 18th Floor
P.O. Box 1347
Wilmington, Delaware 19899-1347
Telephone: (302) 658-9200
Facsimile: (302) 658-3989

*Proposed Co-Counsel to the Official Committee of Unsecured Creditors*

3949539

24