# <u>EXHIBIT B</u>

## Amended Engagement Letter

ALVAREZ & MARSAL

100 Pine Street, Suite 900, San Francisco, CA 94111
Phone: 415.490.2300 Fax: 415.837.1684
www.alvarezandmarsal.com

January 27, 2011

Board of Directors of Local Insight Media Holdings, Inc.
C/o John Fischer, General Counsel
188 Inverness Drive West
Englewood, Colorado 80112

Ladies and Gentlemen:

Dated as of January 27, 2011 (the "Effective Date"), this letter agreement (this "Agreement") hereby amends and restates that certain engagement letter agreement, dated November 4, 2010, among Alvarez & Marsal North America, LLC ("A&M NA"), Alvarez & Marsal Private Equity Performance Improvement Group, LLC ("A&M PEPI," and, together with A&M NA, "A&M") and Local Insight Media Holdings, Inc. ("LIMH") on behalf of itself and those subsidiaries and affiliates that filed for chapter 11 protection (together with LIMH, the "Debtors" [1]). As of the Effective Date, LIMH is also entering into this Agreement on behalf of all of its non-Debtor subsidiaries (collectively with LIMH and the Debtors, the "Company" and each, a "Company"), including the scope of the services to be performed and the basis of compensation for those services. This Agreement will not be effective until it is approved by the United States Bankruptcy Court for the District of Delaware overseeing the Debtors' chapter 11 cases (the "Bankruptcy Court"). Subject to approval by the Bankruptcy Court, the Company and A&M intend that this Agreement will be effective retroactive to the Effective Date.

1. Description of Services

a. Officers. In connection with this engagement, A&M shall make available to the Company:

(i) Richard Jenkins to serve as the Company's Interim Chief Financial Officer (the "CFO");

[1] Debtors includes Local Insight Media Holdings, Inc., Local Insight Media Holdings II, Inc., Local Insight Media Holdings, III, Inc., LIM Finance Holdings, Inc., LIM Finance, Inc., LIM Finance II, Inc., Regatta Investor Holdings, Inc., Regatta Investor Holdings II, Inc., Regatta Investor LLC, Regatta Holdings I LP, Regatta Holdings II LP, Regatta Holdings III LP, Regatta Split-Off I LLC, Regatta Split-Off II LLC, Regatta Split-Off III LLC, Local Insight Regatta Holdings, Inc., The Berry Company LLC, Local Insight Listing Management, Inc. and any entities added to the list of filing entities subsequent to the Effective Date.

(ii) Scott Brubaker to serve as the Company's Interim Chief Restructuring Officer, Interim President and Interim Chief Executive Officer (collectively, the "CEO"); and

(iii) upon the mutual agreement of A&M and the Board of Directors of the Company (the "Board"), such additional personnel as are necessary to assist in the performance of the duties set forth in clauses 1.b and 1.c below (the "Additional Personnel," and, collectively with the CEO and the CFO, the "Engagement Personnel"). Any Additional Personnel shall provide services on such terms and conditions and for such compensation as the Company and A&M shall mutually agree upon. Additional Personnel under clause 1.b will initially include Max Fulton, Tanner MacDiarmid, and Ernst Pintar and Additional Personnel under clause 1.c will initially include Julie Hertzberg, Jason Hunt, and Rob Esposito. Such Additional Personnel may be designated by the Company as executive officers.

b. Duties of CFO. The CFO shall act as the Interim Chief Financial Officer for the Company and oversee the management of the Company's Finance and Accounting Group. Without limiting the generality of the foregoing, such duties shall include the following:

(i) The CFO shall lead the activities of the personnel in the Finance and Accounting Group. These activities shall include the duties that are customary for an individual working in this capacity;

(ii) The CFO and certain Additional Personnel shall work to continue to evaluate the structure, processes and functionally of the Finance and Accounting organization. Based on this evaluation the CFO and any Additional Personnel shall work to design and implement improvement initiatives;

(iii) The CFO and certain Additional Personnel shall assist the CEO in developing for review by the Board possible strategic alternatives for maximizing the Company's enterprise value;

(iv) The CFO and certain Additional Personnel shall lead the development of the Company's budgeting and long term financial forecasting activities;

(v) The CFO and certain Additional Personnel shall perform such other services as may be reasonably assigned by the Board;

c. Duties of CEO

(i) The CEO shall perform those duties that are customary for an individual working in the capacity of a chief executive officer;

(ii) The CEO, together with certain Additional Personnel, shall assist in performing a financial review of the Company, including, without limitation, a review and assessment of financial information that has been, and that will be, provided by the Company to its creditors, including without limitation its short and long-term projected cash flows;

(iii) The CEO and certain Additional Personnel shall assist in the identification of cost reduction and operations improvement opportunities;

(iv) The CEO and certain Additional Personnel shall assist in developing for the Boards' review possible restructuring plans or strategic alternatives for maximizing the enterprise value of the Company's various business lines;

(v) The CEO and certain Additional Personnel shall serve as a key contact with the Company's creditors with respect to the Company's financial and operational matters;

(vi) The CEO, together with certain Additional Personnel, shall assist in the preparation of the information necessary to support a potential Chapter 11 bankruptcy filing for the Company;

(vii) The CEO and certain Additional Personnel shall assist in the preparation of first-day motions, including but not limited to motions for cash management, use of cash collateral, utilities, taxes, customer programs, wages, and Debtor-in-Possession financing;

(viii) The CEO and certain Additional Personnel shall assist Company personnel in preparing operational cutoff procedures relating to the bankruptcy filing;

(ix) The CEO and certain Additional Personnel shall assist in the preparation of the Statement of Financial Affairs and the Schedules of Assets and Liabilities;

(x) The CEO and certain Additional Personnel shall assist in the claims management and reconciliation process;

(xi) The CEO and certain Additional Personnel shall assist in the preparation of monthly operating reports to the Office of the United States Trustee;

(xii) The CEO and certain Additional Personnel shall assist in preparing the creditor matrix; and

(xiii) The CEO and certain Additional Personnel shall perform such other services as are requested or directed by the Board and agreed to by A&M.

d. Reporting. The Engagement Personnel shall report to the Board.

e. Employment by A&M. The Engagement Personnel will continue to be employed by A&M and while rendering services to the Company will continue to work with other personnel at A&M in connection with other unrelated matters, which will not unduly interfere with services pursuant to this engagement, it being understood however that the CFO shall devote substantially all of his working time and efforts to the business and affairs of the Company. With respect to the Company, however, the CEO, the CFO and any Additional Personnel shall operate under the direction of the Board and A&M shall have no liability to the Company for any acts or omissions of the Engagement Personnel related to the performance or non-performance of services at the direction of the Board and consistent with the requirements of this Agreement (subject to the attached indemnity provisions).

f. Projections; Reliance; Limitation of Duties. You understand that the services to be rendered by the Engagement Personnel may include the preparation of projections and other forward-looking statements, and that numerous factors can affect the actual results of the Company's operations, which may materially and adversely differ from those projections and other forward-looking statements. In addition, the Engagement Personnel will be relying on information provided by other members of the Company's management in the preparation of those projections and other forward-looking statements. None of the Engagement Personnel nor A&M makes any representation or guarantee that an

appropriate restructuring proposal or strategic alternative can be formulated for the Company, that any restructuring proposal or strategic alternative presented to the Board will be more successful than all other possible restructuring proposals or strategic alternatives, that restructuring is the best course of action for the Company or, if formulated, that any proposed restructuring plan or strategic alternative will be accepted by any of the Company's creditors, shareholders and other constituents. Further, none of the Engagement Personnel nor A&M assumes responsibility for the selection of any restructuring proposal or strategic alternative that any such officer assists in formulating and presenting to the Board, and the Engagement Personnel shall be responsible for implementation only of the proposal or alternative approved by the Board and only to the extent and in the manner authorized and directed by the Board.

g. In connection with the services to be provided hereunder, from time to time A&M NA or A&M PEPI may utilize the services of employees of its affiliates. Such affiliates are wholly owned by A&M's parent company and employees.

2. Compensation

a. A&M will be paid by the Company for the services of the CFO at the billing rate of $640/hour. The CEO will be billed at $650/hour with a cap of 200 hours per month and any Additional Personnel will be billed based on their customary hourly billing rates within the ranges set forth below. The current hourly billing rates for other A&M personnel, based on the position held by such A&M personnel in A&M, are:

| | | |
|---|---|---|
| i. | Managing Dir's/Sr. Dir's/Dir's | $450 - $850 |
| ii. | Associates/Analysts/Consultants/Mgr | $225 - $450 |

Such rates shall be subject to adjustment annually at such time as A&M adjusts its rates generally but not by more than two percent (2%) per annum without the Company's prior written consent.

A&M agrees that: (i) the Company will not provide A&M or any Engagement Personnel with any unemployment, medical, dental, worker's compensation and/or disability insurance hereunder and (ii) the Company shall not withhold any federal, state or local income, unemployment or other taxes with respect to the services rendered hereunder.

b. In addition, A&M will be reimbursed by the Company for the reasonable out-of-pocket expenses of the Engagement Personnel, and if applicable, other A&M personnel, incurred in connection with this assignment, such as travel, lodging, duplications, computer research, messenger and telephone charges. A&M's invoices for reimbursable expenses shall be accompanied by an itemized account of such expenses together with copies of receipts for expenses which are greater than $500. All fees and expenses due to A&M will be billed on a monthly basis or, at A&M's discretion, more frequently.

c. A&M holds retainer in the amount of approximately $250,000, which shall be credited against any amounts due at the termination of this engagement and returned upon the satisfaction of all obligations hereunder.

d. The Debtors shall be jointly and severally liable to pay A&M's fees and expenses hereunder subject to any Order of the Bankruptcy Court approving this Agreement; provided, to the extent that services are rendered by A&M uniquely for the benefit of one Debtor, A&M will use reasonable efforts to identify for the Debtors the fees and expenses attributable to such Debtor; provided, further, services rendered by A&M solely for the benefit of non-Debtor Companies ("Non-Debtors") will be paid for by Non-Debtors, to which A&M will provide a separate invoice for such services. In the event of any dispute as to the allocation of fees and expenses, the Debtors and Non-Debtors agree to be subject to the determination of the Bankruptcy Court as to the appropriate allocation of the same.

3. Term

The engagement will commence as of the date hereof and may be terminated by either party without cause by giving 15 days' written notice to the other party. A&M normally does not withdraw from an engagement unless the Company misrepresents or fails to disclose material facts, fails to pay fees or expenses, or makes it unethical or unreasonably difficult for A&M to continue to represent the Company, or unless other just cause exists. In the event of any such termination, any fees and expenses due to A&M shall be remitted promptly (including fees and expenses that accrued prior to but were invoiced subsequent to such termination). The Company may immediately terminate A&M's services hereunder at any time for Cause by giving written notice to A&M. Upon any such termination, the Company shall be relieved of all of its payment obligations under this Agreement, except for the payment of fees and expenses through the effective date of termination (including fees and

expenses that accrued prior to but were invoiced subsequent to such termination) and its obligations under paragraphs 7 and 8. For purposes of this Agreement, "Cause" shall mean if (i) any of the Engagement Personnel is convicted of, admits guilt in a written document filed with a court of competent jurisdiction to, or enters a plea of nolo contendere to, an allegation of fraud, embezzlement, misappropriation or any felony; (ii) or any of the Engagement Personnel willfully disobeys a lawful direction of the Board; or (iii) a material breach of any of the material obligations of A&M or any Engagement Personnel under this Agreement which is not cured within 15 days of the Company's written notice thereof to A&M describing in reasonable detail the nature of the alleged breach.

4. <u>No Audit, Duty to Update</u>.

It is understood that the Engagement Personnel and A&M are not being requested to perform an audit, review or compilation, or any other type of financial statement reporting engagement that is subject to the rules of the AICPA, SEC or other state or national professional or regulatory body. The Engagement Personnel shall be entitled to rely on the accuracy and validity of the data disclosed to them or supplied to them by employees and representatives of the Company. The Engagement Personnel and A&M are under no obligation to update data submitted to them or review any other areas unless specifically requested by the Board to do so.

5. <u>No Third Party Beneficiary</u>.

The Company acknowledges that all advice (written or oral) given by A&M or any Engagement Personnel to the Company in connection with this engagement is intended solely for the benefit and use of the Company (limited to its Board and management) in considering the matters to which this engagement relates. The Company agrees that no such advice shall be used for any other purpose or reproduced, disseminated, quoted or referred to at any time in any manner or for any purpose other than accomplishing the tasks referred to herein without A&M's prior approval (which shall not be unreasonably withheld), except as required by law.

6. <u>Conflicts</u>.

A&M is not currently aware of any relationship that would create a conflict of interest with the Company or those parties-in-interest of which you have made us aware, but we call your attention to the relationships disclosed in those certain declarations of Richard C. Jenkins filed with the Bankruptcy Court on December 3, 2010 [Docket No. 87], December 14, 2010 [Docket No. 132], and January 31, 2011 [Docket No. ___] (collectively, the "Declarations"). Because A&M is a consulting firm that serves clients on an international basis in numerous cases, both in and out

of court, it is possible that A&M may have rendered or will render services to or have business associations with other entities or people which had or have or may have relationships with the Company, including creditors of the Company. In the event you accept the terms of this engagement, with the exception of the relationships described in the Declarations, A&M will not represent, and A&M has not represented, the interests of any such entities or people in connection with this matter.

Each of the Companies acknowledges and agrees that the services being provided hereunder are being provided on behalf of each of them and each of them hereby waives any and all conflicts of interest that may arise on account of the services being provided on behalf of any other Company. Each Company represents that it has taken all corporate action necessary and is authorized to waive such potential conflicts of interest.

Consistent with the representations made on the record at the Debtors' December 20, 2010 hearing regarding the roles of the Debtors' advisors, the Company acknowledges and agrees that CEO and CFO may, in their sole discretion, recuse themselves from the deliberative or decision making process of one or more Company entities. Furthermore, by asking the CEO and CFO to serve as officers of each of the Companies, the Companies each agree and acknowledge that the CEO's and CFO's objective shall be to maximize the value of and make decisions that are in the best interests of the Companies generally and not any particular Company individually. Notwithstanding any of the foregoing, in the event of a transaction between two Debtors or between a Debtor and a Non-Debtor Company, the CEO and CFO will not participate in the deliberative or decision making process of both parties to such transaction.

7. Confidentiality / Non-Solicitation.

A&M, and any Engagement Personnel will: (i) not use Confidential Information (as that term is defined below) for any purpose other than the fulfillment of their obligations under this Agreement; (ii) not disclose Confidential Information to any third party (other than employees of affiliates of A&M, the Company's consultants and advisors and such other parties, (e.g., Company stakeholders) as necessary in such Engagement Personnel's reasonable judgment in the performance of their role hereunder pursuant to the scope of A&M's engagement hereunder) without the prior written consent of the Company (except as required pursuant to applicable law, regulation or legal process), ; and (iii) protect and treat all Confidential Information with the same degree of care as A&M uses to protect its own confidential information of like importance, but in no event with less than reasonable care. Upon expiration or termination of this letter agreement, or at any time upon the Company's request, A&M and any Engagement Personnel will, as promptly as

practicable, destroy all Confidential Information, in whole or in part, in whatever format, including any copies thereof. Notwithstanding anything to the contrary, A&M may retain, subject to its confidentiality obligations, one copy of the Company's information (including Confidential Information) for internal record keeping purposes, but only for that period of time necessary to evidence compliance with this Agreement or other legal requirements (in which case such retained Confidential Information shall remain subject to the confidentiality obligations set forth in this Section 7). A&M acknowledges that in the event of any breach of this Section 7(a) by A&M and any Engagement Personnel, the extent of the Company's damages would be difficult or impossible to ascertain and there would be available to the Company no adequate remedy at law. Accordingly, without prejudice to any other rights and remedies otherwise available to the Company, A&M agrees that in the event of any such breach: (i) the Company will be entitled to injunctive or other equitable relief without the necessity of proving actual damages in connection with such breach and (ii) A&M hereby irrevocably waives any requirement for the securing or posting of any bond in connection with such injunctive or equitable relief.

As used herein, the term "Confidential Information" means all non-public, confidential or proprietary information (whether in oral or written form, whether electronically stored or otherwise) that is furnished, delivered or made by the Company to A&M, or any Engagement Personnel (including, without limitation, the following types of information: business plans and proposals, financial information and projections, marketing plans and studies, pricing information, technical information, customer and supplier lists, internal business procedures and computer system passwords), together with all analyses, compilations, forecasts, studies or other documents prepared by A&M or any Engagement Personnel which contain or reflect any such information. Notwithstanding the foregoing, the term "Confidential Information" shall not include information which: (i) is or becomes generally available to the public other than as a result of a wrongful disclosure by A&M or any Engagement Personnel; (ii) was known to A&M or any Engagement Personnel at the time of disclosure as shown by its records in existence at the time of disclosure; (iii) is independently developed by A&M or any Engagement Personnel without use of information furnished by the Company and without violating any of the obligations arising hereunder; or (iv) is or becomes available to A&M or any Engagement Personnel on a non-confidential basis from a source (other than the Company) which, to the best of their knowledge after due inquiry, is not prohibited from disclosing such information by a legal, contractual or fiduciary obligation to the Company. Except as specifically provided for in this letter, the Company on behalf of itself and its subsidiaries and affiliates and any person which may acquire all or substantially all of its assets agrees that, until two (2) years subsequent to

the termination of this engagement, it will not solicit, recruit, hire or otherwise engage any employee of A&M or its affiliates who worked on this engagement while employed by A&M or its affiliates ("Solicited Person"). Should the Company or any of its subsidiaries or affiliates or any person who acquires all or substantially all of its assets extend an offer of employment to or otherwise engage any Solicited Person and should such offer be accepted, A&M shall be entitled to a fee from the party extending such offer equal to the Solicited Person's hourly client billing rate at the time of the offer multiplied by 4,000 hours for a Managing Director, 3,000 hours for a Senior Director and 2,000 hours for any other A&M employee. The fee shall be payable at the time of the Solicited Person's acceptance of employment or engagement.

8. Indemnification.

The Company shall indemnify any Engagement Personnel who are appointed officers of the Company to the same extent as the most favorable indemnification it extends to its officers or directors, whether under the Company's bylaws, its certificate of incorporation, by contract or otherwise, and no reduction or termination in any of the benefits provided under any such indemnities shall affect the benefits provided to the Engagement Personnel. The CEO, CFO and each Additional Personnel who is appointed an officer of the Company shall be covered as an officer under the Company's existing director and officer liability insurance policy. As a condition of A&M accepting this engagement, a Certificate of Insurance evidencing such coverage shall be furnished to A&M promptly following the effective date of this Agreement. The Company shall give thirty (30) days' prior written notice to A&M of cancellation, non-renewal, or material change in coverage, scope, or amount of such director and officer liability policy. The Company shall also maintain such insurance coverage for the Engagement Personnel who are appointed officers of the Company for a period of not less than two years following the date of the termination of such officer's services hereunder. The termination of this Agreement or the engagement shall not affect this Section 8, which shall survive termination.

9. Work Product. All Work Product (as that term is defined below) will be promptly disclosed and furnished to the Company. Upon payment of all fees and expenses owed to A&M, all right, title and interest in the Work Product will vest in the Company and the Work Product will be deemed to be a work made for hire. To the extent it may not be considered a work made for hire, A&M hereby assigns to the Company all right, title and interest in the Work Product, including all copyrights, patent rights, patents and applications therefor. Upon request, and without charge, A&M agrees to provide such assistance to the Company (including by executing assignments and other documents) as may reasonably be required to

protect, convey and enforce the rights of the Company in and to the Work Product.

As used herein, the term "Work Product" means any work product, deliverable, idea, discovery, invention, improvement, process, design, technique, configuration, methodology, know-how, original work of authorship or innovation of any kind (whether or not patentable, copyrightable or subject to other legal protection) made, developed, conceived of or reduced to practice by A&M, or any Engagement Personnel, either alone or jointly with others, in the course of or resulting from the performance of the services described in this letter agreement.

Notwithstanding anything to the contrary, A&M shall retain all right, title and interest in and to: (1) all A&M's or the Engagement Personnel's pre-existing patents, copyrights, trademarks, and other intellectual property rights and (2) all A&M's or Engagement Personnel's methodologies, processes, techniques, ideas, designs, techniques, configurations, concepts, trade secrets, and know-how embodied in the deliverables or that A&M or Engagement Personnel may develop or supply in connection with this Agreement ("A&M Knowledge") (it being understood that the Company will own outright all deliverables provided by A&M or the Engagement Personnel to the Company themselves). A&M may use A&M Knowledge for any purpose.

10. Miscellaneous.

This Agreement shall (together with the attached indemnity provisions) be: (a) governed and construed in accordance with the laws of the State of New York, regardless of the laws that might otherwise govern under applicable principles of conflict of laws thereof; (b) incorporates the entire understanding of the parties with respect to the subject matter thereof; and (c) may not be amended or modified except in writing executed by each of the signatories hereto. The Company and A&M agree to waive trial by jury in any action, proceeding or counterclaim brought by or on behalf of the parties hereto with respect to any matter relating to or arising out of the performance or non-performance of the Company or A&M hereunder. The Company and A&M agree, to the extent permitted by applicable law, that any Federal Court sitting within the Southern District of New York shall have exclusive jurisdiction over any litigation arising out of this Agreement; to submit to the personal jurisdiction of the Courts of the United States District Court for the Southern District of New York; and to waive any and all personal rights under the law of any jurisdiction to object on any basis (including, without limitation, inconvenience of forum) to jurisdiction or venue within the State of New York for any litigation arising in connection with this Agreement. Notwithstanding anything herein to the contrary, A&M may, with the Company's prior

written consent, which will not be unreasonably withheld or delayed, reference or list the Company's name and/or a general description of the services in A&M's marketing materials, including, without limitation, on A&M's website. Notwithstanding the foregoing, A&M may disclose its relationship with Company to the extent required by law.

This Agreement shall be binding upon and inure to the benefit of parties hereto and their respective successors and assigns. Notwithstanding the foregoing, neither party shall not be entitled to assign or transfer any or all of its rights or obligations hereunder without the prior written consent of the other. Any attempted assignment or transfer which is made in violation of this paragraph shall be null and void and shall be deemed a material breach of this Agreement.

If the foregoing is acceptable to you, kindly sign the enclosed copy to acknowledge your agreement with its terms.

Very truly yours,

Alvarez & Marsal North America, LLC

By: ______________________
Scott Brubaker
Managing Director

Alvarez & Marsal Private Equity Performance Improvement Group, LLC

By: ______________________
Richard Jenkins
Managing Director

Accepted and Agreed:

LOCAL INSIGHT MEDIA HOLDINGS, INC.
on behalf of itself and its subsidiaries

By: ______________________
John S. Fischer
General Counsel