IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| LOCAL INSIGHT MEDIA HOLDINGS, INC., et al.,[1] | ) Case No. 10-13677 (KG) |
| | ) |
| Debtors. | ) Jointly Administered |
| | ) |
| | ) Hearing Date: March 29, 2011 at 1 p.m. (ET) |
| | ) Objection Deadline: March 22, 2011 at 4 p.m. (ET) |

## MOTION OF LOCAL INSIGHT MEDIA HOLDINGS, INC., ET AL. FOR ENTRY OF AN ORDER EXTENDING THE EXCLUSIVE PERIODS TO FILE A CHAPTER 11 PLAN AND SOLICIT ACCEPTANCES THEREOF PURSUANT TO SECTION 1121(d) OF THE BANKRUPTCY CODE

Local Insight Media Holdings, Inc. and certain of its subsidiaries, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "Debtors"), file this motion (the "Motion") for the entry of an order, substantially in the form attached hereto as **Exhibit A**, extending by 120 days the Debtors' exclusive periods to file a chapter 11 plan of reorganization (the "Exclusive Filing Period") and to solicit votes for that plan (the "Exclusive Solicitation Period", and together with the Exclusive Filing Period, the "Exclusive Periods"). In support of this Motion, the Debtors respectfully state as follows:

---

[1] The Debtors, together with the last four digits of each of the Debtors' federal tax identification number (if applicable), are: Local Insight Media Holdings, Inc. (2696); Local Insight Media Holdings II, Inc. (8133); Local Insight Media Holdings III, Inc. (8134); LIM Finance Holdings, Inc. (8135); LIM Finance, Inc. (8136); LIM Finance II, Inc. (5380); Local Insight Regatta Holdings, Inc. (6735); The Berry Company LLC (7899); Local Insight Listing Management, Inc. (7524); Regatta Investor Holdings, Inc. (8137); Regatta Investor Holdings II, Inc. (8138); Regatta Investor LLC; Regatta Split-off I LLC; Regatta Split-off II LLC; Regatta Split-off III LLC; Regatta Holding I, L.P.; Regatta Holding II, L.P.; and Regatta Holding III, L.P. For the purpose of these chapter 11 cases, the service address for all Debtors is: 188 Inverness Drive West, Suite 800, Englewood, CO 80112.

## Preliminary Statement

1.  In the fall of 2010, in the months leading up to the Petition Date (defined below), the Debtors commenced restructuring negotiations with a steering committee of lenders under Debtor Local Insight Regatta Holdings, Inc.'s prepetition senior credit facility (the "Prepetition Steering Committee") and an ad hoc group of holders of Local Insight Regatta Holdings, Inc.'s 11% senior subordinated notes (the "Prepetition Ad Hoc Bondholder Group").[2] At approximately the same time that the Debtors began these restructuring negotiations, the Debtors learned that the Prepetition Senior Lenders only perfected their security interests against Debtor The Berry Company LLC in August, 2010. While the Debtors attempted to negotiate the terms of a comprehensive restructuring that would have allowed them to avoid or forestall the need to file for chapter 11, given the short time afforded by the pending avoidance action deadline, the Debtors ran out of time and decided to file for chapter 11 to preserve the potential avoidance actions against the Prepetition Senior Lenders.

2.  The Debtors' chapter 11 cases are not even four months old, but there have already been numerous negotiations and developments that point to and will set the stage for the Debtors' overall restructuring. In the time since the Petition Date, the Debtors and their advisors have worked diligently to ensure a smooth transition into chapter 11, including stabilizing the Debtors' business operations, focusing on vendor and customer relations issues, and preparing and filing Schedules of Assets and Liabilities and Statements of Financial Affairs. Additionally, the Debtors, after extensive negotiations, secured a debtor-in-possession financing facility (the "DIP Facility") with a sub-set of the Prepetition Senior Lenders, which, among other things,

---

[2] For purposes of this Motion, Local Insight Regatta Holdings, Inc.'s prepetition senior credit facility is referred to as the "Prepetition Senior Credit Facility" and lenders thereunder are referred to as the "Prepetition Senior Lenders". Local Insight Regatta Holdings, Inc.'s 11% senior subordinated note indenture is referred to as the "Prepetition Bond Indenture" and holders of claims thereunder are referred to as the "Prepetition Bondholders".

2

preserves the Debtors' right to commence avoidance actions against the Prepetition Senior Lenders. The Debtors have obtained interim and final Court approval of the DIP Facility. The Debtors' efforts have been complicated by certain employee turnover issues, including the decision, on or about January 27, 2011, by the Debtors' former President and Chief Executive Officer, in consultation with the Board of Directors of Local Insight Media Holdings, Inc., to resign. On January 31, 2011, the Debtors filed a supplemental application to expand the scope of the Debtors' retention of Alvarez & Marsal North America, LLC and Alvarez & Marsal Private Equity Performance Improvement Group, LLC (collectively, "A&M") to designate Scott Brubaker of A&M as the Debtors' Interim President and Chief Executive Officer. On February 11, 2011, the Court entered an order approving A&M's supplemental application.

3. In addition to the considerable time and attention required to ensure a smooth transition into chapter 11 and the significant efforts necessary to avoid disruption as a result of the recent changes in senior management, the Debtors and their advisors have also worked diligently to advance the Debtors' objective of completing their restructuring as soon as possible. Specifically, the Debtors have finalized their long-term business plan and financial projections and have presented these materials to the advisors to the Official Committee of Unsecured Creditors appointed in the Debtors' chapter 11 cases (the "Creditors' Committee"), to the advisors to the Prepetition Steering Committee, and to the advisors to the lead lenders under the DIP Facility. The completion of this significant step in the reorganization process positions the Debtors to finalize the restructuring negotiations that they began in the fall of 2010.

4. The Debtors have also recently re-commenced the restructuring negotiations they began last fall. On February 22, 2011, the Prepetition Steering Committee presented the Debtors with an initial draft term sheet for a plan of reorganization. The Debtors and the Prepetition

Steering Committee and their respective advisors participated in several telephone conferences and meetings to discuss and negotiate the term sheet for a plan of reorganization. The Debtors hope to achieve a consensus with the Steering Committee and engage the Creditors' Committee regarding the term sheet.

5. The Debtors' Exclusive Filing Period expires on March 17, 2011 and their Exclusive Solicitation Period expires on May 16, 2011. The Debtors bring this Motion at this time to ensure that it will be heard at the Debtors' omnibus hearing on March 29, 2011.[3] As set forth above, and as is usual in chapter 11 cases as large and complex as these, the Debtors require additional time to negotiate and propose their chapter 11 plan and to solicit approval thereof. Extending the Exclusive Periods will give the Debtors the time they need to continue to pursue their restructuring negotiations, and will prevent any unwarranted interference from third parties seeking to advance their own agenda by proposing their own plan of reorganization. Accordingly, the Debtors request a 120-day extension of the Exclusive Periods and submit that such an extension is warranted by the facts and circumstances of the Debtors' chapter 11 cases.

## Jurisdiction

6. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

7. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

8. The statutory basis for the relief requested herein is section 1121(d) of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code").

---

[3] Rule 9006-2 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware automatically extends the Exclusive Periods until the Court acts on this Motion without the necessity for the entry of a bridge order.

## Relief Requested

9. The Debtors seek entry of an order extending the Exclusive Filing Period through and including July 15, 2011, and extending the Exclusive Solicitation Period through and including September 13, 2011, without prejudice to the Debtors' right to request further extensions of the Exclusive Periods if necessary.

## Background

10. On November 17, 2010 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. Unless extended, the Debtors' Exclusive Filing Period will expire on March 17, 2011 and the Debtors' Exclusive Solicitation Period will expire on May 16, 2011.

11. The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. The chapter 11 cases are being jointly administered pursuant to Bankruptcy Rule 1015(b). On December 1, 2010, the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed the Creditors' Committee.

### The Debtors have Made Significant Progress in their Chapter 11 Cases

12. As discussed at length above, the Debtors began their restructuring negotiations in the fall of 2010, but those negotiations were interrupted by the Debtors' need to file for chapter 11 to preserve avoidance actions against the Prepetition Senior Lenders. The Debtors have worked diligently to stabilize their operations during the transition into chapter 11. Specifically, since the Petition Date, the Debtors have:

- facilitated a smooth transition into chapter 11 by obtaining certain "first day" and "second day" relief;
- obtained interim and final approval of debtor-in-possession financing to provide liquidity during the chapter 11 cases;

- prepared and filed their Schedules of Assets and Liabilities and Statements of Financial Affairs and satisfied various U.S. Trustee information requests;
- prevented potential disruption to its vendor and customer relationships;
- averted deterioration of employee moral;
- commenced an analysis of executory contracts and unexpired leases for assumption, rejection or re-negotiation; and
- engaged in frequent communications with their key stakeholders, including the Creditors' Committee and the Prepetition Steering Committee regarding these and other developments in the chapter 11 cases.

Through these efforts, the Debtors minimized the negative impact of their chapter 11 filings and have preserved value for their estates and established the foundation on which to negotiate a chapter 11 exit strategy that will maximize value for the benefit of all stakeholders.

13. In addition to the many actions taken to ensure a smooth transition into chapter 11, the Debtors have also completed the long-term business plan and financial projections that will serve as the basis for the Debtors' restructuring efforts. The Debtors have conducted in-person meetings with both the Creditors' Committee and the Prepetition Steering Committee and have presented their long-term business plan and financial projections, and have had extensive and detailed discussions regarding the Debtors' financial and operational performance, with both of these constituents. The Debtors and their advisors have also participated in frequent telephone conferences with the advisors to the Creditors' Committee and the Prepetition Steering Committee on many different topics throughout the Debtors' chapter 11 cases. Recently, the Debtors have engaged in negotiations with the Prepetition Steering Committee regarding the terms of the Debtors' plan of reorganization. In addition to frequent communications and meetings, the Debtors have provided the Creditors' Committee and the Prepetition Steering Committee with a great deal of information and have worked, and will continue to work, cooperatively with both groups to respond to their informal diligence requests. With this

background, the Debtors are well-positioned to move expeditiously towards a plan of reorganization.

## Basis for Relief

**A.     Supporting Authority**

14.     The principal goal of chapter 11 is the successful rehabilitation of a debtor's business, which serves to, among other things, increase the pool of assets available for distribution to creditors. NLRB v. Bildisco & Bildisco, 465 U.S. 513, 527 (1984); United States v. Whiting Pools, Inc., 462 U.S. 198, 203 (1983); see also H.R. Rep. No. 595, 95th Cong., 1st Sess. 220 (1977). To promote balanced and successful reorganizations under chapter 11, Congress gave debtors the exclusive right for a reasonable period of time to propose a plan. Matter of All Seasons Indus., Inc., 121 B.R. 1002, 1004 (Bankr. N.D. Ind. 1990). This exclusive period is intended to allow the debtor the freedom to develop a plan of reorganization "without the threat of a competing plan." In re Clamp-All Corp., 233 B.R. 198, 208 (Bankr. D. Mass. 1999).

15.     Section 1121(b) of the Bankruptcy Code provides that a debtor has the exclusive right to propose a plan of reorganization during the first 120 days of its chapter 11 case. Likewise, for the first 180 days of its chapter 11 case, a debtor has the exclusive right to solicit votes for its plan. 11 U.S.C. § 1121. "[T]he point of exclusivity is to promote an environment in which the debtor's business may be rehabilitated and a consensual plan may be negotiated." In re Burns and Roe Enterprises, Inc., 2005 WL 6289213, *4 (D.N.J. 2005).

16.     Section 1121(d) of the Bankruptcy Code authorizes a bankruptcy court to extend, "for cause," based upon the relevant facts and circumstances, the Exclusive Periods by as much as 18 months (to file a plan) and 20 months (to solicit votes). See e.g., In re Sun-Times Media Group, Inc., No. 09-11092 (CSS) (Bankr. D. Del. July 13, 2009) (granting a 90-day extension

7

following the initial 120-day period); In re EZ Lube. LLC, No. 08-13256 (CSS) (Bankr. D. Del. May 8, 2009) (granting a 120-day extension following the initial 120-day period) and In re The Flinkote Co. and Flinkote Mines Ltd., No. 04-11300 (JKF) (Bankr. D. Del. April 30, 2008) (granting the twelfth extension of the debtors' exclusivity periods).

17. Courts, including courts in this district, examine a number of factors to determine whether a debtor has had an adequate opportunity to develop, negotiate, and propose a chapter 11 plan and, thus, whether there is "cause" for extension of the exclusive periods to file, and solicit votes on, a plan. These factors include:

(a) the size and complexity of the case;

(b) the necessity of sufficient time to negotiate and prepare adequate information;

(c) the existence of good faith progress;

(d) whether the debtor is paying its debts as they become due;

(e) whether the debtor has demonstrated reasonable prospects for filing a viable plan;

(f) whether the debtor has made progress negotiating with creditors;

(g) whether creditors are prejudiced by the extension;

(h) the length of time a case had been pending;

(i) whether the debtor is seeking an extension to pressure creditors; and

(j) whether or not unresolved contingencies exist.

See In re R.G. Pharm., Inc., 374 B.R. 484, 487 (Bankr. D. Conn. 2007); In re Friedman's Inc., 336 B.R. 884, 888 (Bankr. D. Ga. 2005); In re Cent. Jersey Airport Servs., LLC, 282 B.R. 176, 183 (Bankr. D.N.J. 2002).

18. Not all factors are relevant to every case and courts have asserted that as few as one factor may be decisive in extending a debtor's exclusivity. For example, the size and

8

DOCS_DE:168485.1

complexity of a chapter 11 case is a common basis upon which courts grant extensions. See, e.g., In re Texaco, Inc., 76 B.R. 322, 326 (Bankr. S.D.N.Y. 1987) ("The large size of a debtor and the consequent difficulty in formulating a plan of reorganization for a huge debtor with a complex financial structure are important factors which generally constitute cause for extending the exclusivity periods"). Congress has even expressly noted that courts may need to extend the Bankruptcy Code's exclusivity periods for unusually large or complex cases. H.R. Rep. No. 95-595, at 231-32, reprinted in 1978 U.S.C.C.A.N. 5963, 6191. Courts, however, tend to use a relevant subset of the above factors to determine whether cause exists to grant an exclusivity extension in a particular chapter 11 case. See e.g., In re Express One Int'l, 194 B.R. 98, 100 (Bankr. E.D. Tex. 1996) (identifying four of the factors as relevant in determining whether "cause" exists to extend exclusivity); In re United Press Int'l, Inc., 60 B.R. 265, 269 (Bankr. D.D.C. 1986) (finding that the debtor showed "cause" to extend exclusivity based upon three of the factors).

### B. Cause Exists to Extend the Debtors' Exclusive Periods

19. For the reasons stated herein, the Debtors submit that the facts and circumstances of their chapter 11 cases establish cause to extend the Exclusive Periods. *First*, the Debtors' chapter 11 cases are large and complex, involving 18 debtors with approximately $918 million in funded indebtedness. In addition to the Prepetition Senior Lenders and the Prepetition Bondholders, the Debtors have hundreds of trade creditors and are counterparties to thousands of executory contracts. The size and complexity of the chapter 11 cases alone warrant an extension of the Exclusive Periods.

20. *Second*, little time has elapsed in these chapter 11 cases. The Debtors commenced their cases less than four months ago and, given the time needed to prepare for and transition into chapter 11, have had limited opportunity to pursue a plan process. Following the

9

Petition Date, the Debtors devoted significant time, energy, and resources to stabilizing their operations, obtaining court approval of numerous motions, obtaining interim and final approval of, and closing on, debtor in possession financing, and preparing and filing their Schedules of Assets and Liabilities and Statements of Financial Affairs. At the same time, the Debtors' management team has worked diligently to revise their long-range business plan and communicate that plan to key constituents. With their long-range business plan complete, the Debtors need additional time to analyze their most significant executory contracts to determine if those contracts should continue as part of the Debtors' ongoing enterprise. This analysis has just recently commenced, but substantial efforts have already been expended in completing this work. The Debtors are now in a position to diligently pursue discussions with their key constituents regarding the terms and conditions of a comprehensive balance sheet restructuring, and have recently engaged in plan negotiations with the Prepetition Steering Committee. The Debtors' progress in the chapter 11 cases to date clearly demonstrates that the Debtors have strong prospects for formulating a viable plan of reorganization and emerging from chapter 11 in a timely manner.

21. *Third*, the Debtors are not seeking an extension of the Exclusive Periods to delay administration of these chapter 11 cases or to pressure their creditors. Rather, the relief requested is necessary to ensure that the Debtors have sufficient time to meet the challenges presented by the chapter 11 cases, maximize the value of the Debtors' estates for all stakeholders, and negotiate a plan of reorganization that will ensure the Debtors' successful rehabilitation and post-emergence viability. The Debtors have and will continue to keep their key creditor constituents, including both the Creditors' Committee and the Prepetition Steering

Committee, informed throughout these chapter 11 cases and will continue to respond to all reasonable diligence requests.

22.     *Fourth*, the relief requested in this Motion will not prejudice the rights of creditors or other interested parties. The Court entered an order on January 24, 2011 [Docket No. 287] that set April 4, 2011 as the general claims bar date in the chapter 11 cases, meaning that the precise nature and scope of claims asserted by creditors has yet to be established.[4] Moreover, although it remains early in these chapter 11 cases, any party in interest can move this Court, on notice and hearing, to reduce the Exclusive Periods for cause shown. This remedy is more than sufficient to protect creditors from any undue delay on the part of the Debtors.

23.     *Fifth*, since the Petition Date, the Debtors have been paying their postpetition obligations in the ordinary course of business. The Debtors continue to closely monitor their liquidity position to ensure that they do not incur postpetition obligations that they are unable to pay. Therefore, while the Debtors remain hopeful that the plan process will proceed quickly, creditors will not be placed at undue risk if the Court grants the Debtors' requested extension of the Exclusive Periods.

## Notice

24.     The Debtors have provided notice of this motion to: (a) the U.S. Trustee; (b) counsel to the Creditors' Committee; (c) counsel to the administrative agent for Local Insight Regatta Holdings, Inc.'s prepetition and postpetition senior credit facilities; (d) the indenture trustee for Local Insight Regatta Holdings, Inc.'s 11% Senior Subordinated Notes due 2017; (e) counsel to Welsh, Carson, Anderson & Stowe; (f) the Office of the Attorney General for the State of Delaware; (g) the Internal Revenue Service; (h) the Securities and Exchange

---

[4] The order established a governmental bar date of May 16, 2011.

11

Commission; and (i) those parties who have requested notice pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested, the Debtors respectfully submit that no further notice is necessary.

## **No Prior Request**

25. No prior motion for the relief requested herein has been made to this or any other court.

*[Remainder of page intentionally left blank]*

12

DOCS_DE:168485.1

WHEREFORE, for the reasons set forth herein, the Debtors respectfully request that the Court enter an order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested herein and such other and further relief as the Court deems appropriate.

Dated: March 11, 2011
      Wilmington, Delaware

/s/ Laura Davis Jones
Laura Davis Jones (Bar No. 2436)
Michael R. Seidl (Bar No. 3889)
Curtis A. Hehn (Bar No. 4264)
PACHULSKI STANG ZIEHL & JONES LLP
919 North Market Street, 17th Floor
Wilmington, Delaware 19899-8705 (courier 19801)
Telephone:   (302) 652-4100
Facsimile:   (302) 652-4400

- and -

Richard M. Cieri (admitted *pro hac vice*)
Christopher J. Marcus (admitted *pro hac vice*)
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022-4611
Telephone:   (212) 446-4800
Facsimile:   (212) 446-4900

- and -

Ross M. Kwasteniet (admitted *pro hac vice*)
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, Illinois 60654-3406
Telephone:   (312) 862-2000
Facsimile:   (312) 862-2200

Attorneys for the Debtors and Debtors in Possession