**KIRKLAND & ELLIS LLP**
Richard M. Cieri
Christopher J. Marcus
601 Lexington Avenue
New York, New York 10022-4611
Telephone:    (212) 446-4800

Ross M. Kwasteniet
300 North LaSalle
Chicago, Illinois 60654
Telephone:    (312) 862-2000

**PACHULSKI STANG ZIEHL & JONES LLP**
Laura Davis Jones (Bar No. 2436)
Michael R. Seidl (Bar No. 3889)
Curtis A. Hehn (Bar No. 4264)
919 North Market Street, 17th Floor
Wilmington, Delaware 19899-8705
Telephone:    (302) 652-4100

*Attorneys for the Debtors and Debtors in Possession*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| LOCAL INSIGHT MEDIA HOLDINGS, INC., et al.,[1] | ) | Case No. 10-13677 (KG) |
| | ) | |
| Debtors. | ) | Jointly Administered |

## JOINT CHAPTER 11 PLAN OF LOCAL INSIGHT
## MEDIA HOLDINGS, INC., ET AL.

THIS CHAPTER 11 PLAN IS BEING SUBMITTED FOR
APPROVAL BY THE BANKRUPTCY COURT. THIS CHAPTER 11 PLAN
HAS NOT BEEN APPROVED BY THE BANKRUPTCY COURT. ACCORDINGLY, THIS IS
NOT A SOLICITATION OF AN ACCEPTANCE OR REJECTION OF THE CHAPTER 11
PLAN WITHIN THE MEANING OF SECTION 1125 OF THE BANKRUPTCY CODE,
11 U.S.C. § 1125. ACCEPTANCES OR REJECTIONS MAY NOT BE SOLICITED UNTIL
A DISCLOSURE STATEMENT HAS BEEN APPROVED BY THE BANKRUPTCY COURT.

Dated:  August 13, 2011

---

[1] The Debtors, together with the last four digits of each of the Debtors' federal tax identification number (if applicable), are: Local Insight Media Holdings, Inc. (2696); Local Insight Media Holdings II, Inc. (8133); Local Insight Media Holdings III, Inc. (8134); LIM Finance Holdings, Inc. (8135); LIM Finance, Inc. (8136); LIM Finance II, Inc. (5380); Local Insight Regatta Holdings, Inc. (6735); The Berry Company LLC (7899); Local Insight Listing Management, Inc. (7524); Regatta Investor Holdings, Inc. (8137); Regatta Investor Holdings II, Inc. (8138); Regatta Investor LLC; Regatta Split-off I LLC; Regatta Split-off II LLC; Regatta Split-off III LLC; Regatta Holding I, L.P.; Regatta Holding II, L.P.; and Regatta Holding III, L.P. For the purpose of these chapter 11 cases, on or before September 9, 2011, the service address for the Debtors is: 188 Inverness Drive West, Suite 800, Englewood, CO 80112. After September 9, 2011, the service address for the Debtors is: 160 Inverness Drive West, Suite 400, Englewood, CO 80112.

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................................... 1

**ARTICLE I DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME, GOVERNING LAW, AND OTHER REFERENCES** ............................................... 1
    1.1     Defined Terms ............................................................................................................ 1
    1.2     Rules of Interpretation ............................................................................................. 12
    1.3     Computation of Time ................................................................................................ 12
    1.4     Governing Law .......................................................................................................... 12
    1.5     Reference to Monetary Figures .................................................................................. 12
    1.6     Reference to the Debtors or the Reorganized Debtors ............................................. 13

**ARTICLE II ADMINISTRATIVE AND PRIORITY CLAIMS** ......................................... 13
    2.1     Administrative Claims ............................................................................................... 13
    2.2     Professional Claims ................................................................................................... 13
    2.3     DIP Facility Claims ................................................................................................... 14
    2.4     Priority Tax Claims ................................................................................................... 14

**ARTICLE III CLASSIFICATION, TREATMENT, AND VOTING OF CLAIMS AND INTERESTS** .......... 14
    3.1     Classification of Claims and Interests ...................................................................... 14
    3.2     Treatment of Classes of Claims and Interests .......................................................... 15
    3.3     Special Provision Governing Unimpaired Claims .................................................... 21

**ARTICLE IV PROVISIONS FOR IMPLEMENTATION OF THE PLAN** ........................ 21
    4.1     General Settlement of Claims .................................................................................... 21
    4.2     Reorganized Regatta Common Stock ....................................................................... 21
    4.3     Exemption ................................................................................................................. 21
    4.4     Subordination ........................................................................................................... 22
    4.5     Vesting of Assets in the Reorganized Debtors .......................................................... 22
    4.6     Cancellation of Notes, Instruments, Certificates, and Other Documents ................ 22
    4.7     Issuance of New Securities; Execution of Plan Documents; Private Company ....... 22
    4.8     Corporate Action ...................................................................................................... 22
    4.9     Certificate of Incorporation and Bylaws .................................................................. 23
    4.10    Effectuating Documents; Further Transactions ....................................................... 23
    4.11    Section 1146(a) Exemption ...................................................................................... 23
    4.12    Directors and Officers .............................................................................................. 23
    4.13    Incentive Plans and Employee and Retiree Benefits ............................................... 23
    4.14    Preservation of Rights of Action .............................................................................. 24
    4.15    Restructuring Transactions ....................................................................................... 24

**ARTICLE V TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES** ....... 25
    5.1     Rejection of Executory Contracts and Unexpired Leases ........................................ 25
    5.2     Pre-existing Payment and Other Obligations ........................................................... 25
    5.3     Rejection Damages Claims and Objections to Rejections ....................................... 25
    5.4     Assumption of Executory Contracts and Unexpired Leases .................................... 26
    5.5     Cure of Defaults and Objections to Cure and Assumption ..................................... 26
    5.6     Insurance Policies ..................................................................................................... 27
    5.7     Contracts, Intercompany Contracts, and Leases Entered Into After the Petition Date ......... 27
    5.8     Reservation of Rights ............................................................................................... 27

**ARTICLE VI PROVISIONS GOVERNING DISTRIBUTIONS** ...................................... 28
    6.1     Distributions on Account of Claims Allowed as of the Effective Date .................... 28
    6.2     Special Rules for Distributions to Holders of Disputed Claims ............................... 29

| | | |
|---|---|---|
| 6.3 | Delivery of Distributions | 29 |
| 6.4 | Claims Paid or Payable by Third Parties | 31 |
| 6.5 | Setoffs | 32 |
| 6.6 | Allocation Between Principal and Accrued Interest | 32 |

**ARTICLE VII PROCEDURES FOR RESOLVING DISPUTED CLAIMS AND INTERESTS** ...... **32**

| | | |
|---|---|---|
| 7.1 | Prosecution of Objections to Claims | 32 |
| 7.2 | Estimation of Claims and Interests | 33 |
| 7.3 | Expungement of, or Adjustment to, Paid, Satisfied, or Superseded Claims and Interests | 33 |
| 7.4 | No Interest | 33 |
| 7.5 | Disallowance of Claims or Interests | 33 |
| 7.6 | Amendments to Claims | 34 |

**ARTICLE VIII EFFECT OF CONFIRMATION OF THE PLAN** .......... **34**

| | | |
|---|---|---|
| 8.1 | Discharge of Claims and Termination of Interests | 34 |
| 8.2 | Releases by the Debtors | 34 |
| 8.3 | Releases by Holders of Claims and Interests | 35 |
| 8.4 | Exculpation | 35 |
| 8.5 | Injunction | 36 |
| 8.6 | Protection Against Discriminatory Treatment | 36 |
| 8.7 | Indemnification | 36 |
| 8.8 | Recoupment | 37 |
| 8.9 | Release of Liens | 37 |
| 8.10 | Reimbursement or Contribution | 37 |

**ARTICLE IX CONDITIONS PRECEDENT TO THE EFFECTIVE DATE** .......... **37**

| | | |
|---|---|---|
| 9.1 | Conditions Precedent to the Effective Date | 37 |
| 9.2 | Waiver of Conditions Precedent | 38 |
| 9.3 | Effect of Non-Occurrence of Conditions to Consummation | 38 |

**ARTICLE X MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN** .......... **38**

| | | |
|---|---|---|
| 10.1 | Modification of Plan | 38 |
| 10.2 | Revocation or Withdrawal of Plan | 38 |
| 10.3 | Confirmation of the Plan | 38 |

**ARTICLE XI RETENTION OF JURISDICTION** .......... **39**

**ARTICLE XII MISCELLANEOUS PROVISIONS** .......... **40**

| | | |
|---|---|---|
| 12.1 | Additional Documents | 40 |
| 12.2 | Payment of Statutory Fees | 40 |
| 12.3 | Dissolution of Creditors' Committee | 40 |
| 12.4 | Reservation of Rights | 40 |
| 12.5 | Successors and Assigns | 41 |
| 12.6 | Service of Documents | 41 |
| 12.7 | Term of Injunctions or Stays | 42 |
| 12.8 | Entire Agreement | 42 |
| 12.9 | Plan Supplement Exhibits | 42 |
| 12.10 | Non-Severability | 42 |

K&E 18394274

# INTRODUCTION

Local Insight Media Holdings, Inc. and the other Debtors in the above-captioned chapter 11 cases jointly propose the following Plan. Although proposed jointly for administrative purposes, the Plan constitutes a separate Plan for each Debtor for the resolution of outstanding claims against and interests in each Debtor pursuant to the Bankruptcy Code. Each Debtor is a proponent of the Plan within the meaning of section 1129 of the Bankruptcy Code. The classifications of claims and interests set forth in ARTICLE III herein shall be deemed to apply separately with respect to each Plan proposed by each Debtor, as applicable. The Plan does not contemplate the substantive consolidation of any of the Debtors.

## ARTICLE I

## DEFINED TERMS, RULES OF INTERPRETATION,
## COMPUTATION OF TIME, GOVERNING LAW, AND OTHER REFERENCES

## 1.1   Defined Terms

1.      *"Adequate Protection Claims"* means the "507(b) Claims" under, and as defined in, the Final DIP Order.

2.      *"Administrative Claim"* means a Claim (other than an Adequate Protection Claim and a DIP Facility Claim) that has been timely filed before the Administrative Claim Bar Date for costs and expenses of administration pursuant to sections 503(b), 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses incurred after the Petition Date until and including the Effective Date of preserving the Estates and operating the businesses of the Debtors; (b) Allowed Professional Claims; and (c) all fees and charges assessed against the Estates pursuant to section 1930 of chapter 123 of title 28 of the United States Code.

3.      *"Administrative Claim Bar Date"* means the deadline for filing requests for payment of Administrative Claims, which shall be 30 days after the Effective Date, unless otherwise ordered by the Bankruptcy Court, except with respect to Professional Claims, which shall be subject to the provisions of Section 2.2.

4.      *"Affiliate"* has the meaning set forth in section 101(2) of the Bankruptcy Code.

5.      *"Allowed"* means, except as otherwise provided herein: (a) a Claim or Interest that is (i) listed in the Schedules as of the Effective Date as not disputed, not contingent, and not unliquidated, or (ii) evidenced by a valid Proof of Claim, filed by the applicable Bar Date, and as to which the Debtors or other parties in interest have not filed an objection to the allowance thereof within the applicable period of time fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or (b) a Claim that is Allowed pursuant to the Plan or any stipulation approved by, or Final Order of, the Bankruptcy Court.

6.      *"Assumption Schedule"* means the schedule of Executory Contracts and Unexpired Leases in the Plan Supplement, as may be amended from time to time, setting forth certain Executory Contracts and Unexpired Leases for assumption and/or assumption and assignment as of the Effective Date pursuant to section 365 of the Bankruptcy Code and related Cure amounts. Any Executory Contract or Unexpired Lease of Local Insight Media Holdings, Inc. that is to be assumed and assigned to Reorganized Regatta, or any newly formed subsidiary thereof, or The Berry Company LLC shall be assumed and assigned without any compensation (other than the agreed Cure amount) payable to the non-Debtor counterparty.

7.      *"Avoidance Actions"* means any and all avoidance, recovery, subordination, or other claims, actions, or remedies that may be brought by or on behalf of the Debtors or their Estates or other authorized parties in interest under the Bankruptcy Code or applicable non-bankruptcy law, including actions or remedies under sections 502, 510, 542, 544, 545, and 547 through and including 553 of the Bankruptcy Code.

8. "*Bankruptcy Code*" means Title 11 of the United States Code, 11 U.S.C. §§ 101-1532, as may be amended from time to time.

9. "*Bankruptcy Court*" means the United States Bankruptcy Court for the District of Delaware or such other court having jurisdiction over the Chapter 11 Cases.

10. "*Bankruptcy Rules*" means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code, 28 U.S.C. § 2075, as applicable to the Chapter 11 Cases and the general, local, and chambers rules of the Bankruptcy Court.

11. "*Bar Date*" means, as applicable, (a) April 4, 2011 for all Persons or Entities other than Governmental Units, (b) with respect to Governmental Units, the Government Bar Date, or (c) such other date specifically fixed by an order of the Bankruptcy Court for filing Proofs of Claim.

12. "*Berry Companies Interests*" mean any Interests in either The Berry Company LLC or Local Insight Listing Management, Inc.

13. "*Business Day*" means any day, other than a Saturday, Sunday, or a legal holiday, as defined in Bankruptcy Rule 9006(a).

14. "*Caribe Chapter 11 Cases*" means the chapter 11 cases commenced by the Caribe Debtors with case numbers 11-11387 and 11-11388, which are jointly administered, styled *In re Caribe Media, Inc., et al.*, Case No. 11-11387 (KG), and currently pending before the Bankruptcy Court.

15. "*Caribe Debtors*" means, collectively, Caribe Media, Inc. and CII Acquisition Holding Inc.

16. "*Caribe Senior Secured Credit Facility Administrative Agent*" means Cantor Fitzgerald Securities, or its successor, in its capacity as administrative agent under the Caribe Senior Secured Credit Facility Agreement.

17. "*Caribe Senior Secured Credit Facility Agreement*" means the Credit Agreement, dated March 31, 2006, by and among Caribe Media, Inc. (formerly known as CII Acquisition Corp.) and CII Acquisition Holding Inc., as borrowers, Lehman Brothers Inc. and Banc of America Securities LLC, as joint lead arrangers and joint bookrunners, Bank of America, N.A., as syndication agent, Wachovia Bank, National Association, as documentation agent, Cantor Fitzgerald Securities, as administrative agent, and the several lenders party thereto.

18. "*Cash*" means the legal tender of the United States of America or the equivalent thereof, including bank deposits and checks.

19. "*Causes of Action*" means any and all claims, actions, causes of action, choses in action, suits, debts, damages, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, judgments, remedies, rights of set-off, third-party claims, subrogation claims, contribution claims, reimbursement claims, indemnity claims, counterclaims, and crossclaims (including all claims and any avoidance, recovery, subordination, or other actions against Insiders and/or any other Entities under the Bankruptcy Code, including Avoidance Actions) of any of the Debtors, the debtors in possession, and/or the Estates (including those actions set forth in the Plan Supplement), whether known or unknown, liquidated or unliquidated, fixed or contingent, matured or unmatured, disputed or undisputed, that are or may be pending on the Effective Date or commenced by the Reorganized Debtors after the Effective Date against any Entity, based in law or equity, including under the Bankruptcy Code, whether direct, indirect, derivative, or otherwise and whether asserted or unasserted as of the date of entry of the Confirmation Order.

20. "*Certificate*" means any instrument evidencing a Claim or an Interest.

21. "*Chapter 11 Cases*" means the chapter 11 cases commenced by the Debtors with case numbers 10-13677 through 10-13753, which are jointly administered, styled *In re Local Insight Media Holdings, Inc., et al.*, Case No. 10-13677 (KG), and currently pending before the Bankruptcy Court.

22. *"Claim"* has the meaning set forth in section 101(5) of the Bankruptcy Code.

23. *"Claims and Defenses"* has the meaning set forth in the Final DIP Order.

24. *"Claims and Solicitation Agent"* means Kurtzman Carson Consultants LLC, located at 2335 Alaska Avenue, El Segundo, California 90245, (866) 967-0260, retained as the Debtors' claims and solicitation agent by order of the Bankruptcy Court dated November 19, 2010, entitled *Order Authorizing the Retention and Employment of Kurtzman Carson Consultants LLC as Notice and Claims Agent for the Debtors and Debtors in Possession Nunc Pro Tunc to the Petition Date* [Docket No. 55].

25. *"Claims Register"* means the official register of Claims maintained by the Claims and Solicitation Agent.

26. *"Class"* means a category of holders of Claims or Interests pursuant to section 1122(a) of the Bankruptcy Code.

27. *"Confirmation"* means the entry of the Confirmation Order on the docket of the Chapter 11 Cases.

28. *"Confirmation Date"* means the date upon which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Cases, within the meaning of Bankruptcy Rules 5003 and 9021.

29. *"Confirmation Hearing"* means the hearing(s) before the Bankruptcy Court pursuant to section 1128 of the Bankruptcy Code at which the Debtors seek entry of the Confirmation Order.

30. *"Confirmation Order"* means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

31. *"Consummation"* means the occurrence of the Effective Date.

32. *"Creditor"* has the meaning set forth in section 101(10) of the Bankruptcy Code.

33. *"Creditors' Committee"* means the Official Committee of Unsecured Creditors appointed pursuant to section 1102 of the Bankruptcy Code by the United States Trustee for the District of Delaware on December 1, 2010, as it may be reconstituted from time to time.

34. *"Cure"* means a Claim (unless waived or modified by the applicable counterparty) based upon a Debtor's defaults under an Executory Contract or Unexpired Lease assumed by such Debtor pursuant to section 365 of the Bankruptcy Code.

35. *"Cure Bar Date"* means the deadline for filing objections to the proposed Cure amounts set forth in the Assumption Schedule, which shall be seven days after the filing of the Assumption Schedule.

36. *"Cure Notes"* means the unsecured promissory notes in an aggregate principal amount of $3.5 million to be issued by The Berry Company LLC to HYP Media Finance LLC and CBD Media Finance LLC on the Effective Date, substantially in the form contained in the Plan Supplement.

37. *"Debtors"* means each of the following Entities, collectively: Local Insight Media Holdings, Inc.; Local Insight Media Holdings II, Inc.; Local Insight Media Holdings III, Inc.; LIM Finance Holdings, Inc.; LIM Finance, Inc.; LIM Finance II, Inc.; Local Insight Regatta Holdings, Inc.; The Berry Company LLC; Local Insight Listing Management, Inc.; Regatta Investor Holdings, Inc.; Regatta Investor Holdings II, Inc.; Regatta Investor LLC; Regatta Split-off I LLC; Regatta Split-off II LLC; Regatta Split-off III LLC; Regatta Holding I, L.P.; Regatta Holding II, L.P.; and Regatta Holding III, L.P.

38. *"DIP Facility"* means the debtor in possession financing facility provided pursuant to the DIP Facility Credit Agreement, which was approved by the Final DIP Order.

39.    "*DIP Facility Administrative Agent*" means JPMorgan Chase Bank, N.A., or its successor, in its capacity as administrative agent and collateral agent under the DIP Facility Credit Agreement.

40.    "*DIP Facility Claims*" means any Claim arising under, derived from, or based upon the DIP Facility.

41.    "*DIP Facility Credit Agreement*" means the Credit and Guarantee Agreement, dated as of November 19, 2010, for debtor in possession financing, by and among Regatta Holdings, as borrower, Regatta Investor LLC and each of its direct and indirect subsidiaries other than the borrower, as guarantors, the DIP Facility Administrative Agent, and the DIP Facility Lenders, as amended, supplemented, or otherwise modified from time to time.

42.    "*DIP Facility Lenders*" means the lenders from time to time party to the DIP Facility Credit Agreement.

43.    "*Disclosure Statement*" means the disclosure statement for the Plan, supplemented, or modified from time to time, including all exhibits and schedules thereto, as approved by Final Order of the Bankruptcy Court pursuant to section 1125 of the Bankruptcy Code.

44.    "*Disputed Claim*" means any Claim that is not Allowed.

45.    "*Distribution Agent*" means the Reorganized Debtors or the Entity or Entities selected by the Reorganized Debtors, as applicable, to make or to facilitate distributions pursuant to the Plan.

46.    "*Distribution Date*" means, except as otherwise set forth herein, the date or dates determined by the Debtors or the Reorganized Debtors, in their sole discretion, on or after the Effective Date, upon which the Distribution Agent shall make distributions to holders of Allowed Claims entitled to receive distributions under the Plan.

47.    "*Distribution Record Date*" means the date that is three Business Days after entry of the Confirmation Order.

48.    "*Effective Date*" means the date that is the first Business Day after the Confirmation Date on which all conditions precedent to the Effective Date have been satisfied or waived.

49.    "*Entity*" has the meaning set forth in section 101(15) of the Bankruptcy Code.

50.    "*Equity Security*" has the meaning set forth in section 101(16) of the Bankruptcy Code.

51.    "*Estate*" means the bankruptcy estate of any Debtor created pursuant to sections 301 and 541 of the Bankruptcy Code upon the commencement of the Chapter 11 Cases.

52.    "*Exculpated Claim*" means any Claim related to any act or omission in connection with, relating to, or arising out of the Debtors' in or out of court restructuring efforts, the Chapter 11 Cases, formulation, preparation, dissemination, negotiation, or filing of the Disclosure Statement or Plan or any contract, instrument, release, or other agreement or document created or entered into in connection with or pursuant to the Disclosure Statement or Plan, the preparation for and filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, or the distribution of property under the Plan.

53.    "*Exculpated Party*" means each of the following in its capacity as such:  (a) the Debtors; (b) the Reorganized Debtors; (c) the Local Insight Companies; (d) the DIP Facility Lenders and the DIP Facility Administrative Agent; (e) the Steering Committee, the Regatta Credit Facility Lenders, and the Regatta Credit Facility Administrative Agent; (f) the LIM Finance Term Loan Facility Lenders and the LIM Finance Term Loan Facility Administrative Agent; (g) the LIM Finance II Term Loan Facility Lenders; (h) the LIM Finance II Senior Subordinated Noteholders; (i) holders of Super Holdco Interests; (j) the Creditors' Committee and the members

thereof; (k) the WCAS Releasees; and (l) with respect to each of the foregoing Entities in clauses (a) through (j), such Entity's successors and assigns and current and former affiliates, subsidiaries, officers, directors, principals, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, and other Professionals.

54. *"Executory Contract"* means a contract or lease to which one or more of the Debtors is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

55. *"Final Decree"* means the decree contemplated under Bankruptcy Rule 3022.

56. *"Final DIP Order"* means the order entered by the Bankruptcy Court on December 29, 2010 [Docket No. 228].

57. *"Final KEIP Order"* means the order entered by the Bankruptcy Court on March 29, 2011 [Docket No. 462].

58. *"Final Order"* means, as applicable, an order or judgment of the Bankruptcy Court or other court of competent jurisdiction with respect to the relevant subject matter, which has not been reversed, stayed, modified, or amended, and as to which the time to appeal or seek certiorari has expired and no appeal or petition for certiorari has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been or may be filed has been resolved by the highest court to which the order or judgment could be appealed or from which certiorari could be sought or the new trial, reargument, or rehearing shall have been denied, resulted in no modification of such order, or has otherwise been dismissed with prejudice.

59. *"First Lien Exit Facility"* means the $[25] million senior secured first lien term loan facility to be entered into by Reorganized Regatta and its subsidiaries, if any, on the Effective Date, substantially in the form contained in the Plan Supplement, which shall be substantially consistent with the term sheet attached hereto as **Exhibit A**.

60. *"General Unsecured Claim"* means any Claim other than Administrative Claims, Adequate Protection Claims, Professional Claims, DIP Facility Claims, Secured Tax Claims, Other Secured Claims, Priority Tax Claims, Other Priority Claims, Regatta Credit Facility Claims, Regatta Subordinated Notes Claims, Regatta Convenience Class Claims, LIM Finance Term Loan Facility Claims, LIM Finance II Term Loan Facility Claims, LIM Finance II Senior Subordinated Note Claims, and Section 510(b) Claims.

61. *"Government Bar Date"* means May 16, 2011.

62. *"Governmental Unit"* has the meaning set forth in section 101(27) of the Bankruptcy Code.

63. *"Impaired"* means, with respect to any Class of Claims or Interests, a Claim or Interest that is not Unimpaired.

64. *"Insider"* has the meaning set forth in section 101(31) of the Bankruptcy Code.

65. *"Intercompany Contract"* means a contract between or among two or more Debtors or a contract between or among one or more Affiliates and one or more Debtors.

66. *"Interest"* means any Equity Security of a Debtor existing immediately prior to the Effective Date.

67. *"Interim Compensation Order"* means the *Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Professionals and Official Committee Members*, entered by the Bankruptcy Court on December 17, 2010 [Docket No. 159].

68. *"KEIP"* means the key employee incentive plan approved by the Final KEIP Order.

69.     *"Lien"* has the meaning set forth in section 101(37) of the Bankruptcy Code.

70.     *"LIM Finance General Unsecured Claim"* means any General Unsecured Claim against either LIM Finance, Inc. or LIM Finance Holdings, Inc.

71.     *"LIM Finance Interests"* mean any Interests in any of LIM Finance Holdings, Inc., LIM Finance, Inc., and LIM Finance II, Inc.

72.     *"LIM Finance Term Loan Facility"* means the term loan credit facility pursuant to the Credit Agreement dated October 14, 2009, by and among LIM Finance, Inc., as borrower, Natixis, New York Branch, as administrative agent, and the several lenders party thereto.

73.     *"LIM Finance Term Loan Facility Administrative Agent"* means Natixis, New York Branch, or its successor, in its capacity as administrative agent under the LIM Finance Term Loan Facility.

74.     *"LIM Finance Term Loan Facility Claim"* means any Claim derived from or based upon the LIM Finance Term Loan Facility.

75.     *"LIM Finance Term Loan Facility Lenders"* means the lenders under the LIM Finance Term Loan Facility.

76.     *"LIM Finance II General Unsecured Claim"* means any General Unsecured Claim against LIM Finance II, Inc.

77.     *"LIM Finance II Note Distribution Property"* means Equity Securities in each of Local Insight Media LP and LIM, GP LLC in an amount equal to: (a) the proportion that the LIM Finance II Senior Subordinated Note Claims bears to the aggregate of Allowed LIM Finance II Term Loan Facility Claims, Allowed LIM Finance II Senior Subordinated Note Claims, and Allowed LIM Finance II General Unsecured Claims, multiplied by (b) the total number of Equity Securities in each of Local Insight Media LP and LIM, GP LLC.

78.     *"LIM Finance II Senior Subordinated Note"* means the 10.0% senior subordinated note due 2014, issued by LIM Finance II, Inc. to WCAS Capital Partners IV, L.P.

79.     *"LIM Finance II Senior Subordinated Note Claim"* means any Claim derived from or based upon the LIM Finance II Senior Subordinated Note.

80.     *"LIM Finance II Senior Subordinated Noteholders"* means holders of the LIM Finance II Senior Subordinated Note.

81.     *"LIM Finance II Term Loan Facility"* means the term loan credit facility pursuant to the LIM Finance II Term Loan Facility Agreement.

82.     *"LIM Finance II Term Loan Facility Agreement"* means the Credit Agreement dated June 20, 2008, as amended on October 14, 2009, by and among LIM Finance II, Inc., as borrower, and Lehman Commercial Paper Inc.

83.     *"LIM Finance II Term Loan Facility Claim"* means any Claim derived from or based upon the LIM Finance II Term Loan Facility.

84.     *"LIM Finance II Term Loan Facility Lenders"* means the lenders under the LIM Finance II Term Loan Facility.

85.     *"LIMD Restructuring"* means the transactions that may be undertaken to effectuate the transfer of the Equity Securities of Local Insight Media Dominicana SRL from Berry Dominicana Holdings III LLC to The

Berry Company LLC, or the transfer of the assets of Local Insight Media Dominicana SRL to The Berry Company LLC, on or before the Effective Date.

86. *"Local Insight Companies"* means, collectively: the Caribe Debtors; Local Insight Media Holdings LP; Berry Dominicana Holdings LLC; Berry Dominicana Holdings II LLC; Berry Dominicana Holdings III LLC; Local Insight Media Dominicana SRL; Local Insight Media, GP, LLC; Local Insight Media, L.P.; Local Insight Media, Inc.; the WBS Companies; Caribe Dominicana I, LLC; Caribe Dominicana II, LLC; Caribe Dominicana III, LLC; Caribe Dominicana IV, LLC; Caribe Dominicana V, LLC; Caribe Dominicana VI, LLC; Caribe Servicios de Información Dominicana, S.A.; Axesa Servicios de Información, Inc.; and Axesa Servicios, Inc., S. en. C.

87. *"Management Equity Incentive Program"* means the incentive program to be adopted by the New Regatta Board, and implemented on or after the Effective Date, reserving a percentage of Reorganized Regatta Common Stock as set forth herein for distribution in connection with the grant of compensatory equity incentive awards to management and directors.

88. *"New Regatta Board"* means the initial board of directors of Reorganized Regatta.

89. *"Non-Debtor Subsidiaries"* means, collectively, the WBS Companies, Local Insight Media, Inc., Berry Dominicana Holdings LLC, Berry Dominicana Holdings II LLC, Berry Dominicana Holdings III LLC, and Local Insight Media Dominicana SRL.

90. *"Non-Released Parties"* means those Entities identified in the Plan Supplement as Non-Released Parties. The Debtors currently expect that the Non-Released Parties will include Scott A. Pomeroy, a former director and executive of the Debtors, and the following additional former executives of the Debtors: Richard L. Shaum, Jr., Linda A. Martin, and Kathleen Geiger-Schwab, but the Debtors reserve the right to determine the list of Non-Released Parties in their sole discretion; provided, however, in no event shall any of the WCAS Releasees be identified as Non-Released Parties except as expressly identified in this sentence.

91. *"Other Priority Claim"* means any Claim other than an Administrative Claim or a Priority Tax Claim entitled to priority in right of payment under section 507(a) of the Bankruptcy Code.

92. *"Other Secured Claim"* means any Secured Claim other than the following: (a) a DIP Facility Claim; (b) Regatta Credit Facility Claim; or (c) a Secured Tax Claim.

93. *"Pari Passu Allocation"* means: (a) for purposes of determining distributions under Section 3.2 to holders of Allowed Regatta Credit Facility Claims and holders of Allowed Regatta General Unsecured Claims, the proportion that an Allowed Claim bears to the aggregate of Allowed Regatta Credit Facility Claims, Allowed Regatta Subordinated Notes Claims, and Allowed Regatta General Unsecured Claims and (b) for purposes of determining distributions under Section 3.2 to holders of Allowed LIM Finance II Term Loan Facility Claims and holders of Allowed LIM Finance II General Unsecured Claims, the proportion that an Allowed Claim bears to the aggregate of Allowed LIM Finance II Term Loan Facility Claims, Allowed LIM Finance II Senior Subordinated Note Claims, and Allowed LIM Finance II General Unsecured Claims.

94. *"Person"* has the meaning set forth in section 101(41) of the Bankruptcy Code.

95. *"Petition Date"* means November 17, 2010.

96. *"Plan"* means the Debtors' joint chapter 11 plan of reorganization as it may be altered, amended, modified, or supplemented from time to time, including the Plan Supplement and all exhibits, supplements, appendices, and schedules.

97. *"Plan Supplement"* means the compilation of documents and forms of documents, agreements, schedules, and exhibits to the Plan to be filed by the Debtors no later than ten days prior to the Confirmation Hearing or such later date as may be approved by the Bankruptcy Court on notice to parties in interest and additional documents filed with the Bankruptcy Court prior to the Effective Date as amendments to the Plan Supplement,

including the Assumption Schedule, the First Lien Exit Facility, the Shareholders Agreement, the Registration Rights Agreement, the Cure Notes, and the amended constituent corporate and limited liability company documents for the Debtors; <u>provided</u>, all such documents, agreements, schedules, and exhibits shall be in form and substance reasonably satisfactory to the Required DIP Facility Lenders.

98. "*Priority Claim*" means, collectively, Priority Tax Claims and Other Priority Claims.

99. "*Priority Tax Claim*" means any Claim of a Governmental Unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

100. "*Pro Rata Share*" means the proportion that an Allowed Claim in a particular Class bears to the aggregate amount of Allowed Claims in that Class.

101. "*Professional*" means an Entity: (a) employed in the Chapter 11 Cases pursuant to a Final Order in accordance with sections 327 and 1103 of the Bankruptcy Code and to be compensated for services rendered prior to or on the Effective Date pursuant to sections 327, 328, 329, 330, and 331 of the Bankruptcy Code or (b) for which compensation and reimbursement has been Allowed by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.

102. "*Professional Claims*" means a Claim by a Professional seeking an award by the Bankruptcy Court of compensation for services rendered or reimbursement of expenses incurred through and including the Confirmation Date under sections 330, 331, 503(b)(2), 503(b)(3), 503(b)(4), or 503(b)(5) of the Bankruptcy Code.

103. "*Professional Fee Escrow Account*" means an interest-bearing account in an amount equal to the Professional Fee Reserve Amount and funded by the Debtors on the Effective Date.

104. "*Professional Fee Reserve Amount*" means that amount estimated in accordance with <u>Section 2.2(c)</u>.

105. "*Proof of Claim*" means a proof of Claim filed against any of the Debtors in the Chapter 11 Cases.

106. "*Regatta Convenience Class Claim*" means any (a) Regatta General Unsecured Claim that is $2,000 or less or (b) Regatta General Unsecured Claim in excess of $2,000 that the holder thereof elects pursuant to such holder's ballot to have reduced to $2,000 and be treated as set forth in <u>Section 3.2(g)(2)</u>; <u>provided</u>, <u>however</u>, a Regatta Convenience Class Claim does not include any Claim on account of publicly or privately held Securities, including a Section 510(b) Claim.

107. "*Regatta Credit Facility*" means the prepetition term loan and revolving credit facility provided pursuant to the Regatta Credit Facility Agreement.

108. "*Regatta Credit Facility Administrative Agent*" means JPMorgan Chase Bank, N.A., or its successor, in its capacity as administrative agent and collateral agent under the Regatta Credit Facility Agreement.

109. "*Regatta Credit Facility Agreement*" means the Credit Agreement, dated as of April 23, 2008, by and among Regatta Holdings, as borrower, certain subsidiary guarantors, the Regatta Credit Facility Administrative Agent and the Regatta Credit Facility Lenders.

110. "*Regatta Credit Facility Claim*" means any Claim arising under, derived from, or based upon the Regatta Credit Facility and shall include the Adequate Protection Claims.

111. "*Regatta Credit Facility Lenders*" means the lenders from time to time party to the Regatta Credit Facility Agreement.

112. "*Regatta General Unsecured Claim*" means any General Unsecured Claim against Local Insight Regatta Holdings, Inc., The Berry Company LLC, or Local Insight Listing Management, Inc.

113. *"Regatta Holdings"* means Local Insight Regatta Holdings, Inc.

114. *"Regatta Investor and Regatta Holdings Interests"* means any Interests in any of Regatta Investor Holdings, Inc., Regatta Investor Holdings II, Inc., Regatta Investor LLC, Regatta Split-off I LLC, Regatta Split-off II LLC, Regatta Split-off III LLC, Regatta Holding I, L.P., Regatta Holding II, L.P., Regatta Holding III, L.P., and Regatta Holdings.

115. *"Regatta Investor General Unsecured Claim"* means any General Unsecured Claim against Regatta Investor Holdings, Inc., Regatta Investor Holdings II, Inc., Regatta Investor LLC, Regatta Split-off I LLC, Regatta Split-off II LLC, Regatta Split-off III LLC, Regatta Holding I, L.P., Regatta Holding II, L.P., or Regatta Holding III, L.P.

116. *"Regatta Notes Distribution Property"* means a number of shares of Reorganized Regatta Common Stock equal to: (a) the proportion that the Allowed Regatta Subordinated Notes Claims bears to the aggregate of Allowed Regatta Credit Facility Claims, Allowed Regatta Subordinated Notes Claims, and Allowed Regatta General Unsecured Claims, multiplied by (b) the total number of shares of Reorganized Regatta Common Stock.

117. *"Regatta Subordinated Noteholders"* means Holders of Regatta Subordinated Notes.

118. *"Regatta Subordinated Notes"* means the 11.0% senior subordinated notes due 2017, issued by Regatta Holdings pursuant to the Regatta Subordinated Notes Indenture.

119. *"Regatta Subordinated Notes Claim"* means any Claim arising under, derived from, or based upon the Regatta Subordinated Notes.

120. *"Regatta Subordinated Notes Indenture"* means the subordinated notes indenture dated as of November 30, 2007, by and among Windstream Regatta Holdings, Inc. (now known as Regatta Holdings), as issuer, certain subsidiary guarantors, and U.S. Bank National Association, as trustee.

121. *"Registration Rights Agreement"* means a registration rights agreement substantially in the form set forth in the Plan Supplement obligating Reorganized Regatta to register for resale certain shares of Reorganized Regatta Common Stock under the Securities Act in accordance with the terms set forth in such agreement.

122. *"Rejection Schedule"* means the schedule of Executory Contracts and Unexpired Leases in the Plan Supplement, as may be amended from time to time, setting forth certain Executory Contracts and Unexpired Leases for rejection as of the Effective Date pursuant to section 365 of the Bankruptcy Code.

123. *"Released Party"* means each of the following in its capacity as such: (a) the Debtors; (b) the Local Insight Companies; (c) the DIP Facility Lenders and the DIP Facility Administrative Agent; (d) the Steering Committee, the Regatta Credit Facility Lenders, and the Regatta Credit Facility Administrative Agent; (e) the LIM Finance Term Loan Facility Lenders and the LIM Finance Term Loan Facility Administrative Agent; (f) the LIM Finance II Term Loan Facility Lenders; (g) the LIM Finance II Senior Subordinated Noteholders; (h) holders of Super Holdco Interests; (i) the Creditors' Committee and the members thereof; (j) the WCAS Releasees; and (k) with respect to each of the foregoing Entities in clauses (a) through (i), such Entity's successors and assigns and current and former affiliates, subsidiaries, officers, directors, principals, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, and other Professionals.

124. *"Releasing Party"* means each of the following in its capacity as such: (a) the Local Insight Companies; (b) the DIP Facility Lenders and the DIP Facility Administrative Agent; (c) the Regatta Credit Facility Lenders and the Regatta Credit Facility Administrative Agent; (d) the LIM Finance Term Loan Facility Lenders and the LIM Finance Term Loan Facility Administrative Agent; (e) the LIM Finance II Term Loan Facility Lenders; (f) the LIM Finance II Senior Subordinated Noteholders; (g) the WCAS Releasees and holders of Super Holdco Interests; (h) the Creditors' Committee and the members thereof; and (i) each holder of a Claim or Interest other

than a holder of a Claim or Interest that has voted to reject the Plan or is a member of a Class that is deemed to reject the Plan.

125. *"Reorganized Debtors"* means the Debtors, in each case, or any successor thereto, by merger, consolidation, or otherwise, on or after the Effective Date.

126. *"Reorganized Regatta"* means Regatta Holdings or any successor thereto, by merger, consolidation, or otherwise, on or after the Effective Date.

127. *"Reorganized Regatta Bylaws"* means the bylaws of Reorganized Regatta substantially in the form contained in the Plan Supplement.

128. *"Reorganized Regatta Charter"* means the amended and restated certificate of incorporation of Reorganized Regatta, substantially in the form contained in the Plan Supplement.

129. *"Reorganized Regatta Common Stock"* means shares of common stock of Reorganized Regatta, par value $0.01 per share.

130. *"Required DIP Facility Lenders"* means the "Required Lenders" under, and as defined in, the DIP Facility Credit Agreement.

131. *"Restructuring Transactions"* means the transactions described in <u>Section 4.15</u>.

132. *"Schedules"* means the schedules of assets and liabilities, schedules of Executory Contracts and Unexpired Leases, and statements of financial affairs filed by the Debtors pursuant to section 521 of the Bankruptcy Code and the Bankruptcy Rules.

133. *"Section 510(b) Claim"* means any Claim against the Debtors arising from rescission of a purchase or sale of a security of the Debtors or an Affiliate of the Debtors, for damages arising from the purchase or sale of such a security, or for reimbursement or contribution allowed under section 502 of the Bankruptcy Code on account of such a Claim.

134. *"Secured Claim"* means a Claim (a) secured by a Lien on collateral to the extent of the value of such collateral, as determined in accordance with section 506(a) of the Bankruptcy Code, or (b) subject to a valid right of setoff pursuant to section 553 of the Bankruptcy Code

135. *"Secured Tax Claim"* means any Secured Claim that, absent its secured status, would be entitled to priority in right of payment under section 507(a)(8) of the Bankruptcy Code (determined irrespective of time limitations), including any related Secured Claim for penalties.

136. *"Securities Act"* means the Securities Act of 1933, 15 U.S.C. §§ 77a-77aa, or any similar federal, state, or local law.

137. *"Security"* has the meaning set forth in section 2(a)(1) of the Securities Act.

138. *"Servicer"* means an indenture trustee, agent, or other authorized representative of holders of Claims or Interests.

139. *"Shareholders Agreement"* means a stockholders' agreement with respect to the Reorganized Regatta Common Stock as set forth in the Plan Supplement.

140. *"Steering Committee"* means the informal steering committee of Regatta Credit Facility Lenders.

141. *"Super Holdco General Unsecured Claim"* means any General Unsecured Claim against Local Insight Media Holdings, Inc., Local Insight Media Holdings II, Inc., or Local Insight Media Holdings III, Inc.

142.    "*Super Holdco Interests*" mean any Interests in any of Local Insight Media Holdings, Inc., Local Insight Media Holdings II, Inc., and Local Insight Media Holdings III, Inc.

143.    "*Transition Agreement*" means the agreement, by and among Caribe Media, Inc., Axesa Servicios de Information, S. en. C., Caribe Servicios de Información Dominicana, S.A., Local Insight Media Dominicana SRL, and certain of the Debtors and Local Insight Companies for the transition of rights and obligations under, and the settlement of Claims arising under or in connection with, the Master Services Agreement, dated as of July 15, 2009, between Axesa Servicios de Información S. en C. and The Berry Company, LLC, the Amended and Restated Management Services Agreement, dated as of January 1, 2009, between Caribe Media, Inc. and Local Insight Media, Inc., the Master Services Agreement, dated as of June 7, 2010, between The Berry Company, LLC and Caribe Servicios de Información Dominicana, S.A., and the Subcontract Agreement, dated as of July 15, 2009, between The Berry Company, LLC and Caribe Servicios de Información Dominicana, S.A., as well as the settlement and/or release of certain other intercompany Claims, substantially in the form filed as a plan supplement in the Caribe Chapter 11 Cases, which shall be reasonably satisfactory to the Required DIP Facility Lenders.

144.    "*Transition Agreement Approval Orders*" means, collectively, a Final Order approving the Transition Agreement entered in each of the Chapter 11 Cases and the Caribe Chapter 11 Cases, which Final Orders shall be reasonably satisfactory to the Required DIP Facility Lenders.

145.    "*Unclaimed Distribution*" means any distribution under the Plan on account of an Allowed Claim to a holder that has not:  (a) accepted a particular distribution or, in the case of distributions made by check, negotiated such check; (b) given notice to the Reorganized Debtors of an intent to accept a particular distribution; (c) responded to the Debtors' or Reorganized Debtors' requests for information necessary to facilitate a particular distribution; or (d) taken any other action necessary to facilitate such distribution.

146.    "*Unexpired Lease*" means a lease of nonresidential real property to which one or more of the Debtors is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

147.    "*Unimpaired*" means a Class of Claims or Interests that is unimpaired within the meaning of section 1124 of the Bankruptcy Code.

148.    "*Voting Deadline*" means the date set forth in the order of the Bankruptcy Court approving the Disclosure Statement as the deadline for, among other things, voting to accept or reject the Plan.

149.    "*WBS Companies*" means, collectively: CBD Investor, Inc.; CBD Media Holdings LLC; ACS Media Holdings LLC; HYP Media Holdings LLC; CBD Holdings Finance, Inc.; CBD Media LLC; ACS Media LLC; HYP Media LLC; CBD Finance, Inc.; Local Insight Media Finance Holdings LLC; Local Insight Media Finance LLC; CBD Media Finance LLC; ACS Media Finance LLC; and HYP Media Finance LLC.

150.    "*WBS Contracts*" means, collectively, the: (a) Agreement for Directory Publishing Services, by and between The Berry Company LLC and ACS Media Finance LLC, dated August 10, 2000, as amended; (b) Agreement for Provision of IYP Services made and entered into effective as of February 22, 2007, by and between ACS Media LLC and The Berry Company LLC, as amended; (c) Directory Services Agreement, by and between The Berry Company LLC and CBD Media Finance LLC, dated September 1, 2002, as amended; and (d) Directory Services Agreement, by and between The Berry Company LLC and HYP Media Finance LLC, dated February 4, 2005, as amended.

151.    "*WBS Contracts Settlement*" means a settlement agreement attached to the WBS Contracts Settlement Order.

152.    "*WBS Contracts Settlement Order*" means a Final Order approving the WBS Contracts Settlement and The Berry Company LLC's assumption of the WBS Contracts, as amended, pursuant to section 365 of the Bankruptcy Code, and the settlement of Claims among the Debtors and Local Insight Media LP, Local Insight Media, Inc., Local Insight Media, GP, LLC, and the WBS Companies pursuant to Bankruptcy Rule 9019, which

11

amended WBS Contracts, settlement, and Final Order shall be reasonably satisfactory to the Required DIP Facility Lenders.

153. "*WBS Note Claim*" means any Claim arising under, derived from, or based upon any senior or subordinated note issued in connection with the whole business securitization to which non-Debtor affiliates ACS Media Finance LLC, CBD Media Finance LLC, and HYP Media Finance LLC are each a party.

154. "*WCAS*" means Welsh, Carson, Anderson & Stowe and: (a) its affiliated management companies; (b) its affiliated investment funds, including WCAS Capital Partners III, L.P., WCAS Capital Partners IV, L.P., Welsh, Carson, Anderson & Stowe VIII, L.P., Welsh, Carson, Anderson & Stowe IX, L.P., Welsh, Carson, Anderson & Stowe X, L.P., and WCAS Management Corporation; and (c) any other Entities or Persons having a direct or indirect Interest in one or more of the Debtors or the Non-Debtor Subsidiaries.

155. "*WCAS Releasees*" means, collectively: (a) WCAS; (b) all current and former officers and directors of the Debtors and the Non-Debtor Subsidiaries; and (c) with respect to each of the foregoing Entities in clauses (a) and (b), such Entity's current and former affiliates, subsidiaries, officers, directors, principals, partners, members, managers, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, and other Professionals, including in each case their respective predecessors, successors, assigns, heirs, executors, and administrators.

## 1.2    Rules of Interpretation

For purposes of the Plan:  (a) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (b) unless otherwise specified, any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions; (c) unless otherwise specified, any reference herein to an existing document, schedule, or exhibit, shall mean such document, schedule, or exhibit, as it may have been or may be amended, modified, or supplemented; (d) unless otherwise specified, all references herein to "Articles" are references to Articles hereof or hereto; (e) the words "herein," "hereof," and "hereto" refer to the Plan in its entirety rather than to any particular portion of the Plan; (f) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (g) unless otherwise specified herein, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; and (h) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to such term in the Bankruptcy Code or the Bankruptcy Rules, as applicable.

## 1.3    Computation of Time

The provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein.

## 1.4    Governing Law

Except to the extent the Bankruptcy Code or Bankruptcy Rules apply, and subject to the provisions of any contract, lease, instrument, release, indenture, or other agreement or document entered into expressly in connection herewith, the rights and obligations arising hereunder shall be governed by, and construed and enforced in accordance with, the laws of the State of New York, without giving effect to the principles of conflict of laws thereof.

## 1.5    Reference to Monetary Figures

All references in the Plan to monetary figures shall refer to currency of the United States of America, unless otherwise expressly provided.

**1.6    Reference to the Debtors or the Reorganized Debtors**

Except as otherwise specifically provided in the Plan to the contrary, references in the Plan to the Debtors or to the Reorganized Debtors shall mean the Debtors and the Reorganized Debtors, as applicable, to the extent the context requires.

# ARTICLE II

## ADMINISTRATIVE AND PRIORITY CLAIMS

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, Professional Claims, DIP Facility Claims, and Priority Tax Claims have not been classified and thus are excluded from the Classes of Claims set forth in ARTICLE III.

**2.1    Administrative Claims**

Unless otherwise agreed to by the holder of an Allowed Administrative Claim and the Debtors or Reorganized Debtors, as applicable, each holder of an Allowed Administrative Claim (other than holders of Professional Claims and Claims for fees and expenses pursuant to section 1930 of chapter 123 of title 28 of the United States Code) will receive in full and final satisfaction of its Administrative Claim an amount of Cash equal to the amount of such Allowed Administrative Claim either: (a) on the Effective Date, or as soon as practicable thereafter; (b) if the Administrative Claim is not Allowed as of the Effective Date, no later than 30 days after the date on which an order Allowing such Administrative Claim becomes a Final Order, or as soon as reasonably practicable thereafter; or (c) if the Allowed Administrative Claim is based on liabilities incurred by the Debtors in the ordinary course of their business after the Petition Date pursuant to the terms and conditions of the particular transaction giving rise to such Allowed Administrative Claims without any further action by the holders of such Allowed Administrative Claims.

**2.2    Professional Claims**

    **(a)    Final Fee Applications.**

All final requests for payment of Professional Claims shall be filed no later than 45 days after the Effective Date. After notice and a hearing in accordance with the procedures established by the Bankruptcy Code and prior Bankruptcy Court orders, the Allowed amounts of such Professional Claims shall be determined by the Bankruptcy Court.

    **(b)    Professional Fee Escrow Account.**

In accordance with Section 2.2(c), on the Effective Date, the Reorganized Debtors shall establish and fund the Professional Fee Escrow Account with Cash equal to the Professional Fee Reserve Amount. The Professional Fee Escrow Account shall be maintained in trust for the Professionals. Such funds shall not be considered property of the Estates of the Reorganized Debtors. The amount of Professional Claims owing to the Professionals shall be paid in Cash to such Professionals by the Reorganized Debtors from the Professional Fee Escrow Account when such Professional Claims are Allowed by a Final Order. When all such amounts owing to Professionals have been paid in full, any remaining amount in the Professional Fee Escrow Account shall revert to Reorganized Regatta.

    **(c)    Professional Fee Reserve Amount.**

Professionals shall estimate their Professional Claims and other fees and expenses incurred in rendering services to the Debtors prior to and as of the Effective Date and shall deliver such estimate to the Debtors no later than five days prior to the Effective Date, provided, however, that such estimate shall not be deemed to limit the amount of the fees and expenses that are the subject of the Professional's final request for payment of Professional Claims filed with the Bankruptcy Court. If a Professional does not provide an estimate, the

Reorganized Debtors may estimate the unpaid and unbilled fees and expenses of such Professional. The total amount estimated pursuant to this Section 2.2(c) shall comprise the Professional Fee Reserve Amount.

      (d)      **Post-Effective Date Fees and Expenses.**

Except as otherwise specifically provided in the Plan, from and after the Effective Date, the Reorganized Debtors shall in the ordinary course of business, and without any further notice to or action, order, or approval of the Bankruptcy Court, pay in Cash the reasonable legal, professional, or other fees and expenses related to implementation and Consummation incurred by the Reorganized Debtors. Upon the Effective Date, any requirement that Professionals comply with sections 327 through 331 and 1103 of the Bankruptcy Code or the Interim Compensation Order in seeking retention or compensation for services rendered after such date shall terminate, and the Reorganized Debtors may employ and pay any Professional in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court.

## 2.3    DIP Facility Claims

On the Effective Date, the DIP Facility shall (a) subject to the express consent of the DIP Facility Lenders, convert into the First Lien Exit Facility or (b) be refinanced in full in Cash by an exit financing facility in form and substance reasonably acceptable to the Debtors and the Steering Committee and on terms no less favorable than the terms set forth on **Exhibit A**. All of the Debtors' contingent or unliquidated obligations under Section 12.5 of the DIP Facility Credit Agreement, to the extent any such obligation has not been paid in full in Cash on the Effective Date, shall survive the Effective Date and shall not be discharged or released pursuant to the Plan or Confirmation Order, notwithstanding any provision hereof or thereof to the contrary.

## 2.4    Priority Tax Claims

Each holder of an Allowed Priority Tax Claim due and payable on or before the Effective Date shall receive from the respective Debtor liable for such Allowed Priority Tax Claim, at the sole option of the Debtors or Reorganized Debtors, as applicable, one of the following treatments on account of such Allowed Priority Tax Claim: (a) Cash in an amount equal to the amount of such Allowed Priority Tax Claim; or (b) Cash in the aggregate amount of such Allowed Priority Tax Claim payable in installment payments over a period not more than five years after the Petition Date pursuant to section 1129(a)(9)(C) of the Bankruptcy Code. To the extent any Allowed Priority Tax Claim is not due and owing on the Effective Date, such Claim shall be paid in full in Cash in accordance with the terms of any agreement between the Debtors and the holder of such Claim, or as may be due and payable under applicable non-bankruptcy law, or in the ordinary course of business.

# ARTICLE III

# CLASSIFICATION, TREATMENT, AND VOTING OF CLAIMS AND INTERESTS

## 3.1    Classification of Claims and Interests

This Plan constitutes a separate Plan proposed by each Debtor. Except for the Claims addressed in ARTICLE II, all Claims and Interests are classified in the Classes set forth below pursuant to section 1122 of the Bankruptcy Code. In accordance with section 1123(a)(1) of the Bankruptcy Code, the Debtors have not classified Administrative Claims, Professional Claims, DIP Facility Claims, and Priority Tax Claims. A Claim or Interest is classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest qualifies within the description of such other Classes. A Claim or Interest is also classified in a particular Class for the purpose of receiving distributions pursuant to the Plan only to the extent that such Claim or Interest is an Allowed Claim or Interest in that Class and has not been paid, released, or otherwise satisfied prior to the Effective Date.

Below is a chart assigning each Class a number for purposes of identifying each separate Class.

| Class | Claim or Interest | Status | Voting Rights |
|---|---|---|---|
| 1 | Secured Tax Claims | Unimpaired | Presumed to Accept |
| 2 | Other Secured Claims | Unimpaired | Presumed to Accept |
| 3 | Other Priority Claims | Unimpaired | Presumed to Accept |
| 4 | Regatta Credit Facility Claims | Impaired | Entitled to Vote |
| 5 | Regatta Subordinated Notes Claims | Impaired | Deemed to Reject |
| 6 | Regatta General Unsecured Claims | Impaired | Entitled to Vote |
| 7 | Regatta Convenience Class Claims | Unimpaired | Presumed to Accept |
| 8 | Regatta Investor General Unsecured Claims | Impaired | Deemed to Reject |
| 9 | Super Holdco General Unsecured Claims | Impaired | Deemed to Reject |
| 10 | LIM Finance II Term Loan Facility Claims | Impaired | Entitled to Vote |
| 11 | LIM Finance II Senior Subordinated Note Claims | Impaired | Deemed to Reject |
| 12 | LIM Finance II General Unsecured Claims | Impaired | Entitled to Vote |
| 13 | LIM Finance Term Loan Facility Claims | Impaired | Deemed to Reject |
| 14 | LIM Finance General Unsecured Claims | Impaired | Deemed to Reject |
| 15 | Regatta Investor and Regatta Holdings Interests | Impaired | Deemed to Reject |
| 16 | Berry Companies Interests | Unimpaired | Presumed to Accept |
| 17 | Super Holdco Interests | Impaired | Deemed to Reject |
| 18 | LIM Finance Interests | Impaired | Deemed to Reject |
| 19 | Section 510(b) Claims | Impaired | Deemed to Reject |

**3.2**   **Treatment of Classes of Claims and Interests**

**(a)**   **Class 1 — Secured Tax Claims**

(1)   *Classification*: Class 1 consists of any Secured Tax Claims against any Debtor.

(2)   *Treatment*: Except to the extent that a holder of an Allowed Class 1 Claim agrees to a less favorable treatment, such holder shall, in full and final satisfaction, settlement, release, and discharge of and in exchange for such holder's Allowed Class 1 Claim, receive from the respective Debtor liable for such Allowed Class 1 Claim, at the sole option of the Debtors or the Reorganized Debtors, as applicable:

A.   Cash on the Effective Date, or as soon as practicable thereafter, in an amount equal to such Allowed Class 1 Claim;

B.   commencing on the Effective Date and continuing over a period not exceeding five years from the Petition Date, equal semi-annual Cash payments in an aggregate amount equal to such Allowed Class 1 Claim, together with interest at the applicable rate under non-bankruptcy law, subject to the sole option of the Debtors or the Reorganized Debtors to prepay the entire amount of such Allowed Claim without premiums or penalties; or

C. regular Cash payments in a manner not less favorable than the most favored nonpriority unsecured Claim provided for by the Plan.

(3) *Voting*: Class 1 is Unimpaired, and holders of Allowed Class 1 Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, holders of Allowed Class 1 Claims are not entitled to vote to accept or reject the Plan.

**(b)** **Class 2 — Other Secured Claims**

(1) *Classification*: Class 2 consists of any Other Secured Claims against any Debtor.

(2) *Treatment*: Except to the extent that a holder of an Allowed Class 2 Claim agrees to a less favorable treatment, such holder shall, in full and final satisfaction, settlement, release, and discharge of and in exchange for such holder's Allowed Class 2 Claim, at the sole option of the Debtors or the Reorganized Debtors, as applicable:

A. have its Allowed Class 2 Claim reinstated and rendered Unimpaired in accordance with section 1124(2) of the Bankruptcy Code, notwithstanding any contractual provision or applicable non-bankruptcy law that entitles the holder of such Allowed Class 2 Claim to demand or receive payment of such Allowed Class 2 Claim prior to the stated maturity of such Allowed Class 2 Claim from and after the occurrence of a default;

B. receive Cash from the respective Debtor liable for such Allowed Class 2 Claim in an amount equal to such Allowed Class 2 Claim, including any interest on such Allowed Class 2 Claim required to be paid pursuant to section 506(b) of the Bankruptcy Code, on the later of the Effective Date, or as soon as practicable thereafter, and the date such Allowed Class 2 Claim becomes an Allowed Class 2 Claim, or as soon as practicable thereafter; or

C. receive the collateral securing its Allowed Class 2 Claim and any interest on such Allowed Class 2 Claim required to be paid pursuant to section 506(b) of the Bankruptcy Code.

(3) *Voting*: Class 2 is Unimpaired, and holders of Allowed Class 2 Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, holders of Allowed Class 2 Claims are not entitled to vote to accept or reject the Plan.

**(c)** **Class 3 — Other Priority Claims**

(1) *Classification*: Class 3 consists of any Other Priority Claims against any Debtor.

(2) *Treatment*: Except to the extent that a holder of an Allowed Class 3 Claim agrees to a less favorable treatment, such holder shall, in full and final satisfaction, settlement, release, and discharge of and in exchange for such holder's Allowed Class 3 Claim, be paid in full in Cash by the respective Debtor liable for such Allowed Class 3 Claim on the later of (A) the Effective Date, or as soon as practicable thereafter, and (B) the date such Class 3 Claim becomes Allowed, or as soon as practicable thereafter.

(3) *Voting*: Class 3 is Unimpaired, and holders of Allowed Class 3 Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, holders of Allowed Class 3 Claims are not entitled to vote to accept or reject the Plan.

(d) **Class 4 — Regatta Credit Facility Claims**

    (1) *Classification*: Class 4 consists of any Regatta Credit Facility Claims.

    (2) *Allowance*: On the Effective Date, Class 4 Claims shall be Allowed in the aggregate amount of $339,277,220.

    (3) *Treatment*: A holder of an Allowed Class 4 Claim shall, in full and final satisfaction, settlement, release, and discharge of and in exchange for such holder's Allowed Class 4 Claim, receive on the Effective Date its *Pari Passu* Allocation of the Reorganized Regatta Common Stock and its Pro Rata Share of the Regatta Notes Distribution Property, subject to dilution from the Management Equity Incentive Program.

    (4) *Voting*: Class 4 is Impaired, and holders of Allowed Class 4 Claims are entitled to vote to accept or reject the Plan.

(e) **Class 5 — Regatta Subordinated Notes Claims**

    (1) *Classification*: Class 5 consists of any Regatta Subordinated Notes Claims.

    (2) *Allowance:* On the Effective Date, Class 5 Claims shall be Allowed in the aggregate amount of $221,177,027.

    (3) *Treatment*: The subordination and turn-over provisions of the Regatta Subordinated Notes Indenture shall be enforced for the benefit of Class 4, meaning that any distribution that would have been made to holders of Allowed Class 5 Claims under the Plan in the absence of such subordination and turn-over provisions will be made instead to holders of Allowed Class 4 Claims. Therefore, holders of Class 5 Claims shall not be entitled to and shall not receive and retain any distribution on account of such Claims.

    (4) *Voting*: Class 5 is Impaired, and holders of Allowed Class 5 Claims are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, holders of Allowed Class 5 Claim are not entitled to vote to accept or reject the Plan.

(f) **Class 6 — Regatta General Unsecured Claims**

    (1) *Classification*: Class 6 consists of any Regatta General Unsecured Claims, other than a Regatta Convenience Class Claim.

    (2) *Treatment*: Except to the extent that a holder of an Allowed Class 6 Claim agrees to a less favorable treatment, such holder shall, in full and final satisfaction, release, and discharge of and in exchange for such holder's Allowed Class 6 Claim, receive on the Effective Date, or as soon as practicable thereafter, its *Pari Passu* Allocation of the Reorganized Regatta Common Stock, subject to dilution from the Management Equity Incentive Program.

    (3) *Voting*: Class 6 is Impaired, and holders of Allowed Class 6 Claims are entitled to vote to accept or reject the Plan.

(g) **Class 7 — Regatta Convenience Class Claims**

    (1) *Classification*: Class 7 consists of any Regatta Convenience Class Claims.

    (2) *Treatment*: Except to the extent that a holder of an Allowed Class 7 Claim agrees to a less favorable treatment or has been paid prior to the Effective Date, such holder shall, in

full and final satisfaction, settlement, release, and discharge of and in exchange for such holder's Allowed Class 7 Claim, be paid on the Effective Date, or as soon as practicable thereafter, in full in Cash.

    (3)    *Voting*: Class 7 is Unimpaired, and holders of Allowed Class 7 Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, holders of Allowed Class 7 Claims are not entitled to vote to accept or reject the Plan.

**(h)    Class 8 — Regatta Investor General Unsecured Claims**

    (1)    *Classification*: Class 8 consists of any Regatta Investor General Unsecured Claims.

    (2)    *Treatment*: Holders of Allowed Class 8 Claims shall not receive any distribution on account of such Claims. All Class 8 Claims shall be discharged on the Effective Date.

    (3)    *Voting*: Class 8 is Impaired, and holders of Allowed Class 8 Claims are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, holders of Allowed Class 8 Claims are not entitled to vote to accept or reject the Plan.

**(i)    Class 9 — Super Holdco General Unsecured Claims**

    (1)    *Classification*: Class 9 consists of any Super Holdco General Unsecured Claims.

    (2)    *Treatment*: Holders of Allowed Class 9 Claims shall not receive any distribution on account of such Claims. All Class 9 Claims shall be discharged on the Effective Date.

    (3)    *Voting*: Class 9 is Impaired, and holders of Allowed Class 9 Claims are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, holders of Allowed Class 9 Claims are not entitled to vote to accept or reject the Plan.

**(j)    Class 10 — LIM Finance II Term Loan Facility Claims**

    (1)    *Classification*: Class 10 consists of any LIM Finance II Term Loan Facility Claims.

    (2)    *Allowance:* On the Effective Date, Class 10 Claims shall be Allowed in the aggregate amount of $119,844,487.

    (3)    *Treatment*: Except to the extent that a holder of an Allowed Class 10 Claim agrees to a less favorable treatment, such holder shall, in full and final satisfaction, settlement, release, and discharge of and in exchange for such holder's Allowed Class 10 Claim, receive on the Effective Date, or as soon as practicable thereafter, its *Pari Passu* Allocation of the Equity Securities in each of Local Insight Media LP and LIM, GP LLC and its Pro Rata Share of the LIM Finance II Note Distribution Property.

    (4)    *Voting*: Class 10 is Impaired, and holders of Allowed Class 10 Claims are entitled to vote to accept or reject the Plan.

**(k)    Class 11 — LIM Finance II Senior Subordinated Note Claims**

    (1)    *Classification*: Class 11 consists of any LIM Finance II Senior Subordinated Note Claims.

    (2)    *Allowance:* On the Effective Date, Class 11 Claims shall be Allowed in the aggregate amount of $80,653,260.

(3)     *Treatment*: The subordination provisions of the LIM Finance II Senior Subordinated Note shall be enforced for the benefit of Class 10. Therefore, holders of Allowed Class 11 Claims shall not be entitled to and shall not receive any distribution on account of such Claims.

(4)     *Voting*: Class 11 is Impaired, and holders of Allowed Class 11 Claims are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, holders of Allowed Class 11 Claims are not entitled to vote to accept or reject the Plan.

**(l)     Class 12 — LIM Finance II General Unsecured Claims**

(1)     *Classification*: Class 12 consists of any LIM Finance II General Unsecured Claims.

(2)     *Treatment*: Except to the extent that a holder of an Allowed Class 12 Claim agrees to a less favorable treatment, such holder shall, in full and final satisfaction, settlement, release, and discharge of and in exchange for such holder's Allowed Class 12 Claim, receive on the Effective Date, or as soon as practicable thereafter, its *Pari Passu* Allocation of the Equity Securities in each of Local Insight Media LP and LIM, GP LLC.

(3)     *Voting*: Class 12 is Impaired, and holders of Allowed Class 12 Claims are entitled to vote to accept or reject the Plan.

**(m)     Class 13 — LIM Finance Term Loan Facility Claims**

(1)     *Classification*: Class 13 consists of any LIM Finance Term Loan Facility Claims.

(2)     *Allowance:* On the Effective Date, Class 13 Claims shall be Allowed in the aggregate amount of $138,141,667.

(3)     *Treatment*: Holders of Allowed Class 13 Claims shall not receive any distribution on account of such Claims. All Class 13 Claims shall be discharged on the Effective Date.

(4)     *Voting*: Class 13 is Impaired, and holders of Allowed Class 13 Claims are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, holders of Allowed Class 13 Claims are not entitled to vote to accept or reject the Plan.

**(n)     Class 14 — LIM Finance General Unsecured Claims**

(1)     *Classification*: Class 14 consists of any LIM Finance General Unsecured Claims.

(2)     *Treatment*: Holders of Allowed Class 14 Claims shall not receive any distribution on account of such Claims. All Class 14 Claims shall be discharged on the Effective Date.

(3)     *Voting*: Class 14 is Impaired, and holders of Allowed Class 14 Claims are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, holders of Allowed Class 14 Claims are not entitled to vote to accept or reject the Plan.

**(o)     Class 15 — Regatta Investor and Regatta Holdings Interests**

(1)     *Classification*: Class 15 consists of any Regatta Investor and Regatta Holdings Interests.

(2)     *Treatment*: Holders of Allowed Class 15 Interests are not entitled to receive a distribution, such Interests shall be deemed automatically cancelled without further action by the Debtors or Reorganized Debtors, and the obligations of the Debtors and Reorganized Debtors in respect thereof shall be discharged.

K&E 18394274

(3)     *Voting*:  Class 15 is Impaired, and holders of Allowed Class 15 Interests are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Therefore, holders of Allowed Class 15 Interests are not entitled to vote to accept or reject the Plan.

**(p)     Class 16 — Berry Companies Interests**

(1)     *Classification*:  Class 16 consists of any Berry Companies Interests.

(2)     *Treatment*:  Class 16 Interests shall be reinstated on the Effective Date.

(3)     *Voting*:  Class 16 is Unimpaired, and holders of Allowed Class 16 Interests are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, holders of Allowed Class 16 Interests are not entitled to vote to accept or reject the Plan.

**(q)     Class 17 — Super Holdco Interests**

(1)     *Classification*:  Class 17 consists of any Super Holdco Interests.

(2)     *Treatment*:  Holders of Allowed Class 17 Interests are not entitled to receive a distribution, such Interests shall be deemed cancelled as soon as practicable after the Effective Date, and the obligations of the Debtors and Reorganized Debtors in respect thereof shall be discharged.

(3)     *Voting*:  Class 17 is Impaired, and holders of Allowed Class 17 Interests are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Therefore, holders of Allowed Class 17 Interests are not entitled to vote to accept or reject the Plan.

**(r)     Class 18 — LIM Finance Interests**

(1)     *Classification*:  Class 18 consists of any LIM Finance Interests.

(2)     *Treatment*:  Holders of Allowed Class 18 Interests are not entitled to receive a distribution, such Interests shall be deemed automatically cancelled without further action by the Debtors or Reorganized Debtors, and the obligations of the Debtors and Reorganized Debtors in respect thereof shall be discharged.

(3)     *Voting*:  Class 18 is Impaired, and holders of Allowed Class 18 Interests are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Therefore, holders of Allowed Class 18 Interests are not entitled to vote to accept or reject the Plan.

**(s)     Class 19 — Section 510(b) Claims**

(1)     *Classification*:  Class 19 consists of any Section 510(b) Claims against any Debtor.

(2)     *Treatment*:  Holders of Allowed Class 19 Claims shall not receive any distribution on account of such Claims.  All Class 19 Claims shall be discharged on the Effective Date.

(3)     *Voting*:  Class 19 is Impaired, and holders of Allowed Class 19 Claims are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Therefore, holders of Allowed Class 19 Claims are not entitled to vote to accept or reject the Plan.

K&E 18394274

### 3.3 Special Provision Governing Unimpaired Claims

Except as otherwise provided in the Plan, nothing under the Plan shall affect the Debtors' or the Reorganized Debtors' rights in respect of any Unimpaired Claim, including all rights in respect of legal and equitable defenses to or setoffs or recoupments against any such Unimpaired Claim.

### ARTICLE IV

### PROVISIONS FOR IMPLEMENTATION OF THE PLAN

### 4.1 General Settlement of Claims

Unless otherwise set forth in the Plan, pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, distributions, releases, and other benefits provided under the Plan, on the Effective Date, the provisions of the Plan shall constitute a good-faith compromise and settlement of all Claims and Interests.

In particular, and without limiting the foregoing, effective on the Effective Date, the provisions of the Plan shall constitute a good-faith compromise and settlement of all Avoidance Actions and other Claims and Defenses against holders of Regatta Credit Facility Claims and the Regatta Credit Facility Administrative Agent. Additionally, on the Effective Date, the provisions of the Plan shall constitute a good-faith compromise and settlement of all Claims and Avoidance Actions held by any Debtor against any other Debtor, by any Debtor against any of the Local Insight Companies, and by any of the Local Insight Companies against any Debtor, except as may be approved under the WBS Contracts Settlement Order or under the Transition Agreement Approval Orders. For the avoidance of doubt, the provisions of the Plan shall not constitute a good-faith compromise and settlement of any Claim against any Non-Released Party.

### 4.2 Reorganized Regatta Common Stock

The issuance of the Reorganized Regatta Common Stock by Reorganized Regatta, including any options for the purchase thereof and equity awards associated therewith, is authorized without the need for any further corporate action or without any further action by the Debtors or Reorganized Regatta, as applicable. Pursuant to the Plan, the Reorganized Regatta Charter shall authorize the issuance and distribution on the Effective Date of shares of Reorganized Regatta Common Stock to the Distribution Agent for the benefit of holders of Allowed Claims in Classes 4 and 6, subject to dilution by the Management Equity Incentive Program. All of the shares of Reorganized Regatta Common Stock issued pursuant to the Plan shall be duly authorized, validly issued, fully paid, and non-assessable. Certain holders of the Reorganized Regatta Common Stock will be entitled to registration rights under the Registration Rights Agreement. In addition, each holder of the Reorganized Regatta Common Stock will be deemed to be a party to, and bound by, the Shareholders Agreement.

### 4.3 Exemption

Pursuant to section 1145 of the Bankruptcy Code, the offering, issuance, and distribution of any Securities pursuant to the Plan and any and all settlement agreements incorporated herein will be exempt from the registration requirements of section 5 of the Securities Act. In addition, under section 1145 of the Bankruptcy Code, any Securities issued pursuant to the Plan and any and all settlement agreements incorporated herein will be freely transferable under the Securities Act by the recipients thereof, subject to: (a) the provisions of section 1145(b)(1) of the Bankruptcy Code relating to the definition of an underwriter in section 2(a)(11) of the Securities Act, compliance with any applicable state or foreign securities laws, if any, and the rules and regulations of the United States Securities and Exchange Commission, if any, applicable at the time of any future transfer of such Securities or instruments; (b) the restrictions, if any, on the transferability of such Securities and instruments; and (c) any other applicable regulatory approval.

**4.4    Subordination**

The allowance, classification, and treatment of all Claims and Interests under the Plan shall conform to and with the respective contractual, legal, and equitable subordination rights of such Claims and Interests, and any such rights shall be recognized and implemented by the Plan. Pursuant to section 510 of the Bankruptcy Code, the Reorganized Debtors reserve the right to re-classify any Allowed Claim or Interest in accordance with any contractual, legal, or equitable subordination relating thereto. In particular, and without limiting the foregoing, the subordination of Regatta Subordinated Notes Claims to Regatta Credit Facility Claims under the Plan conforms to and implements the subordination and turn-over rights set forth in Article XII of the Regatta Subordinated Notes Indenture, and such rights shall be recognized in and implemented by the Plan.

**4.5    Vesting of Assets in the Reorganized Debtors**

Except as otherwise provided herein or in any agreement, instrument, or other document incorporated in the Plan, on the Effective Date, all property in each Estate, all Causes of Action, and any property acquired by any of the Debtors pursuant to the Plan shall vest in each respective Reorganized Debtor, free and clear of all Liens, Claims, charges, or other encumbrances. On and after the Effective Date, except as otherwise provided in the Plan, each Reorganized Debtor may operate its business and may use, acquire, or dispose of property and compromise or settle any Claims, Interests, or Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules. Local Insight Media Holdings, Inc. will transfer all property, licenses, and intellectual property rights selected by Local Insight Regatta Holdings, Inc. to either Reorganized Regatta or The Berry Company LLC without compensation.

**4.6    Cancellation of Notes, Instruments, Certificates, and Other Documents**

On the Effective Date, except to the extent otherwise provided herein with respect to, among other things, the DIP Facility Credit Agreement, all notes, instruments, Certificates, and other documents evidencing Claims or Interests shall be cancelled and the obligations of the Debtors or Reorganized Debtors and the non-Debtor Affiliates thereunder or in any way related thereto shall be discharged; provided, however, that notwithstanding Confirmation or the occurrence of the Effective Date, any indenture or agreement that governs the rights of the holder of a Claim shall continue in effect solely for purposes of (a) allowing holders to receive distributions under the Plan and (b) allowing and preserving the rights of the DIP Facility Administrative Agent, the Regatta Credit Facility Administrative Agent, and the Servicer under the LIM Finance II Term Loan Facility, as applicable, to make distributions on account of Claims as provided in ARTICLE VI.

**4.7    Issuance of New Securities; Execution of Plan Documents; Private Company**

On the Effective Date, or as soon as practicable thereafter, the Reorganized Debtors shall issue all Securities, notes, instruments, Certificates, and other documents required to be issued pursuant to the Plan. On the Effective Date, Reorganized Regatta will be a private company. As a result, Reorganized Regatta will not list the Reorganized Regatta Common Stock on a national securities exchange.

**4.8    Corporate Action**

Each of the matters provided for by the Plan involving the corporate structure of the Debtors or corporate or related actions to be taken by or required of the Reorganized Debtors, whether taken prior to or as of the Effective Date, shall be authorized without the need for any further corporate action or without any further action by the Debtors or the Reorganized Debtors, as applicable. Such actions may include: (a) the adoption and filing of the Reorganized Regatta Charter and Reorganized Regatta Bylaws; (b) the appointment of the New Regatta Board; (c) the adoption and implementation of the Management Equity Incentive Program; (d) the authorization, issuance, and distribution of Reorganized Regatta Common Stock and other Securities to be authorized, issued, and distributed pursuant to the Plan; and (e) the consummation and implementation of the First Lien Exit Facility.

**4.9   Certificate of Incorporation and Bylaws**

The certificates of incorporation and bylaws (and other formation documents relating to limited liability companies) of the Debtors shall be amended as may be required to be consistent with the provisions of the Plan and the Bankruptcy Code. The certificate of incorporation of Regatta Holdings shall be amended to, among other things: (a) authorize the issuance of the shares of Reorganized Regatta Common Stock and (b) pursuant to and only to the extent required by section 1123(a)(6) of the Bankruptcy Code, include a provision prohibiting the issuance of non-voting Equity Securities. The form and substance of the Reorganized Regatta Charter and Reorganized Regatta Bylaws shall be included in the Plan Supplement. After the Effective Date, each Reorganized Debtor may amend and restate its certificate of incorporation and other constituent documents as permitted by the laws of its respective jurisdiction of formation and its respective charter and bylaws.

**4.10   Effectuating Documents; Further Transactions**

On and after the Effective Date, the Reorganized Debtors, and the officers and members of the boards of directors thereof, are authorized to and may issue, execute, deliver, file, or record such contracts, Securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan and the Securities issued pursuant to the Plan in the name of and on behalf of the Reorganized Debtors, without the need for any approvals, authorizations, or consents except for those expressly required pursuant to the Plan.

**4.11   Section 1146(a) Exemption**

Pursuant to section 1146(a) of the Bankruptcy Code, any transfers of property pursuant to the Plan shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, or other similar tax or governmental assessment, and upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents shall forgo the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, recordation fee, or governmental assessment.

**4.12   Directors and Officers**

On the Effective Date, the terms of the current members of the board of directors and the appointment of the officers of Regatta Holdings, unless otherwise agreed to by the Required DIP Facility Lenders, shall terminate and the New Regatta Board and the new officers of Regatta Holdings, which shall be subject to the approval of the Required DIP Facility Lenders, shall be appointed. From and after the Effective Date, each director or officer of Reorganized Regatta shall serve pursuant to the terms of the Reorganized Regatta Charter, the Reorganized Regatta Bylaws, or other constituent documents, and applicable state corporation law. In accordance with section 1129(a)(5) of the Bankruptcy Code, the identities and affiliations of the members of the New Regatta Board and any Person proposed to serve as an officer of Reorganized Regatta shall have been disclosed at or before the Confirmation Hearing. On the Effective Date, the terms of the current members of the boards of directors and the appointment of officers of the Debtors other than Regatta Holdings, unless otherwise agreed to by the Required DIP Facility Lenders, shall terminate.

**4.13   Incentive Plans and Employee and Retiree Benefits**

Except as otherwise provided herein, on and after the Effective Date, subject to any Final Order, including the Final KEIP Order, the Reorganized Debtors shall (a) amend, adopt, assume and/or honor in the ordinary course of business, any contracts, agreements, policies, programs, and plans, in accordance with their respective terms, for, among other things, compensation, including any incentive plan, health care benefits, disability benefits, deferred compensation benefits, savings, severance benefits, retirement benefits, welfare benefits, workers' compensation insurance, and accidental death and dismemberment insurance for the directors, officers, and employees of any of the Debtors who served in such capacity from and after the Petition Date and (b) honor, in the ordinary course of business, Claims of employees employed as of the Effective Date for accrued vacation time arising prior to the Petition Date and not otherwise paid pursuant to a Bankruptcy Court order. Notwithstanding the foregoing, pursuant

to section 1129(a)(13) of the Bankruptcy Code, from and after the Effective Date, all retiree benefits (as that term is defined in section 1114 of the Bankruptcy Code), if any, shall continue to be paid in accordance with applicable law. For the avoidance of doubt, the Debtors' obligations under the KEIP will be assumed by Reorganized Regatta from and after the Effective Date.

On or following the Effective Date, the New Regatta Board shall adopt and implement the Management Equity Incentive Program. Not less than 8% and not more than 10% of the Reorganized Regatta Common Stock shall be reserved for the Management Equity Incentive Program.

## 4.14    Preservation of Rights of Action

Unless any Causes of Action against an Entity are expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or by a Final Order, in accordance with section 1123(b) of the Bankruptcy Code, the Reorganized Debtors shall retain and may enforce all rights to commence and pursue, as appropriate, any and all Causes of Action, whether arising before or after the Petition Date, including any actions specifically enumerated in the Plan Supplement, and the Reorganized Debtors' rights to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date. The Reorganized Debtors may pursue such Causes of Action, as appropriate, in accordance with the best interests of the Reorganized Debtors. **No Entity may rely on the absence of a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any Cause of Action against them as any indication that the Debtors or the Reorganized Debtors will not pursue any and all available Causes of Action against them. The Debtors and the Reorganized Debtors expressly reserve all rights to prosecute any and all Causes of Action against any Entity, except as otherwise expressly provided in the Plan.** Unless any Causes of Action against an Entity are expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or a Bankruptcy Court order, the Reorganized Debtors expressly reserve all Causes of Action, for later adjudication, and, therefore no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of the Confirmation or Consummation. For the avoidance of doubt, the Plan does not release any Causes of Action that the Debtors or the Reorganized Debtors have or may have now or in the future against any Non-Released Party.

The Reorganized Debtors reserve and shall retain Causes of Action notwithstanding the rejection of any Executory Contract or Unexpired Lease during the Chapter 11 Cases or pursuant to the Plan. In accordance with section 1123(b)(3) of the Bankruptcy Code, any Causes of Action that a Debtor may hold against any Entity shall vest in the Reorganized Debtors. The applicable Reorganized Debtor, through its authorized agents or representatives, shall retain and may exclusively enforce any and all such Causes of Action. The Reorganized Debtors shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action, or to decline to do any of the foregoing, without the consent or approval of any third party or any further notice to or action, order, or approval of the Bankruptcy Court.

## 4.15    Restructuring Transactions

### (a)    New Corporate Structure

On the Effective Date, the Debtors or the Reorganized Debtors, as the case may be, shall take such actions, as set forth in the Plan Supplement, as are necessary to implement a new corporate structure.

### (b)    Other Restructuring Transactions

In addition, on the Effective Date, the Debtors or the Reorganized Debtors may enter into the following transactions and take any actions as may be necessary or appropriate to effect a corporate restructuring of their respective businesses or a corporate restructuring of the overall corporate structure of the Reorganized Debtors, as and to the extent provided therein. The Restructuring Transactions will likely include the LIMD Restructuring, one or more inter-company mergers, consolidations, amalgamations, arrangements, continuances, restructurings, conversions, dissolutions, transfers, liquidations, or other corporate transactions as may be determined by the

Debtors or the Reorganized Debtors, as applicable, to be necessary or appropriate. (Assuming the Transition Agreement Approval Orders are entered, the LIMD Restructuring will be implemented.) The actions to effect the Restructuring Transactions, including with respect to the merger of Local Insight Listing Management, Inc. into The Berry Company LLC, may include: (a) the execution and delivery of appropriate agreements or other documents of merger, amalgamation, consolidation, restructuring, conversion, disposition, transfer, arrangement, continuance, dissolution, sale, purchase, or liquidation containing terms that are consistent with the terms of the Plan and that satisfy the requirements of applicable law and any other terms to which the relevant Entities may agree; (b) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any asset, property, right, liability, debt, or obligation on terms consistent with the terms of the Plan and having other terms for which the applicable parties agree; (c) the filing of appropriate certificates or articles of incorporation, reincorporation, merger, consolidation, conversion, amalgamation, arrangement, continuance, or dissolution pursuant to applicable state law; and (d) all other actions that the applicable Entities determine to be necessary or appropriate, including making filings or recordings that may be required by applicable law in connection with the Restructuring Transactions. All such Restructuring Transactions shall be reasonably acceptable to the Required DIP Facility Lenders and pursuant to documentation in form and substance reasonably satisfactory to the Required DIP Facility Lenders.

## ARTICLE V

## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

### 5.1    Rejection of Executory Contracts and Unexpired Leases

Except as otherwise provided herein, each Executory Contract and Unexpired Lease shall be deemed rejected, without the need for any further notice to or action, order, or approval of the Bankruptcy Court, as of the Effective Date pursuant to section 365 of the Bankruptcy Code, unless any such Executory Contract or Unexpired Lease: (a) is listed on the Assumption Schedule; (b) has been previously assumed or rejected by the Debtors by Final Order or has been assumed or rejected by the Debtors by order of the Bankruptcy Court as of the Effective Date, which order becomes a Final Order after the Effective Date; (c) is the subject of a motion to assume or reject pending as of the Effective Date; or (d) is a contract for the provision of a Debtor's products or services with a customer (including a customer that is a telecommunications company) that is not listed on the Rejection Schedule, all of which such customer contracts shall be assumed on the Effective Date. The assumption of Executory Contracts and Unexpired Leases hereunder may include the assignment of certain of such contracts to Affiliates, provided that any such assignment to Affiliates shall be subject to approval of the Required DIP Facility Lenders. For the avoidance of doubt, while the Debtors may file a Rejection Schedule listing Executory Contracts and Unexpired Leases for rejection, such schedule would be for information purposes only. Any Executory Contract or Unexpired Lease not listed in the Rejection Schedule would be deemed rejected unless otherwise assumed or deemed assumed, as set forth above. The Confirmation Order will constitute an order of the Bankruptcy Court approving the above-described assumptions, assignments, and rejections.

### 5.2    Pre-existing Payment and Other Obligations

Rejection of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall not constitute a termination of pre-existing obligations owed to the Debtors or Reorganized Debtors, as applicable, under such contract or lease. In particular, notwithstanding any non-bankruptcy law to the contrary, the Reorganized Debtors expressly reserve and do not waive any right to receive, or any continuing obligation of a counterparty to provide, (a) payment to the contracting Debtors or Reorganized Debtors, as applicable, of outstanding and future amounts owing thereto under or in connection with rejected Executory Contracts or Unexpired Leases or (b) warranties or continued maintenance obligations on goods previously purchased by the contracting Debtors or Reorganized Debtors, as applicable, from counterparties to rejected Executory Contracts.

### 5.3    Rejection Damages Claims and Objections to Rejections

Pursuant to section 502(g) of the Bankruptcy Code, counterparties to Executory Contracts or Unexpired Leases that are rejected shall have the right to assert Claims, if any, on account of the rejection of such contracts and leases. Unless otherwise provided by a Bankruptcy Court order, any Proofs of Claim asserting Claims arising from

the rejection of Executory Contracts and Unexpired Leases pursuant to the Plan must be filed with the Claims and Solicitation Agent no later than 30 days after the later of the Confirmation Date or the effective date of rejection. Any such Proofs of Claim that are not timely filed shall be disallowed without the need for any further notice to or action, order, or approval of the Bankruptcy Court. Such Proofs of Claim shall be forever barred, estopped, and enjoined from assertion. Moreover, such Proofs of Claim shall not be enforceable against any Reorganized Debtor, without the need for any objection by the Reorganized Debtors or any further notice to or action, order, or approval of the Bankruptcy Court, and any Claim arising out of the rejection of the Executory Contract or Unexpired Lease shall be deemed fully satisfied, released, and discharged, notwithstanding anything in the Schedules or a Proof of Claim to the contrary. All Allowed Claims arising from the rejection of Executory Contracts and Unexpired Leases shall be classified as General Unsecured Claims against the applicable Debtor counterparty thereto.

In addition, any objection to the rejection of an Executory Contract or Unexpired Lease pursuant to the Plan must be filed with the Bankruptcy Court no later than seven days after the filing of the Assumption Schedule. Any such objection will be scheduled to be heard by the Bankruptcy Court at the Confirmation Hearing or the next scheduled omnibus hearing for which such objection is timely filed. Any counterparty to an Executory Contract or Unexpired Lease that fails to timely object to the proposed rejection of its Executory Contract or Unexpired Lease will be deemed to have consented to such rejection.

### 5.4 Assumption of Executory Contracts and Unexpired Leases

Except as otherwise provided herein, the Reorganized Debtors shall on the Effective Date assume all of the Executory Contracts and Unexpired Leases listed in the Assumption Schedule or otherwise identified for assumption in the Plan pursuant to section 365 of the Bankruptcy Code. Except as otherwise provided herein or agreed to by the Debtors with the applicable counterparty, each assumed Executory Contract or Unexpired Lease shall include all modifications, amendments, supplements, restatements, or other agreements related thereto, and all rights related thereto, if any, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests, unless any of the foregoing agreements has been previously rejected or repudiated or is rejected or repudiated hereunder. Modifications, amendments, supplements, and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtors during the Chapter 11 Cases shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease or the validity, priority, or amount of any Claims that may arise in connection therewith. The Confirmation Order shall constitute an order of the Bankruptcy Court approving the above-described assumptions.

On the Effective Date, the Cure Notes shall be executed and delivered to HYP Media Finance LLC and CBD Media Finance LLC in respect of the previously-approved assumption of the WBS Contracts in accordance with the WBS Contracts Settlement Order.

### 5.5 Cure of Defaults and Objections to Cure and Assumption

Prior to the Confirmation Hearing, the Debtors shall file with the Bankruptcy Court, and serve upon counterparties to Executory Contracts and Unexpired Leases proposed for assumption, a notice that will: (a) include the Assumption Schedule; (b) describe the procedures for filing objections to a proposed assumption or Cure amount; and (c) explain the process by which related disputes will be resolved by the Bankruptcy Court. The Debtors will designate for each Executory Contract and Unexpired Lease listed in the Assumption Schedule a proposed Cure, if any, in connection with such contract or lease. A Cure shall be satisfied by the Debtors or their assignee, if any, by payment of the proposed Cure in Cash within 14 days after the Effective Date, or as soon as practicable thereafter, or on such other terms as may be ordered by the Bankruptcy Court or agreed upon by the parties to the applicable Executory Contract or Unexpired Lease without any further notice to or action, order, or approval of the Bankruptcy Court. Any provisions or terms of the Executory Contracts or Unexpired Leases to be assumed pursuant to the Plan that are, or may be, alleged to be in default, shall be satisfied solely by payment of the proposed Cure or by an agreed-upon waiver of Cure.

Unless otherwise agreed upon in writing by the parties to the applicable Executory Contract or Unexpired Lease, all requests for payment of Cure that differ from the amounts proposed by the Debtors in the Assumption Schedule must be filed with the Claims and Solicitation Agent on or before the Cure Bar Date. Any such request that is not timely filed shall be disallowed and forever barred, estopped, and enjoined from assertion, and shall not

be enforceable against any Reorganized Debtor, without the need for any objection by the Reorganized Debtors or any further notice to or action, order, or approval of the Bankruptcy Court. Any Cure shall be deemed fully satisfied, released, and discharged upon payment by the Debtors of the proposed Cure amounts listed in the Assumption Schedule, notwithstanding anything included in the Schedules or in any Proof of Claim to the contrary; provided, however, that nothing shall prevent the Reorganized Debtors from paying any Cure despite the failure of the relevant counterparty to file such request for payment of such Cure. The Reorganized Debtors also may settle any Cure without any further notice to or action, order, or approval of the Bankruptcy Court. In addition, any objection to the assumption of an Executory Contract or Unexpired Lease must be filed with the Bankruptcy Court on or before the Cure Bar Date. Any such objection will be scheduled to be heard by the Bankruptcy Court at the Debtors' or Reorganized Debtors', as applicable, first scheduled omnibus hearing for which such objection is timely filed. Any counterparty to an Executory Contract or Unexpired Lease that fails to timely object to the proposed assumption of any Executory Contract or Unexpired Lease will be deemed to have consented to such assumption.

If there is a dispute regarding Cure, the ability of the Reorganized Debtors or any assignee to provide "adequate assurance of future performance" within the meaning of section 365 of the Bankruptcy Code, or any other matter pertaining to assumption, then payment of Cure shall occur as soon as practicable after entry of a Final Order resolving such dispute, approving such assumption (and, if applicable, assignment), or as may be agreed upon by the Debtors or Reorganized Debtors, as applicable, and the counterparty to the Executory Contract or Unexpired Lease. The Debtors or Reorganized Debtors, as applicable, reserve the right either to reject or nullify the assumption of any Executory Contract or Unexpired Lease within 45 days after a Final Order resolving an objection to assumption or determining the Cure or any request for adequate assurance of future performance required to assume such Executory Contract or Unexpired Lease, is entered.

Assumption of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall result in the full release and satisfaction of any Cures, Claims, or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time prior to the effective date of assumption. Any and all Proofs of Claim based upon Executory Contracts or Unexpired Leases that have been assumed in the Chapter 11 Cases, including pursuant to the Confirmation Order, shall be deemed disallowed and expunged as of the Effective Date without the need for any objection thereto or any further notice to or action, order, or approval of the Bankruptcy Court.

## 5.6     Insurance Policies

Each insurance policy shall be assumed by the applicable Debtor effective as of the Effective Date, pursuant to section 365 of the Bankruptcy Code, to the extent such insurance policy is executory, unless such insurance policy previously was rejected by the Debtors pursuant to a Bankruptcy Court order or is the subject of a motion to reject pending on the Effective Date.

## 5.7     Contracts, Intercompany Contracts, and Leases Entered Into After the Petition Date

Contracts, Intercompany Contracts, and leases entered into after the Petition Date by any Debtor and any Executory Contracts and Unexpired Leases assumed by any Debtor may be performed by the applicable Reorganized Debtor in the ordinary course of business.

## 5.8     Reservation of Rights

Neither the exclusion nor inclusion of any contract or lease in the Plan Supplement, nor anything contained in the Plan, shall constitute an admission by the Debtors that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that any Reorganized Debtor has any liability thereunder. If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtors or Reorganized Debtors, as applicable, shall have 45 days following entry of a Final Order resolving such dispute to alter their treatment of such contract or lease.

K&E 18394274

**ARTICLE VI**

**PROVISIONS GOVERNING DISTRIBUTIONS**

6.1     **Distributions on Account of Claims Allowed as of the Effective Date**

      (a)     **Delivery of Distributions in General.**

      Except as otherwise provided in the Plan, a Final Order, or as otherwise agreed to by the relevant parties, on the first Distribution Date, the Distribution Agent shall make initial distributions under the Plan on account of Claims Allowed on or before the Effective Date, subject to the Reorganized Debtors' right to object to Claims; provided, however, that (1) Allowed Administrative Claims with respect to liabilities incurred by the Debtors in the ordinary course of business during the Chapter 11 Cases or assumed by the Debtors prior to the Effective Date shall be paid or performed in the ordinary course of business in accordance with the terms and conditions of any controlling agreements, course of dealing, course of business, or industry practice, and (2) Allowed Priority Tax Claims and Allowed Secured Tax Claims shall be paid in accordance with Sections 2.4 and 3.2(a)(2), respectively. To the extent any Allowed Priority Tax Claim or Allowed Secured Tax Claim is not due and owing on the Effective Date, such Claim shall be paid in full in Cash in accordance with the terms of any agreement between the Debtors and the holder of such Claim or as may be due and payable under applicable non-bankruptcy law or in the ordinary course of business. Distribution Dates shall occur at a minimum every 60 days, as necessary in the Reorganized Debtors' sole discretion, after the Effective Date.

      (b)     **Delivery of Distributions on account of DIP Facility Claims.**

      The DIP Facility Administrative Agent shall be deemed to be the holder of all DIP Facility Claims, as applicable, for purposes of distributions to be made hereunder, and the Distribution Agent shall make all distributions on account of such DIP Facility Claims to or on behalf of the DIP Facility Administrative Agent. The DIP Facility Administrative Agent shall hold or direct such distributions for the benefit of the holders of Allowed DIP Facility Claims. The DIP Facility Administrative Agent shall arrange to deliver such distributions to or on behalf of such holders of Allowed DIP Facility Claims; provided, however, the DIP Facility Administrative Agent shall retain all rights as administrative agent under the DIP Facility Credit Agreement in connection with delivery of distributions to DIP Facility Lenders; provided further, however, that the Debtors' obligations to make distributions in accordance with Section 2.3 shall be deemed satisfied upon delivery of distributions to the DIP Facility Administrative Agent. The Debtors, the Reorganized Debtors, the Distribution Agent, and the DIP Facility Administrative Agent, as applicable, shall not incur any liability whatsoever on account of any distributions under this Section 6.1(b).

      (c)     **Delivery of Distributions on account of Regatta Credit Facility Claims.**

      The Regatta Credit Facility Administrative Agent shall be deemed to be the holder of the Regatta Credit Facility Claims, as applicable, for purposes of distributions to be made hereunder, and the Distribution Agent shall make all distributions on account of such Allowed Regatta Credit Facility Claims to or on behalf of the Regatta Credit Facility Administrative Agent. The Regatta Credit Facility Administrative Agent shall hold or direct such distributions for the benefit of the holders of the Allowed Regatta Credit Facility Claims. The Regatta Credit Facility Administrative Agent shall arrange to deliver such distributions to or on behalf of the holders of the Allowed Regatta Credit Facility Claims; provided, however, the Regatta Credit Facility Administrative Agent shall retain all rights as administrative agent under the Regatta Credit Facility Agreement in connection with delivery of distributions to the Regatta Credit Facility Lenders; provided further, however, the Debtors' obligations to make distributions in accordance with Section 3.2(d) shall be deemed satisfied upon delivery of distributions to the Regatta Credit Facility Administrative Agent. The Debtors, the Reorganized Debtors, the Distribution Agent, and the Regatta Credit Facility Administrative Agent, as applicable, shall not incur any liability whatsoever on account of any distributions under this Section 6.1(c).

K&E 18394274

(d)     **Delivery of Distributions on account of LIM Finance II Term Loan Facility Claims.**

The Servicer under the LIM Finance II Term Loan Facility shall be deemed to be the holder of the LIM Finance II Term Loan Facility Claims, as applicable, for purposes of distributions to be made hereunder, and the Distribution Agent shall make all distributions on account of such Allowed LIM Finance II Term Loan Facility Claims to or on behalf of such Servicer. The Servicer under the LIM Finance II Term Loan Facility shall hold or direct such distributions for the benefit of the holders of the Allowed LIM Finance II Term Loan Facility Claims. Such Servicer shall arrange to deliver such distributions to or on behalf of the holders of the Allowed LIM Finance II Term Loan Facility Claims; provided, however, the Servicer under the LIM Finance II Term Loan Facility shall retain all rights as administrative agent under the LIM Finance II Term Loan Facility Agreement in connection with delivery of distributions to the LIM Finance II Term Loan Facility Lenders; provided further, however, the Debtors' obligations to make distributions in accordance with Section 3.2(j) shall be deemed satisfied upon delivery of distributions to the Servicer under the LIM Finance II Term Loan Facility. The Debtors, the Reorganized Debtors, and the Distribution Agent, as applicable, shall not incur any liability whatsoever on account of any distributions under this Section 6.1(d).

**6.2     Special Rules for Distributions to Holders of Disputed Claims**

Notwithstanding any provision otherwise in the Plan and except as otherwise agreed by the relevant parties (1) no partial payments and no partial distributions shall be made with respect to a Disputed Claim until all such disputes in connection with such Disputed Claim have been resolved by settlement or Final Order and (2) any Entity that holds both an Allowed Claim and a Disputed Claim shall not receive any distribution on the Allowed Claim unless and until all objections to the Disputed Claim have been resolved by settlement or Final Order or the Claims have been Allowed or expunged. Any dividends or other distributions arising from property distributed to holders of Allowed Claims in a Class and paid to such holders under the Plan shall be paid also, in the applicable amounts, to any holder of a Disputed Claim in such Class that becomes an Allowed Claim after the date or dates that such dividends or other distributions were earlier paid to holders of Allowed Claims in such Class.

**6.3     Delivery of Distributions**

(a)     **Record Date for Distributions.**

On the Distribution Record Date, the Claims Register shall be closed and the Distribution Agent shall be authorized and entitled to recognize only those record holders listed on the Claims Register as of the close of business on the Distribution Record Date. Notwithstanding the foregoing, if a Claim or Interest, other than one based on a publicly traded Certificate, is transferred less than 20 days before the Distribution Record Date, the Distribution Agent shall make distributions to the transferee only to the extent practical and in any event only if the relevant transfer form contains an unconditional and explicit certification and waiver of any objection to the transfer by the transferor.

(b)     **Distribution Process.**

The Distribution Agent shall make all distributions required under the Plan, except that distributions to holders of Allowed Claims governed by a separate agreement and administered by a Servicer shall be deposited with the appropriate Servicer, at which time such distributions shall be deemed complete, and the Servicer shall deliver such distributions in accordance with the Plan and the terms of the governing agreement. Except as otherwise provided in the Plan, and notwithstanding any authority to the contrary, distributions to holders of Allowed Claims, including Claims that become Allowed after the Distribution Record Date, shall be made to holders of record as of the Distribution Record Date by the Distribution Agent or a Servicer, as appropriate: (1) to the signatory set forth on any of the Proofs of Claim filed by such holder or other representative identified therein (or at the last known addresses of such holder if no Proof of Claim is filed or if the Debtors have been notified in writing, on or before the date that is 14 days before the Effective Date, of a change of address); (2) at the addresses set forth in any written notices of address changes delivered to the Distribution Agent after the date of any related Proof of Claim if delivered on or before the date that is 14 days before the Effective Date; (3) in accordance with Federal Rule of Civil Procedure 4, as modified and made applicable by Bankruptcy Rule 7004, if no Proof of Claim has been filed and the Distribution Agent has not received a written notice of a change of address on or before the date that is 14 days

before the Effective Date; (4) at the addresses reflected in the Schedules if no Proof of Claim has been filed and the Distribution Agent has not received a written notice of a change of address on or before the date that is 14 days before the Effective Date; or (5) on any counsel that has appeared in the Chapter 11 Cases on the holder's behalf. The Debtors, the Reorganized Debtors, and the Distribution Agent, as applicable, shall not incur any liability whatsoever on account of any distributions under the Plan.

    **(c)**    <u>**Accrual of Dividends and Other Rights.**</u>

For purposes of determining the accrual of dividends or other rights after the Effective Date, Reorganized Regatta Common Stock shall be deemed distributed as of the Effective Date regardless of the date on which it is actually issued, dated, authenticated, or distributed; <u>provided</u>, <u>however</u>, the Reorganized Debtors shall not pay any such dividends or distribute such other rights, if any, until after distributions of Reorganized Regatta Common Stock actually take place.

    **(d)**    <u>**Compliance Matters.**</u>

In connection with the Plan, to the extent applicable, the Reorganized Debtors and the Distribution Agent shall comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, and all distributions pursuant to the Plan shall be subject to such withholding and reporting requirements. Notwithstanding any provision in the Plan to the contrary, the Reorganized Debtors and the Distribution Agent shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions, or establishing any other mechanisms they believe are reasonable and appropriate. The Reorganized Debtors reserve the right to allocate all distributions made under the Plan in compliance with all applicable wage garnishments, alimony, child support, and other spousal awards, liens, and encumbrances.

    **(e)**    <u>**Foreign Currency Exchange Rate.**</u>

Except as otherwise provided in the Plan or a Bankruptcy Court order, as of the Effective Date, any Claim asserted in currency other than U.S. dollars shall be automatically deemed converted to the equivalent U.S. dollar value using the exchange rate as of Wednesday, November 17, 2010 as quoted at 4:00 p.m. (EDT), mid-range spot rate of exchange for the applicable currency as published in The Wall Street Journal, National Edition, on Thursday, November 18, 2010.

    **(f)**    <u>**Fractional, Undeliverable, and Unclaimed Distributions.**</u>

        (1)    <u>Fractional Distributions.</u> Notwithstanding any other provision of the Plan to the contrary, payments of fractions of shares of Reorganized Regatta Common Stock shall not be made and shall be deemed to be zero, and the Distribution Agent shall not be required to make distributions or payments of fractions of dollars. Whenever any payment of Cash of a fraction of a dollar pursuant to the Plan would otherwise be required, the actual payment shall reflect a rounding of such fraction to the nearest whole dollar (up or down), with half dollars or less being rounded down.

        (2)    <u>Undeliverable Distributions.</u> If any distribution to a holder of an Allowed Claim is returned to a Distribution Agent as undeliverable, no further distributions shall be made to such holder unless and until such Distribution Agent is notified in writing of such holder's then-current address, at which time all currently due missed distributions shall be made to such holder on the next Distribution Date. Undeliverable distributions shall remain in the possession of the Reorganized Debtors until such time as a distribution becomes deliverable, or such distribution reverts to the Reorganized Debtors or is cancelled pursuant to <u>Section 6.3(f)(3)</u>, and shall not be supplemented with any interest, dividends, or other accruals of any kind.

(3)     Reversion. Any distribution under the Plan that is an Unclaimed Distribution for a period of six months after distribution shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code and such Unclaimed Distribution shall revest in Reorganized Regatta and, to the extent such Unclaimed Distribution is Reorganized Regatta Common Stock, shall be deemed cancelled. Upon such revesting, the Claim of any holder or its successors with respect to such property shall be cancelled, discharged, and forever barred notwithstanding any applicable federal or state escheat, abandoned, or unclaimed property laws, or any provisions in any document governing the distribution that is an Unclaimed Distribution, to the contrary.

(g)     **Surrender of Cancelled Instruments or Securities.**

On the Effective Date or as soon as practicable thereafter, each holder of a Certificate shall surrender such Certificate to the Distribution Agent or a Servicer (to the extent the relevant Claim is governed by an agreement and administered by a Servicer). Such Certificate shall be cancelled solely with respect to the Debtors, and such cancellation shall not alter the obligations or rights of any non-Debtor third parties vis-à-vis one another with respect to such Certificate. No distribution of property pursuant to the Plan shall be made to or on behalf of any such holder unless and until such Certificate is received by the Distribution Agent or the Servicer or the unavailability of such Certificate is reasonably established to the satisfaction of the Distribution Agent or the Servicer pursuant to the provisions of Section 6.3(h). Any holder who fails to surrender or cause to be surrendered such Certificate or fails to execute and deliver an affidavit of loss and indemnity acceptable to the Distribution Agent or the Servicer prior to the first anniversary of the Effective Date shall have its Claim discharged with no further action, be forever barred from asserting any such Claim against the relevant Reorganized Debtor or its property, be deemed to have forfeited all rights, and Claims with respect to such Certificate, and not participate in any distribution under the Plan; furthermore, all property with respect to such forfeited distributions, including any dividends or interest attributable thereto, shall revert to the Reorganized Debtors, notwithstanding any federal or state escheat, abandoned, or unclaimed property law to the contrary. Notwithstanding the foregoing paragraph, this Section 6.3(g) shall not apply to any Claims reinstated pursuant to the terms of the Plan.

(h)     **Lost, Stolen, Mutilated, or Destroyed Debt Securities.**

Any holder of Allowed Claims evidenced by a Certificate that has been lost, stolen, mutilated, or destroyed shall, in lieu of surrendering such Certificate, deliver to the Distribution Agent or Servicer, if applicable, an affidavit of loss acceptable to the Distribution Agent or Servicer setting forth the unavailability of the Certificate and such additional indemnity as may be required reasonably by the Distribution Agent or Servicer to hold the Distribution Agent or Servicer harmless from any damages, liabilities, or costs incurred in treating such holder as a holder of an Allowed Claim. Upon compliance with this procedure by a holder of an Allowed Claim evidenced by such a lost, stolen, mutilated, or destroyed Certificate, such holder shall, for all purposes pursuant to the Plan, be deemed to have surrendered such Certificate.

6.4     **Claims Paid or Payable by Third Parties**

(a)     **Claims Paid by Third Parties.**

The Claims and Solicitation Agent shall reduce in full a Claim, and such Claim shall be disallowed without a Claims objection having to be filed and without any further notice to or action, order, or approval of the Bankruptcy Court, to the extent that the holder of such Claim receives payment in full on account of such Claim from a party that is not a Debtor or Reorganized Debtor. To the extent a holder of a Claim receives a distribution on account of such Claim and receives payment from a party that is not a Debtor or Reorganized Debtor on account of such Claim, such holder shall, within two weeks of receipt thereof, repay or return the distribution to the applicable Reorganized Debtor to the extent the holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim as of the date of any such distribution under the Plan.

(b)     **Claims Payable by Insurance Carriers.**

No distributions under the Plan shall be made on account of an Allowed Claim that is payable pursuant to one of the Debtors' insurance policies until the holder of such Allowed Claim has exhausted all remedies with respect to such insurance policy. To the extent that one or more of the Debtors' insurers agrees to satisfy in full a Claim (if and to the extent adjudicated by a court of competent jurisdiction), then immediately upon such insurers' agreement, such Claim may be expunged to the extent of any agreed upon satisfaction on the Claims Register by the Claims and Solicitation Agent without a Claims objection having to be filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

(c)     **Applicability of Insurance Policies.**

Except as otherwise provided herein, distributions to holders of Allowed Claims shall be in accordance with the provisions of an applicable insurance policy. Nothing contained in the Plan shall constitute or be deemed a waiver of any Cause of Action that the Debtors or any Entity may hold against any other Entity, including insurers under any policies of insurance, nor shall anything contained herein constitute or be deemed a waiver by such insurers of any defenses, including coverage defenses, held by such insurers.

## 6.5     Setoffs

Except as otherwise expressly provided for herein, each Reorganized Debtor, pursuant to the Bankruptcy Code (including section 553 of the Bankruptcy Code), applicable non-bankruptcy law, or as may be agreed to by the holder of a Claim, may set off against any Allowed Claim and the distributions to be made pursuant to the Plan on account of such Allowed Claim (before any distribution is made on account of such Allowed Claim), any Claims, rights, and Causes of Action of any nature that such Debtor or Reorganized Debtor, as applicable, may hold against the holder of such Allowed Claim, to the extent such Claims, rights, or Causes of Action against such holder have not been otherwise compromised or settled on or prior to the Effective Date (whether pursuant to the Plan or otherwise); _provided_, _however_, that neither the failure to effect such a setoff nor the allowance of any Claim pursuant to the Plan shall constitute a waiver or release by such Reorganized Debtor of any such Claims, rights, and Causes of Action that such Reorganized Debtor may possess against such holder. In no event shall any holder of Claims be entitled to set off any Claim against any Claim, right, or Cause of Action of the Debtor or Reorganized Debtor, as applicable, unless such holder has filed a motion with the Bankruptcy Court requesting the authority to perform such setoff on or before the Confirmation Date, and notwithstanding any indication in any Proof of Claim or otherwise that such holder asserts, has, or intends to preserve any right of setoff pursuant to section 553 or otherwise.

## 6.6     Allocation Between Principal and Accrued Interest

Except as otherwise provided in the Plan, the aggregate consideration paid to holders with respect to their Allowed Claims shall be treated pursuant to the Plan as allocated first to the principal amount of such Allowed Claims (to the extent thereof) and, thereafter, to the interest, if any, accrued through the Effective Date.

## ARTICLE VII

## PROCEDURES FOR RESOLVING DISPUTED CLAIMS AND INTERESTS

## 7.1     Prosecution of Objections to Claims

Except as otherwise specifically provided in the Plan, from and after the Effective Date, each Reorganized Debtor shall have and retain any and all rights and defenses such Debtor had immediately prior to the Effective Date with respect to any Disputed Claim or Interest, including the Causes of Action retained pursuant to Section 4.14. The Reorganized Debtors shall have the sole authority to file or withdraw objections to Disputed Claims or Interests. The Reorganized Debtors shall have 120 days after the Effective Date to object to Disputed Claims or Interests. All Disputed Claims or Interests not objected to by the end of such 120-day period shall be deemed Allowed unless such period is extended upon approval of the Bankruptcy Court. After the Effective Date, the Reorganized Debtors shall

have the sole authority to: (a) litigate, settle, or compromise any Disputed Claim without any further notice to or action, order, or approval by the Bankruptcy Court and (b) administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order, or approval by the Bankruptcy Court.

**7.2     Estimation of Claims and Interests**

Before or after the Effective Date, the Debtors or Reorganized Debtors, as applicable, may request at any time that the Bankruptcy Court estimate any Disputed Claim or disputed Interest that is contingent or unliquidated pursuant to section 502(c) of the Bankruptcy Code for any reason, regardless of whether any party previously has objected to such Claim or Interest or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction to estimate any such Claim or Interest, including during the litigation of any objection to any Claim or Interest or during the appeal relating to such objection.  In the event that the Bankruptcy Court estimates any contingent or unliquidated Claim or Interest, that estimated amount shall constitute a maximum limitation on such Claim or Interest for all purposes under the Plan (including for purposes of distributions), and the relevant Reorganized Debtor may elect to pursue any supplemental proceedings to object to any ultimate distribution on such Claim or Interest.

**7.3     Expungement of, or Adjustment to, Paid, Satisfied, or Superseded Claims and Interests**

Any Claim or Interest that has been paid, satisfied, or superseded, or any Claim or Interest that has been amended or superseded, may be adjusted or expunged on the Claims Register by the Reorganized Debtors without a claims objection having to be filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

**7.4     No Interest**

Unless otherwise specifically provided for in the Plan, postpetition interest shall not accrue or be paid on Claims, and no holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any Claim or right.  Additionally, and without limiting the foregoing, interest shall not accrue or be paid on any Disputed Claim with respect to the period from the Effective Date to the date a final distribution is made on account of such Disputed Claim, if and when such Disputed Claim becomes an Allowed Claim.

**7.5     Disallowance of Claims or Interests**

**EXCEPT AS OTHERWISE AGREED, ANY AND ALL PROOFS OF CLAIM FILED AFTER THE APPLICABLE DEADLINE FOR FILING SUCH PROOFS OF CLAIM SHALL BE DEEMED DISALLOWED AND EXPUNGED AS OF THE EFFECTIVE DATE WITHOUT ANY FURTHER NOTICE TO OR ACTION, ORDER, OR APPROVAL OF THE BANKRUPTCY COURT, AND HOLDERS OF SUCH CLAIMS MAY NOT RECEIVE ANY DISTRIBUTIONS ON ACCOUNT OF SUCH CLAIMS, UNLESS SUCH LATE PROOF OF CLAIM IS DEEMED TIMELY FILED BY A FINAL ORDER OF THE BANKRUPTCY COURT ON OR BEFORE THE LATER OF (A) THE CONFIRMATION HEARING AND (B) 45 DAYS AFTER THE APPLICABLE DEADLINE FOR FILING SUCH PROOFS OF CLAIM.**

All Claims of any Entity from which property is sought by the Debtors under section 542, 543, 550, or 553 of the Bankruptcy Code or that the Debtors or the Reorganized Debtors allege is a transferee of a transfer that is avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code shall be disallowed if (a) the Entity, on the one hand, and the Debtors or the Reorganized Debtors, on the other hand, agree or the Bankruptcy Court has determined by Final Order that such Entity or transferee is liable to turn over any property or monies under any of the aforementioned sections of the Bankruptcy Code and (b) such Entity or transferee has failed to turn over such property by the date set forth in such agreement or Final Order.

K&E 18394274

7.6    **Amendments to Claims**

On or after the Effective Date, except as otherwise provided herein, a Claim may not be filed or amended without the prior authorization of the Bankruptcy Court or the Reorganized Debtors and, to the extent such prior authorization is not received, any such new or amended Claim filed shall be deemed disallowed in full and expunged without any further notice to or action, order, or approval of the Bankruptcy Court.

## ARTICLE VIII

## EFFECT OF CONFIRMATION OF THE PLAN

8.1    **Discharge of Claims and Termination of Interests**

Except as otherwise provided for herein and effective as of the Effective Date: (a) the rights afforded in the Plan and the treatment of all Claims and Interests shall be in exchange for and in complete satisfaction, discharge, and release of all Claims and Interests of any nature whatsoever, including any interest accrued on such Claims from and after the Petition Date, against the Debtors or any of their assets, property, or Estates; (b) the Plan shall bind all holders of Claims and Interests, notwithstanding whether any such holders failed to vote to accept or reject the Plan or voted to reject the Plan; (c) all Claims and Interests shall be satisfied, discharged, and released in full, and the Debtors' liability with respect thereto shall be extinguished completely, including any liability of the kind specified under section 502(g) of the Bankruptcy Code; and (d) all Entities shall be precluded from asserting against the Debtors, the Debtors' Estates, the Reorganized Debtors, their successors and assigns, and their assets and properties any other Claims or Interests based upon any documents, instruments, or any act or omission, transaction, or other activity of any kind or nature that occurred prior to the Effective Date.

8.2    **Releases by the Debtors**

Pursuant to section 1123(b) of the Bankruptcy Code, and except as otherwise specifically provided for herein or as may be approved under the WBS Contracts Settlement Order or approved under the Transition Agreement Approval Orders, for good and valuable consideration, on and after the Effective Date, the Released Parties are deemed released and discharged by the Debtors, the Reorganized Debtors, and the Estates from any and all Claims, obligations, rights, and liabilities whatsoever, whether for tort, fraud, contract, violations of federal or state securities laws, avoidance or recovery of transfers under chapter 5 of the Bankruptcy Code or any similar law of any state, commonwealth, territory, or country, or otherwise, including any derivative Claims, asserted or that could possibly have been asserted directly or indirectly on behalf of the Debtors, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, and any and all Causes of Action asserted or that could possibly have been asserted on behalf of the Debtors, that the Debtors, the Reorganized Debtors, the Estates, or Affiliates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors or their Affiliates, the Chapter 11 Cases, the purchase, sale, or rescission of the purchase or sale of any Security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, prepetition contracts and agreements with one or more Debtors (including agreements reflecting long-term indebtedness), the restructuring of Claims and Interests prior to or in the Chapter 11 Cases, the negotiation, formulation, or preparation of the Plan and Disclosure Statement or related agreements, instruments, or other documents, upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Confirmation Date, other than (except with respect to the WCAS Releasees) Claims or liabilities arising out of or related to any contractual or fixed monetary obligation owed to the Debtors or the Reorganized Debtors.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the release set forth in this Section 8.2, which includes by reference each of the related provisions and definitions contained herein, and further, shall constitute the Bankruptcy Court's finding that such release is: (a) in exchange for the good and valuable consideration provided by the Released

Parties; (b) a good faith settlement and compromise of the Claims released by this Section 8.2; (c) in the best interests of the Debtors and all holders of Claims and Interests; (d) fair, equitable, and reasonable; (e) given and made after due notice and opportunity for hearing; and (f) a bar to any of the Debtors asserting any Claim or Cause of Action released by this Section 8.2.

Notwithstanding anything contained herein to the contrary, for purposes of this Section 8.2, no Non-Released Party is a Released Party.

8.3    Releases by Holders of Claims and Interests

Except as may be approved under the WBS Contracts Settlement Order or approved under the Transition Agreement Approval Orders, as of the Effective Date, the Releasing Parties shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever, released and discharged the Debtors, the Reorganized Debtors, the Estates, and the Released Parties from any and all Claims, Interests, obligations, rights, liabilities, actions, causes of action, choses in action, suits, debts, damages, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, remedies, rights of set-off, third-party claims, subrogation claims, contribution claims, reimbursement claims, indemnity claims, counterclaims, and crossclaims (including all claims and actions against any Entities under the Bankruptcy Code) whatsoever, whether for tort, fraud, contract, violations of federal or state securities laws, avoidance or recovery of transfers under chapter 5 of the Bankruptcy Code or any similar law of any state, commonwealth, territory, or country, or otherwise, including any derivative Claims, asserted on behalf of the Debtors, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that such Entity would have been legally entitled to assert (whether individually or collectively), based on or in any way relating to, or in any manner arising from, in whole or in part, the Debtors, the Debtors' restructuring, the Chapter 11 Cases, the purchase, sale, or rescission of the purchase or sale of any Security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, prepetition contracts and agreements with one or more Debtors (including agreements reflecting long-term indebtedness), the restructuring of Claims and Interests prior to or in the Chapter 11 Cases, the negotiation, formulation, or preparation of the Plan, the Disclosure Statement, the Plan Supplement, or related agreements, instruments, or other documents, upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date of the Plan. Notwithstanding anything to the contrary in the foregoing, the release set forth above does not release any post-Effective Date obligations of any party under the Plan, including with respect to the DIP Facility as provided in Section 2.3, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan and does not release any of the WBS Companies from any WBS Note Claim.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the release set forth in this Section 8.3, which includes by reference each of the related provisions and definitions contained herein, and further, shall constitute the Bankruptcy Court's finding that such release is: (a) in exchange for the good and valuable consideration provided by the Debtors, the Reorganized Debtors, the Estates, and the Released Parties; (b) a good faith settlement and compromise of the Claims released by this Section 8.3; (c) in the best interests of the Debtors and all holders of Claims and Interests; (d) fair, equitable, and reasonable; (e) given and made after due notice and opportunity for hearing; and (f) a bar to any Entity granting a release under this Section 8.3 from asserting any Claim or Cause of Action released by this Section 8.3.

Notwithstanding anything contained herein to the contrary, for purposes of this Section 8.3, no Non-Released Party is a Released Party.

8.4    Exculpation

No Exculpated Party shall have or incur, and each Exculpated Party is hereby released and exculpated from any Exculpated Claim or any obligation, Cause of Action, or liability for any Exculpated

Claim; provided, however, that the foregoing "exculpation" shall have no effect on the liability of any Entity that results from any such act or omission that is determined in a Final Order to have constituted gross negligence or willful misconduct or the liability of any Debtor or Reorganized Debtor not exculpated under the Transition Agreement in connection with Claims arising thereunder; provided, further, that in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to, or in connection with, the Plan. The Exculpated Parties have, and upon Confirmation shall be deemed to have, participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code with regard to the solicitation of acceptances and rejections of the Plan and the making of distributions pursuant to the Plan and, therefore, are not and shall not be liable at any time for the violation of any applicable, law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.

Notwithstanding anything contained herein to the contrary, for purposes of this Section 8.4, no Non-Released Party is an Exculpated Party.

## 8.5    Injunction

Except as otherwise provided herein or for obligations issued pursuant hereto, all Entities that have held, hold, or may hold Claims or Interests that have been released pursuant to Section 8.2 or Section 8.3, discharged pursuant to Section 8.1, or are subject to exculpation pursuant to Section 8.4 are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Reorganized Debtors, the Released Parties, or the Exculpated Parties: (a) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests; (b) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims or Interests; (c) creating, perfecting, or enforcing any encumbrance of any kind against such Entities or the property or Estates of such Entities on account of or in connection with or with respect to any such Claims or Interests; (d) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property or Estates of such Entities on account of or in connection with or with respect to any such Claims or Interests unless such holder has filed a motion requesting the right to perform such setoff on or before the Confirmation Date; and (e) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests released, exculpated, or settled pursuant to the Plan.

Notwithstanding anything contained herein to the contrary, for purposes of this Section 8.5, no Non-Released Party is an Exculpated Party or a Released Party.

## 8.6    Protection Against Discriminatory Treatment

In accordance with section 525 of the Bankruptcy Code, and consistent with paragraph 2 of Article VI of the United States Constitution, no Governmental Unit shall discriminate against any Reorganized Debtor, or any Entity with which a Reorganized Debtor has been or is associated, solely because such Reorganized Debtor was a Debtor under chapter 11, may have been insolvent before the commencement of the Chapter 11 Cases (or during the Chapter 11 Cases but before such Debtor was granted or denied a discharge), or has not paid a debt that is dischargeable in the Chapter 11 Cases.

## 8.7    Indemnification

Solely to the extent of funds available from any directors and officers liability insurance policy then in effect, and without any obligation to make any premium or other payments or to incur any other expenses or to pay any other costs, on and from the Effective Date, the Reorganized Debtors shall assume or reinstate, as applicable, all indemnification obligations in place as of the Effective Date (whether in by-laws, certificates of incorporation, board resolutions, contracts, or otherwise) for the current and former directors, officers, employees, attorneys, other professionals, and agents of the Debtors and the Debtors' respective affiliates; provided, however, the Reorganized Debtors shall not assume any such obligations as to any of the Non-Released Parties.

**8.8**     **Recoupment**

In no event shall any holder of Claims or Interests be entitled to recoup any Claim or Interest against any Claim, right, or Cause of Action of the Debtors or the Reorganized Debtors, as applicable, unless such holder actually has performed such recoupment and provided notice thereof in writing to the Debtors on or before the Confirmation Date, notwithstanding any indication in any Proof of Claim or Interest or otherwise that such holder asserts, has, or intends to preserve any right of recoupment.

**8.9**     **Release of Liens**

Except as otherwise provided herein or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released and discharged, and all of the right, title, and interest of any holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Reorganized Debtor and its successors and assigns.

**8.10**    **Reimbursement or Contribution**

If the Bankruptcy Court disallows a Claim for reimbursement or contribution of an Entity pursuant to section 502(e)(1)(B) of the Bankruptcy Code, then to the extent that such Claim is contingent as of the Effective Date, such Claim shall be forever disallowed notwithstanding section 502(j) of the Bankruptcy Code, unless prior to the Effective Date (a) such Claim has been adjudicated as noncontingent or (b) the relevant holder of a Claim has filed a noncontingent Proof of Claim on account of such Claim and a Final Order has been entered determining such Claim as no longer contingent.

**ARTICLE IX**

**CONDITIONS PRECEDENT TO THE EFFECTIVE DATE**

**9.1**     **Conditions Precedent to the Effective Date**

It shall be a condition to the Effective Date that the following conditions shall have been satisfied or waived pursuant to Section 9.2:

(a)     the Confirmation Order, which shall provide that, among other things, the Debtors or Reorganized Debtors are authorized and directed to take any and all actions necessary or appropriate to consummate the Plan, shall have been entered and such order shall not have been stayed, modified, or vacated on appeal;

(b)     the WBS Contracts Settlement Order and the Transition Agreement Approval Orders shall have been entered by the Bankruptcy Court;

(c)     all documents and agreements necessary to implement the Plan, including the credit agreement in respect of the First Lien Exit Facility (substantially in the form contained in the Plan Supplement), shall have: (1) all conditions precedent to such documents and agreements satisfied or waived pursuant to the terms of such documents or agreements; (2) been tendered for delivery to the required parties and, to the extent required, filed with and approved by any applicable Governmental Units in accordance with applicable laws; and (3) been effected or executed; and

(d)     the Non-Debtor Subsidiaries shall have granted the WCAS Releasees a full, absolute unconditional, and irrevocable release, waiver, and covenant not to sue in the form contained in the Plan Supplement, which release, waiver and covenant not to sue shall have been disclosed to the Bankruptcy Court in the motion to approve the Transition Agreement or the motion for Confirmation.

**9.2**     **Waiver of Conditions Precedent**

With the consent of the Steering Committee, which shall not be unreasonably withheld, the Debtors may waive any of the conditions to the Effective Date set forth in Sections 9.1(a) through 9.1(c) at any time without any notice to any other parties in interest and without any further notice to or action, order, or approval of the Bankruptcy Court, and without any formal action other than proceeding to confirm or consummate the Plan; provided, the Debtors may not waive any other Entity's conditions to closing set forth in documents or agreements to be effectuated on or after the Effective Date. WCAS may waive the condition to the Effective Date set forth in Section 9.1(d) upon written notice to the Debtors and the Caribe Senior Secured Credit Facility Administrative Agent.

**9.3**     **Effect of Non-Occurrence of Conditions to Consummation**

If prior to Consummation, the Confirmation Order is vacated pursuant to a Final Order, then except as provided in any order of the Bankruptcy Court vacating the Confirmation Order, the Plan will be null and void in all respects, and nothing contained in the Plan or Disclosure Statement shall: (a) constitute a waiver or release of any Claims, Interests, or Causes of Action; (b) prejudice in any manner the rights of any Debtor or any other Entity; or (c) constitute an admission, acknowledgment, offer, or undertaking of any sort by any Debtor or any other Entity.

**ARTICLE X**

**MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN**

**10.1**     **Modification of Plan**

Effective as of the date hereof and subject to the limitations and rights contained in the Plan: (a) the Debtors reserve the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules, to amend or modify the Plan before the entry of the Confirmation Order and (b) after the entry of the Confirmation Order, the Debtors or the Reorganized Debtors, as applicable, may, upon order of the Bankruptcy Court, amend or modify the Plan, in accordance with section 1127(b) of the Bankruptcy Code, remedy any defect or omission, or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan. Any modification of the Plan shall be subject to the consent of the Steering Committee, which shall not be unreasonably withheld.

**10.2**     **Revocation or Withdrawal of Plan**

The Debtors reserve the right to revoke or withdraw the Plan before the Confirmation Date and to file subsequent chapter 11 plans. If the Debtors revoke or withdraw the Plan, or if Confirmation or the Effective Date does not occur, then: (a) the Plan will be null and void in all respects; (b) any settlement or compromise embodied in the Plan, assumption or rejection of Executory Contracts or Unexpired Leases effected by the Plan, and any document or agreement executed pursuant hereto will be null and void in all respects; and (c) nothing contained in the Plan shall (1) constitute a waiver or release of any Claims, Interests, or Causes of Action, (2) prejudice in any manner the rights of any Debtor or any other Entity, or (3) constitute an admission, acknowledgement, offer, or undertaking of any sort by any Debtor or any other Entity.

**10.3**     **Confirmation of the Plan**

The Debtors request Confirmation of the Plan under section 1129(b) of the Bankruptcy Code with respect to any Impaired Class that does not accept the Plan pursuant to section 1126 of the Bankruptcy Code. The Debtors reserve the right to amend the Plan to the extent, if any, that Confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification.

K&E 18394274

# ARTICLE XI

## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, or related to, the Chapter 11 Cases and the Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code, including jurisdiction to:

1.      allow, disallow, determine, liquidate, classify, estimate, or establish the priority, secured or unsecured status, or amount of any Claim or Interest, including the resolution of any request for payment of any Claim or Interest and the resolution of any and all objections to the secured or unsecured status, priority, amount, or allowance of Claims or Interests;

2.      decide and resolve all matters related to the granting and denying, in whole or in part, any applications for allowance of compensation or reimbursement of expenses to Professionals authorized pursuant to the Bankruptcy Code or the Plan;

3.      resolve any matters related to Executory Contracts or Unexpired Leases, including: (a) the assumption, assumption and assignment, or rejection of any Executory Contract or Unexpired Lease to which a Debtor is party or with respect to which a Debtor may be liable and to hear, determine, and, if necessary, liquidate, any Cure or Claims arising therefrom, including pursuant to section 365 of the Bankruptcy Code; (b) any potential contractual obligation under any Executory Contract or Unexpired Lease that is assumed; (c) the Reorganized Debtors' amendment, modification, or supplement, after the Effective Date, pursuant to ARTICLE V, of the list of Executory Contracts and Unexpired Leases to be assumed or rejected or otherwise; and (d) any dispute regarding whether a contract or lease is or was executory or expired; provided, however, any disputes arising under the Shareholders Agreement or the definitive documentation for the First Lien Exit Facility will be governed by the respective jurisdictional provisions thereof;

4.      ensure that distributions to holders of Allowed Claims are accomplished pursuant to the provisions of the Plan and adjudicate any and all disputes arising from or relating to distributions under the Plan;

5.      adjudicate, decide, or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters, and grant or deny any applications involving a Debtor that may be pending on the Effective Date;

6.      enter and implement such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of (a) contracts, instruments, releases, indentures, and other agreements or documents approved by Final Order in the Chapter 11 Cases and (b) the Plan or the Confirmation Order, including contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Plan;

7.      enforce any order for the sale of property pursuant to sections 363, 1123, or 1146(a) of the Bankruptcy Code;

8.      grant any consensual request to extend the deadline for assuming or rejecting Unexpired Leases pursuant to section 365(d)(4) of the Bankruptcy Code;

9.      issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with Consummation or enforcement of the Plan;

10.      hear, determine, and resolve any cases, matters, controversies, suits, disputes, or Causes of Action in connection with or in any way related to the Chapter 11 Cases, including: (a) with respect to the repayment or return of distributions and the recovery of additional amounts owed by the holder of a Claim for amounts not timely repaid pursuant to Section 6.4(a); (b) with respect to the releases, injunctions, and other provisions contained in ARTICLE VIII, including entry of such orders as may be necessary or appropriate to implement such releases, injunctions, and other provisions; (c) that may arise in connection with the Consummation, interpretation,

implementation, or enforcement of the Plan or the Confirmation Order, or any Entity's obligations incurred in connection with the Plan or the Confirmation Order, including those arising under agreements, documents, or instruments executed in connection with the Plan; or (d) related to section 1141 of the Bankruptcy Code;

11.      enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

12.      consider any modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order;

13.      hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

14.      enter an order or Final Decree concluding or closing the Chapter 11 Cases;

15.      enforce all orders previously entered by the Bankruptcy Court; and

16.      hear any other matter not inconsistent with the Bankruptcy Code.

# ARTICLE XII

## MISCELLANEOUS PROVISIONS

### 12.1    Additional Documents

On or before the Effective Date, the Debtors may file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan. The Debtors or the Reorganized Debtors, as applicable, and all holders of Claims receiving distributions pursuant to the Plan and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

### 12.2    Payment of Statutory Fees

All fees payable pursuant to 28 U.S.C. § 1930(a), as determined by the Bankruptcy Court at a hearing pursuant to section 1128 of the Bankruptcy Code if necessary, shall be paid for each quarter (including any fraction thereof) until the Chapter 11 Cases are converted, dismissed, or a Final Decree is issued, whichever occurs first.

### 12.3    Dissolution of Creditors' Committee

On the Effective Date, the Creditors' Committee shall dissolve automatically, and its members and retained Professionals shall be released and discharged from all rights, duties, responsibilities, and liabilities arising from, or related to, the Chapter 11 Cases; provided, however, that the Creditors' Committee shall be deemed to remain in existence solely with respect to applications filed pursuant to sections 330 and 331 of the Bankruptcy Code.

### 12.4    Reservation of Rights

Except as expressly set forth herein, the Plan shall have no force or effect unless the Bankruptcy Court shall enter the Confirmation Order. None of the filing of the Plan, any statement or provision contained in the Plan, or the taking of any action by any Debtor with respect to the Plan, the Disclosure Statement, or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of any Debtor with respect to the holders of Claims or Interests prior to the Effective Date.

## 12.5    Successors and Assigns

The rights, benefits, and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign, affiliate, officer, director, agent, representative, attorney, beneficiaries, or guardian, if any, of each Entity.

## 12.6    Service of Documents

After the Effective Date, any pleading, notice, or other document required by the Plan to be served on or delivered to the Reorganized Debtors shall be served on:

| Debtors | Counsel to Debtors |
|---|---|
| Local Insight Regatta Holdings, Inc.<br>160 Inverness Drive West, Suite 400<br>Englewood, CO 80112<br>Attn.: John S. Fischer, Esq., General Counsel | Pachulski Stang Ziehl & Jones LLP<br>919 North Market Street, 17th Floor<br>Wilmington, DE 19899-8705<br>Attn.:   Laura Davis Jones, Esq.<br>       Michael R. Seidl, Esq.<br>       Curtis A. Hehn, Esq.<br><br>Kirkland & Ellis LLP<br>601 Lexington Avenue<br>New York, NY 10022-4611<br>Attn.:   Christopher J. Marcus, Esq.<br><br>300 North LaSalle<br>Chicago, IL 60654<br>Attn.:   Ross M. Kwasteniet, Esq. |
| **Counsel to the Creditors' Committee** | |
| Milbank, Tweed, Hadley, & McCloy LLP<br>601 South Figueroa Street, 30th Floor<br>Los Angeles, CA 90017<br>Attn.: Mark Shinderman, Esq.<br><br>1 Chase Manhattan Plaza<br>New York, New York 10005<br>Attn.: Michael E. Comerford, Esq. | Morris, Nichols, Arsht & Tunnell LLP<br>1201 North Market Street, 18th Floor<br>P.O. Box 1347<br>Wilmington, DE 19899<br>Attn.: Robert J. Dehney, Esq.<br>      Gregory T. Donilon, Esq. |
| **Counsel to the Regatta Credit Facility Lenders and the DIP Facility Lenders** | **Counsel to Welsh, Carson, Anderson & Stowe** |
| Simpson Thacher & Bartlett LLP<br>425 Lexington Avenue<br>New York, NY 10017<br>Attn.: Sandeep Qusba, Esq.<br>      Kathrine A. McLendon, Esq. | Ropes & Gray LLP<br>1211 Avenue of the Americas<br>New York, NY 10036<br>Attn.: Mark I. Bane, Esq. |

| United States Trustee | |
| --- | --- |
| Office of the United States Trustee<br>for the District of Delaware<br>844 King Street, Suite 2207<br>Wilmington, DE 19801<br>Attn.:   Richard Schepacarter, Esq. | |

## 12.7   Term of Injunctions or Stays

Unless otherwise provided in the Plan or in the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases (pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court) and existing on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order) shall remain in full force and effect until the Effective Date. All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

## 12.8   Entire Agreement

Except as otherwise indicated, the Plan supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

## 12.9   Plan Supplement Exhibits

All exhibits and documents included in the Plan Supplement are incorporated into and are a part of the Plan as if set forth in full in the Plan. After the exhibits and documents are filed, copies of such exhibits and documents shall be made available upon written request to the Debtors' counsel at the address above or by downloading such exhibits and documents from http://www.kccllc.net/localinsight or the Bankruptcy Court's website at www.deb.uscourts.gov. Unless otherwise ordered by the Bankruptcy Court, to the extent any exhibit or document in the Plan Supplement is inconsistent with the terms of any part of the Plan that does not constitute the Plan Supplement, such part of the Plan that does not constitute the Plan Supplement shall control.

## 12.10   Non-Severability

If, prior to Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is: (a) valid and enforceable pursuant to its terms; (b) integral to the Plan and may not be deleted or modified without the Debtors' consent; and (c) nonseverable and mutually dependent.

*[The remainder of this page is intentionally left blank.]*

K&E 18394274

Dated: August 13, 2011

LOCAL INSIGHT MEDIA HOLDINGS, INC.
on behalf of itself and all other Debtors

By: _____

Scott Brubaker
Interim President, Chief Executive and
Chief Restructuring Officer

## EXHIBIT A

## FIRST LIEN EXIT FACILITY TERM SHEET

*[To Come]*